# EXHIBIT 2

# TABLE OF CONTENTS

Subject                                                            Page

I.   GENERAL PROVISIONS

     A.  POLICY    ........................................ 1
     B.  DEFINITIONS...................................... 2

II.  RESPONSIBILITIES AND AUTHORITIES

     A.  THE ATTORNEY GENERAL............................. 4
     B.  THE DEPUTY ATTORNEY GENERAL...................... 4
     C.  THE DIRECTOR OF THE FBI.......................... 4
     D.  THE SES BOARD.................................... 4
     E.  THE PERFORMANCE REVIEW BOARD(PRB)               4
     F.  THE ADMINISTRATIVE SERVICES DIVISION..          4

III. ADMINISTRATION

     A.  THE SES BOARD                                   5
     B.  THE PERFORMANCE REVIEW BOARD . . .              6

IV.  STAFFING

     A.  MERIT PRINCIPLES                                7
     B.  CAREER APPOINTMENTS                             7
     C.  LIMITED TERM/LIMITED EMERGENCY APPOINTMENTS     8
     D.  REINSTATEMENT                                   9

V.   REMOVAL AND ADVERSE ACTION

     A.  GENERAL                                         10
     B.  ACTIONS TAKEN DURING PROBATIONARY PERIOD        10
     C.  ACTIONS TAKEN AFTER COMPLETION OF
         PROBATIONARY PERIOD                             11
     D.  ACTIONS TAKEN AGAINST
         LIMITED TERM/EMERGENCY APPOINTEES               15
     E.  GUARANTEED PLACEMENT OUTSIDE THE SES            15
     F.  GUARANTEED ANNUITY                              17

VI.  PERFORMANCE APPRAISAL

     A.  GENERAL INFORMATION                             18
     B.  PERFORMANCE APPRAISAL FOR THE SES               28

C.   ACTIONS BASED ON LESS THAN FS PERFORMANCE        38
D.   ESTABLISHMENT OF DOJ PERFORMANCE REVIEW BOARDS   42

(Revised 11/2004)

VII. PAY FOR THE SENIOR EXECUTIVE SERVICE

A.   SALARY LEVELS                                    26
B.   SETTING INDIVIDUAL PAY RATES                     26
C.   AWARDS                                           27
D.   LIMITATION ON SALARY                             29

VIII.  EXECUTIVE DEVELOPMENT

A.   EXECUTIVE DEVELOPMENT PROGRAM                    30
B.   SABBATICALS                                      30

IX. MISCELLANEOUS PROVISIONS

A.   TRAVEL EXPENSES                                  32
B.   ANNUAL LEAVE                                     32
C.   LAST MOVE HOME EXPENSES                          32
D.   FURLOUGHS                                        32
E.   TRAINING                                         34
F.   REPORTS AND EVALUATION                           34
G.   EXTENSION BEYOND MANDATORY RETIREMENT. . . . . . 34
H.   RECORDS. . . . . . . . . . . . . . . . . . . . . 34

CHAPTER I.  GENERAL PROVISIONS

A.    POLICY.  Public Law 100-325 authorized the Attorney
      General to establish a Senior Executive Service (SES) for
      the FBI to include designated managerial and supervisory
      positions.  It is the policy of the FBI to administer its
      SES so as to:

      ● provide for a compensation system, including salaries,
benefits, and incentives, and for other conditions of
employment, designed to attract and retain highly competent
senior executives;

      ● ensure that compensation, retention, and tenure are
contingent on executive success which is measured on the basis
of individual and organizational performance (including such

factors as improvements in efficiency, productivity, quality of work or service; cost efficiency, and timeliness of performance and success in meeting equal employment opportunity goals);

- assure that senior executives are accountable and responsible for the effectiveness and productivity of employees under them;

- recognize exceptional accomplishment;

- enable the head of an agency to reassign senior executives to best accomplish the agency's mission;

- provide for severance pay, early retirement, and replacement assistance for senior executives who are removed from the Senior Executive Service for nondisciplinary reasons;

- protect senior executives from arbitrary or capricious actions;

- provide for program continuity and policy advocacy in the management of public programs;

- maintain a merit personnel system free of prohibited personnel practices;

- ensure accountability for honest, economical, and efficient Government;

- ensure compliance with all applicable civil service laws, rules, and regulations, including those related to equal employment opportunity, political activity, and conflicts of interest;

- provide for the initial and continuing systematic development of highly competent senior executives;

- provide for an executive system which is guided by the public interest and free from improper political interference; and,

- appoint career executives to fill Senior Executive Service positions to the extent practicable, consistent with the effective and efficient implementation of agency policies and

responsibilities.

B.    DEFINITIONS.  Throughout the remainder of this policy
      statement, all references to "SES" indicate the FBI SES,
      unless otherwise specified.  The provisions of this policy
      do not supersede the jurisdiction of the Office of
      Attorney Personnel Management, Department of Justice
      (DOJ), in matters pertaining to those employees serving in
      FBI SES non-Agent attorney positions, unless a delegation
      of authority otherwise exists.

      1.    SES Position is any managerial or supervisory
            position classified above GS 15 of the General
            Schedule or in level IV or V of the Executive
            Schedule, or an equivalent position, which is not
            required to be filled by Presidential appointment
            with the advice and consent of the Senate and which
            involves:

            a.  Directing the work of an organizational unit;

            b.  Being held accountable for the success of one or
            more specific programs or projects;

            c.  Monitoring progress toward organizational goals
            and making appropriate adjustments to such goals;

            d.  Supervising the work of employees other than
            personal assistants; or

            e.  Otherwise exercising important policy making,
            policy determining, or other executive functions.

      2.    Senior Executive is a member of the SES.

      3.    Key Executive is the term used throughout this policy
            to refer to individuals who occupy:

            a. the positions of Executive Assistant Director,
            Assistant Director, Assistant Director in Charge, or
            General Counsel, and

            b. positions which report to the Director,

- 3 -

4.   <u>A Limited Emergency Appointment</u> may be made to meet a bona fide, unanticipated, urgent need.  The appointment may not exceed 18 consecutive months and is nonrenewable.

5.   <u>A Limited Term Appointment</u> may be made to a position the duties of which will expire at the end of a specified period or to a position that special circumstances require to be filled on a rotating basis.  The appointment may not exceed five years and is nonrenewable.

6.   <u>SES Limited Appointment Allocation</u>.  Limited term and limited emergency appointments are included in the total FBI SES allocation.  The total number of limited emergency and limited term appointees may not exceed 5% of the FBI total allocation.

CHAPTER II.  RESPONSIBILITIES AND AUTHORITIES

A.    THE ATTORNEY GENERAL has final authority over the SES in that he/she may issue governing regulations and shall from time to time issue guidance to the Director regarding aspects of the SES.  The Attorney General is solely responsible for nominating FBI executives for Presidential Rank Award recognition.

B.    THE DEPUTY ATTORNEY GENERAL provides overall supervision and direction to the FBI SES and has final approval authority for many personnel matters involving executives, e.g., salary adjustment and bonus decisions.

C.    THE DIRECTOR OF THE FBI is authorized by the Deputy Attorney General to manage the FBI SES in accordance with 5 U.S.C. §3151, to include taking final action in matters pertaining to employment, direction, and general administration of personnel, including appointment, assignment, training, promotion, demotion, compensation, leave, classification, and separation. [The Attorney General and Deputy Attorney General reserve final approval authority for matters pertaining to key executives and key executive positions.]

D.    THE SES BOARD consists of high ranking executives selected by the Director to provide recommendations and/or final decisions in a vast array of matters impacting the use of executive resources.  The SES Board shall, as appropriate, establish sundry other boards and committees as necessary to facilitate the administration and operation of the SES.

E.    THE PERFORMANCE REVIEW BOARD (PRB) evaluates the initial appraisal of senior executives for compliance and sufficiency.  In the event an employee responds to one or more negative ratings, the PRB will review the response and addend a recommendation to sustain or adjust the appraisal for consideration of the final approving official.  The PRB may also evaluate bonus recommendations based on the content of the appraisal.

F.    THE ADMINISTRATIVE SERVICES DIVISION (ASD) provides policy support to the SES Board and furnishes an executive

secretary to the PRB and all subsidiary boards.  ASD works
closely with the Justice Management Division, DOJ to
interpret and implement laws and regulations impacting the
FBI SES.

CHAPTER III.  ADMINISTRATION

The SES Board and the PRB provide recommendations on personnel management matters required for the continuous operation of the SES, e.g., selection, promotion, evaluation of performance, recommendation for recognition, succession planning, etc.  Additional boards and committees, such as those necessary for the initial rating of the Special Agents in Charge of the various field offices, will be formed and staffed as necessary to ensure the efficient accomplishment of internal goals and objectives.

A.   THE SES BOARD.

1.   Membership.  The SES Board will consist of high ranking executives selected by the Director.  Members will be recused from voting on matters involving themselves or their prior decisions and as otherwise required by the Board Chair based on conflicts or other appropriate bases.

2.   Functions.  Under delegation of authority from the Director, the SES Board provides management oversight and is responsible for conducting the following functions:

a.  Executive personnel planning, including determination of numbers of SES positions needed, development of executive staffing plans, forecasting of executive requirements, determination of executive development program objectives.

b.  Preparing recommendations regarding the staffing of executive positions, including selections, promotions, reassignments and details.

c.  Executive development, including selection of candidates for programs to develop executive qualifications, the planning and conduct of such programs for the continuing development of senior executives, and evaluation of performance during developmental assignments.

- 7 -

d.  Position management, including proper use of SES and other positions, and redistribution of functions to maximize the effectiveness of agency executives.

e.  Pay management, through recommendations to the Director on staffing, promotion, and demotion matters, as well as recruitment, relocation and retention pay incentives available to the SES.

f.  Development of policy on discipline and removal of executives for cause.

g.  Development of policy on removal from the SES based on performance and alternatives to removal for use in appropriate cases.

h.  Development of policy on performance appraisal and recognition.

i.  Incorporation of DOJ and FBI equal employment opportunity policies into executive personnel plans and activities.

j.  Establishment of boards and committees to facilitate the administration and operation of the SES, to include review and evaluation of the reports and recommendations from such boards/committees, assuring that DOJ requirements are met where applicable.

k.  Such other matters as are approved, implicitly or explicitly, by the Director and not prohibited by DOJ or other policy or law.

B.  <u>THE PERFORMANCE REVIEW BOARD (PRB)</u>.

DOJ guidance will be provided on an annual basis to establish PRBs in each component.  Please see chapter VI for further information.

Chapter IV.  STAFFING

A.    MERIT PRINCIPLES.  The SES Board will ensure that merit
      principles, executive qualifications, selection criteria,
      and equal employment opportunity objectives are considered
      in selection matters under their purview.  The SES Board
      will review the executive qualifications of each candidate
      meeting selection guidelines, including all current FBI
      SES members and qualified employees outside the FBI SES
      population.

B.    CAREER APPOINTMENTS to the SES are normally made from
      within the career ranks of the FBI, to include both
      Special Agent and non-Agent personnel, considering
      demonstrated executive experiences and, where relevant,
      successful participation in the Career Development
      Program.  Sufficient flexibility exists to allow for the
      appointment of non-FBI career employees whose special or
      unique qualifications indicate a likelihood of executive
      success.

      1.    Probationary Period.  An individual who receives an
            SES career appointment must serve a 1-year
            probationary period.

      2.    Reassignment.  SES members may be reassigned to meet
            mission needs, better use or enhance their executive
            qualifications, or provide developmental
            opportunities.

            a.  Authority:  The Director may reassign SES members
            from one position to another.  The Director, based on
            recommendation from the SES Board, determines that
the           SES member being proposed for reassignment meets the
      technical qualification requirements of the position
      to which being reassigned.  When reassigning key
      executives,, the Director will seek concurrence from
      the Deputy Attorney General prior to the action being
      made final.

            b.  Notice Requirements:  The SES member must be
            provided with written notice in advance of any
            reassignment/transfer.

- 9 -

(1)   Non-geographic reassignments:  The appointee must receive a written notice at least 15 days in advance of the effective date of the reassignment.  An appropriate management official will generally consult with the appointee before the written notice is delivered.

(2)   Geographic reassignments (i.e., to another commuting area): Management will consult with and consider an executive's input prior to making a final reassignment decision. Following a decision, the executive is given a written notice at least 60 days in advance of the effective date of any reassignment.  This written notice must contain the reasons for the reassignment.  The advance written notice may be waived with the written consent of the executive being reassigned.

(3)   Voluntary reassignment:  An SES member may request a reassignment if he/she meets all technical qualification requirements.  Such a request must be in writing signed by the SES member and the documentation should be preserved.  The written request will preclude necessity for the advance notice described above.

C.     LIMITED TERM/LIMITED EMERGENCY APPOINTMENTS to SES are made in consideration of demonstrated special qualifications and/or experience which uniquely qualify the individual to serve either on an emergency basis for a specified, limited period, or in a position the duties of which will expire within a specified period of time or which must be filled on a rotating basis.  The Director must approve all limited appointments and seek the concurrence of the Deputy Attorney General where the appointment is to a key executive position.

Reassignment:

- 10 -

a.   A limited term appointee may be reassigned to another SES position provided that the duties of such a position terminate within five years or less. Under no circumstances may a limited term appointee serve in one or more such positions in the FBI for more than five years.

b.   A limited emergency appointee may be reassigned to another SES position in the FBI which is established to meet a bona fide, unanticipated, urgent need, except that the limited emergency appointee may not serve in one or more such positions in the FBI for more than 18 consecutive months.

c.   Neither a limited term nor a limited emergency appointee may be appointed to or continue to hold a position under such an appointment if within the preceding 72 months the individual has served more than 60 months in the aggregate under any combination of such appointments.

D.   REINSTATEMENT of a former FBI SES career appointee to any SES position for which the appointee is qualified may occur if the following conditions are met.

1.   The appointee has successfully completed, or was not required to complete, a one-year SES probationary period; and

2.   The appointee left SES for reasons other than misconduct, neglect of duty, malfeasance, failure to accept a directed reassignment or to accompany a position in a transfer of function, or less than fully successful executive performance; or

3.   The employee was appointed by the President to any civil service position outside SES, left that position for reasons other than misconduct, neglect of duty, malfeasance, and applies for reinstatement within 90 days after separation from the Presidential appointment; and

4.   The Deputy Attorney General must approve reinstatement to a key executive position.

- 11 -

Reemployed annuitants in the SES serve at the discretion of the Director.  Final administrative action regarding reemployed annuitants in key executive positions is subject to review by the Deputy Attorney General.

CHAPTER V.   REMOVAL AND ADVERSE ACTION

A.    GENERAL.   A career appointee may be removed from the SES
for a variety of reasons, including less than fully
successful performance, misconduct, conditions arising
before appointment, and reduction in force (RIF).   Final
approval for adverse actions involving key executives will
be at the discretion of the Deputy Attorney General.   The
Director is the final approval authority for all other FBI
senior executives.

Unless a career appointee is removed for less than Fully
      Successful executive performance pursuant to the
appraisal process described in Chapter VI, he/she may not
be involuntarily removed from the SES within 120 days
after the appointment of a new Director.   A removal action
based on performance is not subject to the 120-day
moratorium if the action is based on a final rating given
before the appointment of the Director.   Procedural
entitlements and placement of the appointee are dependent
upon the basis for the removal action.

B.    ACTIONS TAKEN DURING PROBATIONARY PERIOD.

1.    Performance-based removal.   The removal for
unsatisfactory performance of a career appointee who
has not completed the probationary period need not be
based on a final rating of record.   Regardless of
whether a rating has been issued, a probationary
executive being removed for performance must be
notified in writing of the effective date of the
action.   This notice must, at a minimum:

a.   State the agency's conclusions as to the
inadequacies of the executive's performance;

b.   State whether the appointee has placement rights
and, if so, identify the position to which he/she
will be assigned (see paragraph E of this chapter
regarding placement rights); and

c.   Show the effective date of the action.

- 13 -

2.   <u>Adverse action</u>.  An employee being removed or
     suspended for misconduct, neglect of duty,
     malfeasance, or failure to accept a directed
     reassignment or to accompany a position in a transfer
     of function, must be notified in writing before the
     effective date of the action.  This notice must, at a
     minimum:

     a.  State the basis for the action (including the
     act(s) of misconduct, neglect of duty, or malfeasance
     if those factors are involved); and

     b.  Show the effective date of the action.

          However, if the employee was a preference
     eligible employee immediately prior to his/her
     appointment, the provisions in 5 CFR Part 752,
     Subpart F apply.

3.   <u>Removal based on conditions arising before
     appointment</u>.  When action to remove is based in whole
     or in part on conditions arising before the
     appointment, and the probationary employee was not a
     preference eligible employee immediately before
     appointment, the following procedures apply:

     a.  The agency shall give the employee an advance
     written notice stating the specific reasons for the
     proposed removal;

     b.  The employee must be provided a minimum of seven
     days to reply; and

     c.  A written decision, showing the reasons for the
     action and the effective date, must be given to the
     employee at or before the time the action will be
     made effective.

          However, if the employee was a preference
     eligible employee immediately prior to his/her
     appointment, the provisions in 5 CFR Part 752,
     Subpart F apply.

4.   <u>Removal based on RIF</u>.  The same procedures apply to

probationary and non-probationary employees during a
RIF.  See C.3., below.

C.  <u>ACTIONS TAKEN AFTER COMPLETION OF PROBATIONARY PERIOD</u>.

   1.   <u>Removal for Performance</u>.  A career appointee may be
        removed from SES and assigned to a GS 15 position
        within the FBI at any time for less than fully
        successful executive performance based on a minimum
        of 120 days in the SES position and in accordance
        with the provisions of Chapter VI.  A career
        appointee who has completed the one year probationary
        period, but who is removed from the SES for executive
        performance, is guaranteed placement in a GS 15
        position (see paragraph E of this chapter).  Any
        career appointee being removed for performance
        reasons will receive a written notice at least 30
        calendar days before the effective date of removal
        which will include:

        a.  The reason for the removal, including reference
        to the final rating(s) upon which the decision was
        based;

        b.  The appointee's right to be placed in a position
        outside the SES, and information regarding the
        position to which the employee will be reassigned, if
        such decision has been made.  If that decision has
        not been made, the employee may be advised of the
        proposed assignment in a supplementary notice issued
        at least 10 days in advance of the effective date of
        the action;

        c.  The appointee's right, if any, to a discontinued
        service retirement; and

        d.  The appointee's right to request a
        reconsideration of the proposed action by the
        Director.  Such a request must be made at least 15
        days prior to the effective date of the action.  For
        key executives, the response to a proposed action
        will be considered by the Director and ultimately the
        Deputy Attorney General who serves as the final
        approval authority.  For all other executives the

Director will serve as the final approval authority. A removal for performance is <u>not</u> appealable to the Merit Systems Protection Board.

2. <u>Adverse Actions (Disciplinary Removal/Suspension)</u>. Action may be taken against a member of the SES for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function.  This action may include removal from the civil service or suspension for more than 14 days.  Suspension in the SES may include indefinite suspension where additional investigation is necessary to resolve serious disciplinary proceedings such as allegations of criminal activity, revocation of security clearance, or disruptive behavior which may have underlying medical causes.

The Office of Professional Responsibility is the entity within the FBI charged with processing adverse actions for review by the Director.

a.  Entitlements.  Any career SES employee who has completed the one-year probationary period, and any probationary or limited term/limited emergency appointee who was a preference eligible employee immediately prior to appointment to the SES, against whom such adverse action is taken, is entitled to:

(1)  At least 30 days advance written notice stating specific reasons for proposed actions. However, if there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment can be imposed, the advance notice may be curtailed to as little as seven days.

(2)  A reasonable time, but not less than seven days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;

(3)  Be represented by an attorney or other representative; and

- 16 -

(4)  A written decision of final action and
specific reasons therefor at the earliest
practicable date.

(4)  If the employee wishes the FBI to consider
any medical condition that may have affected the
basis for the adverse action, he/she will be
permitted to furnish medical documentation of
the condition.

b.  Special circumstances.  If during the required 30
day advance notice period the employee's presence in
the work place may pose a threat to the employee or
others, result in loss of or damage to Government
property, or otherwise jeopardize legitimate
Government business, the following actions may be
taken:

(1)  The employee may be assigned to duties
where he/she is no longer a threat to safety,
the FBI's mission or Government property;

(2)  The employee may be placed on leave with
his/her consent;

(3)  The employee may be carried on appropriate
leave if he/she is voluntarily absent for
reasons not originating with the FBI;

(4)  The notice period may be curtailed, and the
employee placed in a nonduty status with pay,
where the FBI has reasonable cause to believe
that the employee has committed a crime for
which a sentence of imprisonment may be imposed;
or

(5)  If none of the above alternatives are
available, the employee may be placed in a paid
nonduty status during all or part of the notice
period.

c.  Documentation.  The notice of proposed adverse
action will inform the employee of his/her right to

- 17 -

review the material that is relied on to support the
reasons for the action(s).  The FBI will not use
material that cannot be disclosed to that employee,
his/her representative, or designated physician to
support the reasons provided in the notice.

    d.  Determination.  In arriving at its written
decision, the FBI will consider only the reasons
specified in the notice of proposed action and will
consider the reply of the employee or his/her
representative as well as any medical documentation
which has been submitted.  Written notice of the
decision will be delivered at or before the time the
adverse action will be effective.  The Director has
final approval authority regarding removals and
adverse actions for the majority of SES employees,
excepting only those who are key executives for which
final approval authority resides with the Deputy
Attorney General.

3.  Removal as a result of RIF.  A RIF can take place in
the SES based upon elimination or modification of
positions due to a reorganization, lack of funds or
curtailment of work, or other factors.  Retention in
the SES will be based upon procedures consistent with
Title 5 U.S.C. §3595(a).

    An employee who is removed from the SES as the
result of a RIF will be reduced to a GS 15 and placed
in a non-SES position within the FBI.  The reduced
employee will be entitled to guaranteed placement in
accordance with paragraph E of this chapter, if he/she
has completed any required probationary period.  After
receiving the specific notice of a RIF decision, an
employee may appeal that decision in writing to the
Director.

D.  ACTIONS TAKEN AGAINST LIMITED TERM/EMERGENCY APPOINTEES.

1.  Limited term and limited emergency appointees may be
removed or suspended from the SES at any time at the
discretion of the Director, or Deputy Attorney
General for action(s) involving key executives.  All

- 18 -

such appointees must be given at least a one day written notice and have no rights to an administrative hearing or appeal. Such employees do not have reinstatement or pay retention rights. The notice provided shall, at a minimum,

    a.  State the basis for the action (including the act(s) of misconduct, neglect of duty, or malfeasance if those factors are involved); and

b.  Show the effective date of the action.

2.  Removal for disciplinary reasons of limited term and emergency appointees who held preference eligible status immediately prior to entering the SES and completed at least one year of continuous service in the FBI must be in accordance with the provisions in 5 CFR Part 752, Subpart F.

E.  GUARANTEED PLACEMENT OUTSIDE THE SES.

1.  Coverage.  The following information applies to career appointees, other than reemployed annuitants, who are removed from the SES for any of the following conditions:

a.  Removal during the probationary period for other than misconduct, neglect of duty, malfeasance, or other disciplinary reasons;

b.  Removal for less than Fully Successful performance if the appointee has completed or was not required to serve an SES probationary period; or

c.  Removal as a result of a RIF if the appointee has completed or was not required to serve a probationary period.

2.  Placement.  Any position to which a career appointee under 1.b.c.d. is placed must be a continuing position at no less than GS 15 for which he/she meets qualifications requirements.  No career appointee may be placed in a non-SES position which would cause the

- 19 -

separation or reduction in grade of any other
employee.
        An employee who has not completed the FBI SES
probationary period is entitled to be placed in a
position of tenure equivalent to the FBI appointment
held at the time of entry into the SES, unless the
FBI does not have a position of equivalent tenure for
which the appointee meets the qualifications
requirements or if the appointee is willing to accept
a position having different tenure.

        Employees who do not complete the FBI SES
probationary period and did not hold an FBI career
appointment for which they completed a probationary
period prior to entering the FBI SES have no
placement rights.

3.   <u>Pay</u>.  Any career SES appointee placed in a GS 15
     position, as a result of other than an adverse
     action, is entitled to receive *basic pay* at the
     highest rate of:

     a.  The basic pay rate in effect for the non-SES
     position in which placed;

     b.  The basic payable salary in effect for the
     position held by the appointee before entering SES;
     or

     c.  The basic pay rate in effect for the SES career
     appointee immediately before placement in the non-SES
     civil service position.

     [Note:  While basic pay is preserved, other
     components          of salary, to include locality
     and availability pay, will be limited by the pay caps
     applicable for the General Schedule.]

        SES appointees subject to guaranteed placement
prior to completing the FBI SES probationary period
will receive the highest previous rate for the
position to which they are returned.

4.   <u>Disciplinary removal</u>.  An appointee removed for

disciplinary reasons has no entitlement to placement in a position outside the SES, and may not be moved directly from an SES position to a non-SES position. Following the removal action, however, a separate action may be taken to appoint the individual to a position outside the SES for which he/she is eligible.  In such case, all requirements, including suitability requirements, pertinent to the new appointment must be met.

F.   <u>GUARANTEED ANNUITY</u>.  A member of the SES who is removed from SES for less than fully successful executive performance may request a discontinued service annuity if the employee has completed 25 years of service or is at least 50 years of age and has completed 20 years of service.

CHAPTER VI.  PERFORMANCE APPRAISAL

This chapter incorporates the DOJ Performance Management System Plan covering all senior executives.

DEPARTMENT OF JUSTICE
PERFORMANCE MANAGEMENT SYSTEM PLAN
FOR SENIOR EXECUTIVE SERVICE EMPLOYEES

SECTION 1

GENERAL INFORMATION

1.  <u>PURPOSE</u>.  This framework establishes the Department of Justice (DOJ or Department) Performance Management System (PMS) for Senior Executive Service (SES) employees[1] throughout the Department and also includes the Federal Bureau of Investigation and the Drug Enforcement Administration.

2.  <u>SCOPE</u>.  This model plan provides general guidelines for component heads to use in developing performance management plans for their organizations.  Component heads may adopt this plan or develop their own to tailor their PMS and approach for managing SES performance to fit their unique and changing mission, operational needs, and organizational climates.  Component performance plans must be consistent with law and regulation as listed in paragraph 4 of this plan.

3.  <u>POLICY</u>.  The Department recognizes the importance of integrating its performance appraisal, pay, and incentive award programs into the management of its human resources to promote efficient and effective attainment of its mission, program objectives, and strategic planning initiatives.  The Department's PMS for SES members is a management tool to motivate high levels of achievement, and for holding senior executives accountable for their individual and organizational performance by:

a.  Expecting excellence in senior executive performance;

_____

[1] SES employees are those covered by 5 U.S.C. chapter 31, subchapter II.

b.   Linking performance management with the results-oriented goals of the Government Performance and Results Act (GPRA) of 1993;

c.   Setting and communicating individual and organizational goals and expectations;

d.   Systematically appraising senior executive performance using measures that balance organizational results with customer, employee, or other perspectives; and

e.   Using performance results as a basis for pay, awards, development, retention, removal, and other personnel decisions.

4.   AUTHORITIES.  The PMS is established in accordance with the following authorities:

a.   Performance Appraisal - 5 U.S.C. chapter 43, subchapter II (Performance Appraisal in the Senior Executive Service); 5 CFR Part 430, Subpart C (Managing Senior Executive Performance).

b.   Superior Accomplishment Awards - 5 U.S.C. chapter 45 (Incentive Awards); 5 CFR Part 451, Subpart A (Agency Awards).

c.   Records of Employee Performance - 5 CFR Part 293, Subpart D (Employee Performance File System Records).

5.   RESPONSIBILITIES.

a.   The Attorney General (AG) responsibilities:

(1)   Managing the SES and assessing the performance for individual SES members.  Setting and adjusting SES rates of pay for individual senior executives.  The AG has delegated certain responsibilities as appropriate.

b.   The Deputy Attorney General (DAG) responsibilities:

(1)   Directs that the annual assessment of the Department's performance be conducted, issues performance evaluation guidelines, certifies that the results of the appraisal process make meaningful distinctions, and assures pay

adjustments and levels of pay accurately reflect and recognize performance and/or contribution to the Department's performance.

   (2)   Approving performance appraisals for noncareer and key career executives except for SES members in the Office of the Inspector General (OIG);

   (3)   Approving Superior Accomplishment Awards (Special Act or Service) for all noncareer and career executives except for SES members in the OIG; and

   (4)   Approving bonus recommendations for all career executives except for SES members in the OIG.

   (5)   Serving as Chair of the Department's executive Performance Review Board (PRB) established under 5 CFR 430.310.

b. Assistant Attorney General for Administration (AAG/A) responsibilities:

   (1)   Providing assessment of the component's or Department's performance overall as well as each of its major program and functional areas, such as reports of the Department's Government Performance and Results Act (GPRA) goals and other program performance measures and indicators, and evaluation measures and indicators, and evaluation guidelines based, in part, upon those assessments to senior employee rating and reviewing officials and PRB members.

   (6)   Certifying that (1)the senior employee appraisal process makes meaningful distinctions based on relative performance; (2)the results of that process take into account as appropriate the Department's assessment of its performance against program performance measures; and (3)pay adjustments, cash awards, and levels of pay accurately reflect and recognize both individual and organizational performance.

c. Authorized Department Official, (i.e., Component Head) with the exception of the Office of the Inspector General (OIG) responsibilities:

(1)     Setting and adjusting SES rates of pay for individual senior executives within the scope of the Department's Delegation of Authority.

(2)     Appointing SES members within their respective organizations to serve on PRBs;

(3)     Approving performance appraisals for all career SES members within their respective organizations except for certain key career executives[2]; and

(3)     Approving performance based reassignments for all career SES members within their respective organizations except for certain key career executives.

d. The Inspector General responsibilities:

(1)     Appointing SES members to serve on the OIG PRB;

(2)     Approving performance appraisals for all career executives in the OIG;

(3)     Approving Superior Accomplishment Awards (Special Act or Service) for all career executives in the OIG; and

(4)     Approving bonus recommendations for all career executives in the OIG.

6.   <u>DEFINITIONS</u>

--------

Key career executive positions at the FBI include:

a. the positions of Executive Assistant Director, Assistant Director, Assistant Director in Charge, or General Counsel, and

b. positions which report to the Director.

a.      <u>Annual Summary Rating</u>.  The overall rating level that an appointing authority assigns at the end of the appraisal period after considering a Performance Review Board's recommendations.  This is the official rating.

b.      <u>Appointing Authority</u>.  The Attorney General, Department component heads, or other Department official with authority to make appointments in the SES.

c.      <u>Authorized Department Official</u>. The Attorney General or an official who is authorized to act for the Attorney General in the matter concerned.  The Department's Inspector General is the Authorized Department Official for senior executive positions in the Office of the Inspector General consistent with the requirements in section 3(a) of the Inspector General Act of 1978.

d.      <u>Award or Superior Accomplishment Award</u>.  A monetary or non-monetary award for a special contribution resulting in tangible benefits or savings and/or intangible benefits to the government.

e.      <u>Balanced Measures</u>.  An approach to performance measurement that balances organizational results with the perspectives of distinct groups, including customers and employees.

f.      <u>Component</u>.  An Office, Board, Division, or Bureau, i.e., the first major subdivision of the Department that is separately organized and clearly distinguished from other components in work functions and operation.

g.      <u>Component Head</u>.  The official who directs the administration and operations of each Office, Board, Division, and Bureau of the Department of Justice.  However, for the purposes of this plan, the component head for the United States Attorneys and United States Trustees shall be the Director of the Executive Office for United States Attorneys and the Director of the Executive Office for United States Trustees, respectively.

h.      <u>Critical Element</u>.  A key component of an executive's work consisting of one or more duties and responsibilities that contributes to organizational goals and results and is so important that unsatisfactory performance of the element would make the executive's overall job performance unsatisfactory.

i.      <u>Higher Level Review Official</u>.  The official who is responsible for providing a higher level review of an SES member's initial appraisal. (Typically the second level supervisor)  Note:  The reviewer must hold a higher level position than the rating official, but not necessarily be in the same organization.

j.      <u>Intangible Benefits</u>.  Benefits to the Government which cannot be measured in terms of dollar savings.

k.      <u>Initial Summary Rating</u>.  The overall rating level the supervisor derives from appraising the senior executive's performance during the appraisal period and forwards to the Performance Review Board.

l.      <u>Interim Rating</u>.  An interim rating is issued to appraise employee performance during details, or during assignment to any Department PMS position in which the employee served for the minimum appraisal period during the annual appraisal cycle.  The weight given to interim ratings in deriving the employee's annual summary rating should be proportionate to their share of the appraisal cycle.

m.      <u>Minimum Appraisal Period</u>.  The minimum amount of time in which an employee must have served in a position under written performance elements and requirements in order for an appraisal to be rendered concerning such performance.  The Department's minimum appraisal period is 90 days. Component heads may establish longer minimum appraisal periods.

n.      <u>Nonmonetary Award</u>.  A medal, certificate, plaque, citation, badge, or other similar item that is given to honor an individual.

o.      <u>Performance</u>.  The accomplishment of the work described in the senior executive's performance plan.

p.      <u>Performance Appraisal</u>.  The review and evaluation of a senior executive's performance against performance elements and requirements.

q.      <u>Performance Award</u>.  Performance awards, commonly called "bonuses," recognize and reward excellence of career SES appointees or a former career SES appointee who has elected to retain bonus eligibility under 5 U.S.C. § 3392(c).  Specific due dates and instructions for recommending executives for bonuses will be issued by the Deputy Attorney General for each appraisal cycle.

r.        Performance Management System.  The framework of
policies and practices established under 5 U.S.C. chapter 43,
subchapter II and 5 CFR Part 430, Subpart C, for planning,
monitoring, developing, evaluating, and rewarding both
individual and organizational performance and for using
resulting performance information in making personnel
decisions.

s.        Performance Requirement.  A statement of the
performance expected for a critical element or other element.
A performance requirement may include, but is not limited to,
factors such as quality, quantity, timeliness, and manner of
performance.

t.        Performance Review Board.  Performance Review Boards
are established under the provisions of 5 U.S.C.
        § 4314(c) and shall review and evaluate the initial
        summary rating of a senior executive's performance by
        his/her supervisor, along with any response by the senior
        executive or higher level review determination (if
        appropriate), and make recommendations to the appointing
        authority relative to the performance of the senior
        executive.  The appointing authority shall issue
        appraisals/ratings only after considering the
        recommendations of a Performance Review Board.  The
        Performance Review Board must also make recommendations
        concerning individual performance awards (bonuses) to the
        Deputy Attorney General.

u.        Progress Review.  The review of the senior
executive's progress in meeting the performance requirements.
A progress review is not a performance rating.  Regulations
require at least one progress review midway through the
appraisal period.

v.        Rating Levels.  The plan describes five rating
levels:  Outstanding, Excellent, Fully Successful, Minimally
Satisfactory, and Unsatisfactory.

w.        Rating Official.  The individual who is responsible
for communicating to the employee the elements of his or her
position, establishing performance requirements for those
elements, appraising performance, and assigning the initial
performance rating.  Normally this is the employee's immediate
supervisor.

x.      <u>Relative Performance</u>.  The performance of a senior
employee with respect to the performance of other senior
employees, including their contribution to Department
performance, where appropriate, as determined by the
application of a certified appraisal system.

y.      <u>Senior Executive Performance Work Plan</u>.  The written
summary of work the senior executive is expected to accomplish
during the appraisal period and the requirements against which
performance will be evaluated.  The plan addresses all critical
elements and any other performance elements established for the
senior executive.

z.      <u>Senior Executive Resources Board</u>.  The Senior
Executive Resources Board (SERB) provides overall management
and control of the Department's SES.  The members of the SERB
are the Deputy Attorney General, Associate Attorney General,
and Assistant Attorney General for Administration.  The
Assistant Director for Leadership Effectiveness, Personnel
Staff, Justice Management Division serves as the Executive
Secretary for the SERB.  Additional members may be added at the
direction of the Attorney General.

aa.     <u>Special Act or Service</u>.  A contribution or
accomplishment in the public interest which is:  (l) a
nonrecurring contribution either within or outside of job
responsibilities, (2) a scientific achievement, or (3) an act
of heroism.

bb.     <u>Strategic Planning Initiatives</u>.  Department or
component strategic plans, annual performance plans,
organizational workplans, and other related initiatives.

7.  <u>TRAINING</u>.  Component heads are required to make effective
use of available resources (e.g., technology, learning,
information, etc.) to maximize SES employee performance.  It is
essential that training and information on the PMS be provided
to SES employees and their managers and supervisors to assure
effective administration of the PMS.  Topics covered should
include the Department's PMS for SES members, performance
appraisal, and pay incentive programs (i.e., pay for
performance and superior accomplishment awards).

8.  <u>CERTIFICATION CRITERIA</u>.  The plan incorporates the
following criteria designed to guide the Department in the
strategic use of the performance appraisal system to support
and attain the Department's mission, goals, and objectives.

a.    <u>Alignment</u> - performance expectations for individual senior employees are linked to or derived from, the Department's mission, strategic goals, program/policy objectives, and/or annual performance plans.

b.    <u>Consultation</u> - Performance expectations are based on senior employee involvement and input that are communicated at the beginning of the appraisal period and appropriate times thereafter.

c.        <u>Results</u> - Performance expectations for senior employees apply to their respective areas of responsibility; reflect expected Department or Component performance; clearly describe performance that is measurable, demonstrable, or observable; and focus on tangible outputs, outcomes, milestones or other deliverables;

d.        <u>Balance</u> - Performance expectations for senior employees  include appropriate measures or indicators of results; customer/stakeholder feedback; quality, quantity, timeliness, and cost effectiveness, as applicable; and competencies or behaviors that contribute to and are necessary to distinguish outstanding performance;

e.        <u>Assessment and Guidelines</u> - The Attorney General, or the AAG/A, provides assessment of the performance overall as well as each of its major program and functional areas, such as reports of the Department's GPRA goals and other program performance measures and indicators, and evaluation measures and indicators, and evaluation guidelines based, in part, upon those assessments to senior employee rating and reviewing officials and PRB members.  These assessments and guidelines are provided at the conclusion of the appraisal period but before individual senior employee performance ratings are recommended, so that they may serve as a basis for individual performance evaluations as appropriate.

f.        <u>Oversight</u>  - Rigorous oversight of the appraisal process is provided by the Attorney General or AAG/A who certifies that:

    (1)   The senior employee appraisal process makes meaningful distinctions based on relative performance;

    (2)   The results of that process take into account, as appropriate, the Department's assessment of its performance against program performance measures; and

(3)   Pay adjustments, cash awards, and levels of pay based on the results of the appraisal process accurately reflect and recognize individual performance and/or contribution to the Department's performance.

The assessment may be any official or formal organizational assessment done for the purpose of determining how well the Department and its individual components have performed during the appraisal period.

2.   Accountability - Senior employee ratings (as well as subordinates' ratings for those with supervisory responsibilities) that appropriately reflect the employee's performance expectations and are clearly linked to organizational mission, GPRA strategic goals, or other program or policy objectives.

3.   Performance Differentiation - The Department is using a five-level rating system for senior employees which includes a rating level that reflects outstanding performance.  The appraisal process results in meaningful distinctions in relative performance based on senior employees' actual performance against rigorous performance expectations and their relative contributions to Department performance.

4.   Pay Differentiation - Individual pay rates and pay adjustments, as well as their overall distribution, reflect meaningful distinctions among executives based on their relative contribution to Department's performance; The Department's highest performing senior employees must receive the largest pay adjustments and/or highest pay levels (including both basic pay and performance awards), particularly above the rate for Level III of the Executive Schedule.

9.   PROGRAM EVALUATION.

a.      Reports on the Department's PMS activities will be provided to the Executive Secretary of the Department's SERB by the component heads.  These reports will be used to monitor performance management activities such as rating distributions, award payouts, regulatory compliance, etc.

b.      PRBs will be responsible for providing recommendations to the appropriate appointing authority on the SES performance management system.

c.      Based on this data, recommendations or required corrective actions will be developed as appropriate for implementation in the organization.

SECTION 2

PERFORMANCE APPRAISAL FOR THE SENIOR EXECUTIVE SERVICE

10.  <u>PERFORMANCE APPRAISAL PREMISES AND PRINCIPLES</u>.  The
Department has adopted the following set of premises and
principles to guide performance management within the SES.

a.       The Department of Justice workforce is comprised of
dedicated, hardworking public servants who strive to deliver
value to the American taxpayer.

b.       The Department will pursue a workforce that is fully
     representative of the diversity of the American people.

c.       The Department will pursue a workforce that is
engaged and involved in designing a results-oriented,
performance-based, and customer-focused system that delivers
value.

d.       Department of Justice federal leaders and managers
create a climate for excellence by communicating their vision,
values, and expectations clearly, and by:

     (1)       creating an environment in which every employee
          may excel, regardless of race, color, religion, sex,
          age, national origin, disability, sexual preference,
          or parental status, and which is free of sexual
          harassment;

     (2)       creating an environment for continual learning;

     (3)       working in partnership with employees to ensure
          they reach their full potential;

     (4)       recognizing and rewarding excellence with
          financial incentives and non-financial incentives,
          such as increased flexibility to do jobs, more
          meaningful work, and achieving a sense of
          accomplishment; and

     (2)             taking timely action to both reward and
          correct performance appropriately, ensuring that
          excellence is the standard for all.

e.       Individuals are personally responsible for being
results-oriented, performance-based, and customer-focused.

f.        Leaders, managers, and employees have a mutual obligation to provide value and excellence.  This requires each individual to be continually challenged to perform their best.  Taking action to improve the performance of each individual and providing fair and accurate appraisals is imperative to achieving our mission.

g.        The Department of Justice is committed to pursuing effective performance management.

11.   PERFORMANCE APPRAISAL PERIOD.

a.        The performance appraisal period for senior executives is July 1 - June 30 of the following year, unless advanced or delayed by appropriate authority.

b.        If a senior executive fails to complete the established minimum appraisal period because of reassignments, change in supervisor, or other legitimate management reasons, his/her appraisal period should be extended for the minimum appraisal period at which time a rating of record should be prepared.

c.        The established performance appraisal period may be terminated at any time after the minimum appraisal period is completed, if there is adequate basis on which to appraise and rate the senior executive's performance.

d.        An appraisal or rating of an SES career appointee may not be made within 120 days after the beginning of a new Presidential Administration.

PERFORMANCE WORK PLANS.

a.        Each senior executive must have a performance work plan (PWP) that describes the individual and organizational expectations for the appraisal period and sets the requirements against which performance will be evaluated.
b.        Rating officials must develop PWPs in consultation with senior executives and communicate (in writing) the plans to the executives on or before the beginning of the appraisal period.

c.        The PWP for career and noncareer SES members will be

-34-

written in a standard/generic format with at least three critical elements to ensure alignment with Departmental goals.

a.        Elements must reflect individual and organizational performance.  They can be either capsulized aspects of the most important duties and responsibilities associated with the SES position or specific projects or tasks which can be logically inferred from the duties and responsibilities cited in the employee's position description.  Accomplishment of organizational objectives MUST be included in PWPs by incorporating objectives, goals, program plans, work plans, or by other similar means that account for program results.

b.        Before or at the outset of the rating period (usually within 30 days) or, in the case of an executive entering a new position, as soon as possible (but no later than 30 days) after entry into the position, a PWP must be either developed or reviewed for continued appropriateness and the elements and performance requirements covered by the PWP communicated to the executive.

c.        Final authority for establishing the elements and requirements rests with the rating official.  However, the PWP can be modified, as appropriate, at any time during the appraisal period to reflect changing priorities or shifts in workload.  Component guidance may require a second level review of SES PWPs.

12.    PERFORMANCE REQUIREMENTS.

a.        Like critical elements, performance requirements must be consistent with the goals and performance expectations in the Department's strategic planning initiatives.

b.        Performance requirements MUST be written at the Fully Successful level.  They may also be written at additional levels consistent with component level guidance.  These requirements are the standards against which the senior executive's performance will be appraised.

c.        The absence of a written performance requirement at a given level does not preclude the assignment of a rating at that level.

13.    REVIEW OF PERFORMANCE WORK PLANS.

a.        A higher level review of all SES ratings to ensure appropriate levels of quality and difficulty of performance requirements within each SES PWP and in SES PWPs across the component is encouraged, but not required.

b.        The SERB will ensure that the review process across the Department is fairly managed.  These reviews may be made during the appraisal process or at such other times as deemed appropriate.

14.  <u>PROGRESS REVIEWS</u>.

a.        Component heads and supervisors must monitor each senior executive's performance during the appraisal period and provide ongoing, timely, and honest feedback to the senior executive on progress in accomplishing the performance elements and requirements described in the performance plan to sustain and reinforce expected performance.

b.        A progress review shall be held for each SES member at least once during the appraisal period.  At a minimum, senior executives must be informed about how well they are performing including their level of performance by comparison with the elements and performance requirements established for their positions.

c.        Supervisors must provide advice and assistance to senior executives on how to improve their performance.

d.        If either the rating official or the executive feels that modifications to previously established elements or performance requirements are warranted because of unforeseen shifts in workload or changes in priorities, he/she must be prepared to discuss possible alternatives.  If the rating official feels that performance in one or more of the established elements is lacking, he/she should discuss possible corrective actions as well as the ramifications of unimproved performance.  The progress review should not be viewed solely as a discussion of performance weaknesses or deficiencies, but also serve as a forum for encouraging employees whose performance is Fully Successful or Excellent to strive for even greater achievement.

e.       If modifications in either elements or requirements are warranted, they must be discussed and recorded during the review process.  At the end of the review session, both the rating official and the executive should share a common understanding of where the employee stands in relationship to his/her PWP, what is expected of the employee through the remainder of the rating period, and what actions, if any will be initiated as a result of performance to date.  The executive and the rating official each sign and keep a copy of the PWP, acknowledging that the progress review was conducted and reflecting any modifications in the elements or requirements.

15.   APPRAISING PERFORMANCE.

a.       If an SES member has served in his/her current position under written performance elements and requirements for the established minimum appraisal period when the performance appraisal cycle ends (June 30 of each year), and there is adequate basis on which to rate the senior executive, the employee must be rated as soon as practical after the end of the appraisal period on the appropriate performance appraisal record.

b.       Each executive must be appraised on each element of the PWP, unless the employee has had insufficient opportunity to demonstrate performance on the element.  On the rating date or as soon as possible thereafter, the rating official should be prepared to compare the overall achievements of the employee with respect to each element and performance requirement based on personal knowledge and a summary of accomplishments provided by the rated executive.

c.       The rating official should then briefly summarize in narrative fashion the achievements of the executive against each performance requirement established for the elements.  Rating officials have the option of summarizing in a narrative fashion the achievements of the executive against the performance requirements established for the job elements, or to provide narrative comments only for rating levels to be assigned that are not described in the executive's PWP.

d.       Appraisals of senior executive performance must be based on both individual and organizational performance, taking into account such factors as:

-37-

(1)         Results achieved in accordance with the goals of the Government Performance and Results Act of 1993;

(2)            Customer satisfaction;

(1)         Employee perspectives;

(2)         The effectiveness, productivity, and performance quality of the employees for whom the senior executive is responsible; and

(3)         Meeting equal employment opportunity, and diversity goals and complying with the merit system principles set forth under section 2301 of title 5, United States Code.

e.      The supervisor will assign individual element ratings as follows:

(1)         Outstanding.  Performance on an individual critical element of the job which clearly demonstrates a level of achievement which exceeds to an exceptional degree the performance requirements for Fully Successful.  Performance at this level so exceeds what is normally required of the job that it is deserving of special recognition.

(2)            Excellent.  Performance on an individual critical element which markedly exceeds the performance requirements for Fully Successful.

(1)         Fully Successful.  Performance on an individual critical element of the job which completely meets, or exceeds to a limited degree, the performance requirements for Fully Successful established at the beginning of, or modified during, the rating period.

(2)         Minimally Satisfactory.  Performance on an individual critical element of the job which just falls short of the performance requirements for Fully Successful.  Performance at this level shows significant deficiencies that require correction.

-38-

(3)      <u>Unsatisfactory</u>.  Performance on an individual critical element of the job which is substantially below the performance requirements for Fully Successful.  Usually the employee's performance will show serious deficiencies in terms of quantity, quality, timeliness of work, or manner of performance.

16.   <u>INITIAL SUMMARY RATING</u>.

a.       The supervisor must develop an initial summary rating of the senior executive's performance, in writing, and share that rating with the senior executive.

b.       The supervisor will assign an initial summary rating level as follows:

(1)   <u>Outstanding</u>.  A majority of the critical elements must be rated Outstanding; no critical element may be rated less than Excellent.

(2)   <u>Excellent</u>.  A majority of the critical elements must be rated Excellent or higher and no critical element may be rated less than Fully Successful.

(3)   <u>Fully Successful</u>.  A majority of the critical elements must be rated Fully Successful or higher; no more than one critical element may be rated Minimally Satisfactory.

(4)   <u>Minimally Satisfactory</u>.  More than one critical element must be rated Minimally Satisfactory and no critical element may be rated Unsatisfactory.

(5)   <u>Unsatisfactory</u>.  Performance in one or more critical elements must be rated Unsatisfactory.

17.   <u>RIGHT TO RESPOND IN WRITING AND REQUEST HIGHER LEVEL REVIEW</u>.

a.       Senior executives in the Department are entitled to one higher level review, unless the component provides for more than one review level.

-39-

b.      At the time of rating, the rating official shall advise the senior executive of his or her right to respond in writing to any aspect of the rating and to have that rating (along with the written response, if any) reviewed at a higher executive level, i.e., higher organizational level.

c.      If the senior executive chooses to exercise his or her right to respond or seek higher level review, such response must be made to the rating official within 7 calendar days.

18.  <u>HIGHER LEVEL REVIEW</u>.

a.      After any initial discussions are completed and the written response, if any, to the initial summary rating is received, the rating official will, upon request of the executive, forward the completed rating form to the appropriate reviewing official (normally the next higher official in the supervisory chain) for the higher level review.

b.      The higher level official cannot change the supervisor's initial summary rating, but may recommend a different rating to the PRB and the appropriate appointing authority.

c.      Both the executive and the rating official must be given copies of the reviewer's findings and recommendations.

d.      After the higher level review is completed, the appraisal package (the rating and accompanying documentation, including the higher level review's comments and recommendation, if any) will be forwarded to a PRB for review.

19.  <u>PERFORMANCE REVIEW BOARD REVIEW</u>.

a.      The PRB must review the rating and comments from the senior executive and the higher level official, if any, and make recommendations to the appropriate appointing authority.

b.      The PRB will consider the material forwarded and make a written recommendation to the appropriate appointing authority regarding the annual summary rating to be assigned as well as any related matters such as performance pay, basic pay rate adjustments, performance awards, reassignments, and

removals. (See Appendix 1 for the Establishment and Functions of the Department of Justice SES PRBs.)

20.  ANNUAL SUMMARY RATING.

a.      The appropriate appointing authority will make the final decision in writing regarding the annual summary rating to be assigned and related personnel recommendations after considering any PRB recommendations.

b.      The annual summary rating approved by the appropriate appointing authority is final and becomes the executive's official rating.  Senior executive performance appraisals and ratings are not appealable.

c.      One copy of the approved rating form must be provided to the employee; another copy may be retained by the rating official; and a third copy will be forwarded to the servicing personnel office for retention in the Official Personnel File (OPF) or Employee Performance File (EPF).

d.      Personnel actions resulting from the annual summary rating must be promptly initiated by the rating official.


21.  DETAILS AND JOB CHANGES.

a.      Position Changes Within the Department.  When an executive occupies two or more positions in the Department during the appraisal cycle (in which the executive served under written elements and performance requirements for the minimum appraisal period) an interim rating must be prepared.  This interim rating, along with the PWP upon which it was based, must be forwarded to the new supervisor for inclusion in the rating of record due at the end of the appraisal cycle.  The weight given to this interim rating should generally be proportionate to its share of the appraisal period.  When such interim ratings are used to develop a rating of record, both the interim ratings and the PWPs upon which they are based must be attached to the final annual summary rating.

b.      Temporary Assignments Within the Department.  If the senior executive is detailed or temporarily reassigned WITHIN the Department and if the assignment is expected to last the

-41-

minimum appraisal period or longer, written critical elements and performance requirements MUST be provided to the employee and an interim rating must be prepared based on the performance during the assignment.  The weight given to this interim rating in preparing the rating of record should generally be proportionate to its share of the appraisal period.

c.      Temporary Assignments Outside the Department.  If the employee is temporarily assigned OUTSIDE the Department, reasonable efforts must be made to obtain appraisal information from the outside organization which will be considered in deriving the employee's next summary rating.   Accordingly:

    (1)  If the employee has served in the Department for the minimum appraisal period, the employee must be rated. The rating of record shall take into account appraisal information obtained from the borrowing organization; or

    (2)  If the employee has not served IN the Department for the minimum appraisal period, but has served for the minimum appraisal period in a position OUTSIDE the Department, reasonable efforts must be made to prepare a rating of record using appraisal information obtained from the borrowing organization.

d.      Transfers From Other Agencies.  If an employee transfers from another agency into the Department during the appraisal cycle, any interim or summary rating(s) which are forwarded from the losing agency (and which encompass periods of time included in the Department's appraisal cycle) MUST be considered in deriving the rating of record.  Weight given to these ratings should be proportionate to their share of the appraisal cycle.

e.      Transfers To Other Agencies.  If an executive transfers to a new agency at any time during the appraisal period, a summary (interim) rating must be prepared by the employee's supervisor and provided to the gaining agency.

22.  PROCESSING AND RETENTION OF PERFORMANCE RATINGS.

a.      Control dates established by Departmental guidance must be adhered to in order to ensure the proper review of ratings by PRBs.

b.      All performance related records must be maintained in either the OPF or EPF for no less than 5 years from the date the rating is issued.

c.      The performance appraisals for the most recent 5 years and the most recent PWP and interim rating will be forwarded as part of the OPF to a gaining agency upon an employee's transfer. (Note: The FBI is exempt from the requirement to release performance plans and appraisals.)

23.  <u>VALIDITY OF RATINGS</u>.

a.      Each final annual summary rating issued within a component of the Department (or other agency which is subject to the performance appraisal requirements of 5 U.S.C. chapter 43, subchapter II) supersedes the previous one and is considered to be the valid rating of record.

b.      When a new SES employee enters on duty with the Department at any time during the appraisal period, the most recent annual summary rating rendered in the former agency will be recognized as the official rating of record until it is superseded by a rating of record issued under this plan.

SECTION 3

ACTIONS BASED ON LESS THAN FULLY SUCCESSFUL PERFORMANCE

24.  GENERAL.

a.       5 CFR § 430.306(a) requires that supervisors must advise and assist employees in improving their performance.

b.       Any SES member receiving an Unsatisfactory rating shall be reassigned or transferred within the SES or removed from the SES.  However, any SES member who receives two Unsatisfactory ratings within any period of 5 consecutive years shall be removed from the SES.

c.       A Minimally Satisfactory rating permits a year's period to show improvement.  However, any SES member who receives two less than Fully Successful ratings within 3 consecutive years shall be removed from the SES.

d.       When an employee's performance falls below Fully Successful (whether or not a formal appraisal has been given), good personnel practice suggests that this determination should trigger prompt action on the part of the supervisor to bring the employee's performance up to an acceptable level or, if warranted in the case when an employee is Unsatisfactory, to begin steps leading to the placement of the employee in a job he or she can successfully perform.  Exactly what steps should be taken depends on the circumstances of the case.

e.       Formal training, on-the-job training, counseling, and closer supervision are common approaches to below par performance problems.  An organization has no justification, however, for continuing to retain an employee whose performance is Unsatisfactory after attempts to improve the employee's performance or place him or her in another position fail.

25.  PROCEDURES.  Since performance appraisal is a continuous process, the following procedures shall be followed at any time during the year after the minimum appraisal period has been completed when a supervisor concludes that the employee's performance in one or more critical elements is below Fully Successful.

-44-

a.  <u>Discussion</u>.  There must be a discussion between the supervisor and the employee for the purpose of:

    (1)     Advising the employee of specific shortcomings between observed performance in the critical element(s) under scrutiny and the performance requirements associated with the particular element(s); and

    (2)     Providing the employee with a full opportunity to explain the observed deficiencies.

b.        <u>Determine Appropriate Action</u>.

    (1)     If the supervisor feels that the matter has been resolved to his or her satisfaction during the course of the discussion, the supervisor need not take further formal action at this point.

    (2)     If the supervisor of the senior executive feels that further action is necessary, he or she shall complete an appraisal and record his or her assessments on the rating form.  The supervisor shall advise the senior executive of his or her right to respond in writing within 7 calendar days and of the action he or she is recommending with respect to the proposed Minimally Satisfactory or Unsatisfactory rating.  The supervisor should also advise the senior executive of the review levels required before the rating and proposed action become final, i.e., a possible review by a higher level official, the PRB, and, ultimately, the Deputy Attorney General or component head as appropriate.  The senior executive should also be advised that the rating and proposed action do not become final until the Deputy Attorney General's/component head's decision is made.

    (3)     If a first-time rating of Minimally Satisfactory is approved by the Deputy Attorney General/component head, it does not carry with it any legally mandated personnel action.  However, as a practical matter, such a rating should carry with it a recommendation reflecting the marginal performance it represents.  Recommended actions that the rating official may wish to consider include:  (1) a reduction in SES pay

-45-

(limited by OPM regulation to one level within a 12-month period); (2) additional training designed to correct the deficient performance; or (3) reassignment to another SES position.

(4)        A career appointee may be reassigned to another SES position only if the appointee receives at least 15 days advance written notice for a reassignment within the commuting area and at least 60 days advance written notice for a reassignment outside the commuting area.  The appointee may voluntarily waive the above notices.  Such waivers must be in writing.

(5)        If the Unsatisfactory rating is approved by the Deputy Attorney General/component head, the senior executive must be reassigned to a different position within the SES or removed from the SES in accordance with the provisions of 5 CFR Part 359, Subpart E.

        (i)        A career appointee may be removed from the SES at any time prior to the completion of the probationary period required under 5 U.S.C. § 3393.  However, a career appointee who has completed the probationary period and whose removal from the SES for less than Fully Successful executive performance is contemplated is entitled, to a 30-day advance written notice of such action (see 5 CFR § 359.502).  In addition, upon request, the career appointee shall be granted an informal hearing before an official designated by the Merit Systems Protection Board at least 15 days before the effective date of the removal.  At this time, the career appointee may appear and present arguments.  Such hearing shall not give the career appointee the right to initiate an action under 5 U.S.C. § 7701 (formal appellate procedure) nor need the removal action be delayed as a result of the granting of such hearing.  A career appointee who is removed from the SES for less than Fully Successful performance is entitled to be placed in a civil service position (other than an SES position) in accordance with the provisions of

-46-

5 U.S.C. § 3594.

(i)       The removal of an SES career appointee for performance reasons is subject to the 120-day moratorium, except for a removal based on an unsatisfactory rating given before the appointment of a new agency head or noncareer supervisor that initiated the action.  This includes an optional removal based on one unsatisfactory rating, a mandatory removal based on two unsatisfactory ratings in 5 years, and a mandatory removal based on two less than fully successful ratings in 3 years when the second rating is an unsatisfactory rating.

(6)       SES noncareer and limited appointees may be reassigned or removed from the SES at any time.  Such SES members are not entitled to the procedures described in subparagraphs (b)(5) i-ii above.  Regulations require that noncareer and limited appointees receive notice in writing before the effective date of a removal (See 5 CFR Part 359, Subpart I.).

-47-

APPENDIX TO DOJ SES PMS PLAN

ESTABLISHMENT AND FUNCTIONS OF
THE DEPARTMENT OF JUSTICE
SES PERFORMANCE REVIEW BOARDS

1.   <u>GENERAL</u>.  Under the provisions of 5 U.S.C. § 4314(c), each agency is required to establish one or more SES Performance Review Boards (PRBs) which shall review and evaluate the initial appraisal of a senior executive's performance by his/her supervisor, along with any response by the senior executive or higher level review determination (if appropriate), and make recommendations to the appointing authority relative to the performance of the senior executive. The appointing authority shall issue appraisals/ratings only after considering the recommendations of a PRB.

2.   <u>ESTABLISHMENT OF BOARDS</u>.  Component heads will jointly establish one or more PRBs to review ratings and bonus recommendations of the executives within their appointing authority.  There will be a sufficient number of PRBs established to review, evaluate, and make recommendations with respect to the individual performance of the senior executives in the component.

3.   <u>MEMBERSHIP</u>.

a.       Each PRB is composed of three or more members.  The size of the PRB will depend upon the number of actions to be reviewed.

b.       The Department establishes a standing PRB member list comprised from Department career SES appointees  Each year, the Assistant Attorney General for Administration shall provide updates to the list of new Department SES members that are eligible to serve on standing PRBs.  A PRB member's name will be published in the Federal Register before their service begins.  Those individuals on the list can serve until they have left the SES.  Executives from Federal Bureau of Investigation and the Drug Enforcement Administration are exempt from publishing their executive's names for security reasons, but can serve as members on any Department of Justice PRB.

-48-

c.        The components have flexibility in determining who from the list will serve on their PRB(s)(including the chairperson).

d.        Members of PRBs are appointed in such a manner as to assure consistency, stability, and objectivity in reviewing performance appraisals.

e.        Members of each PRB shall:

    (1)  Be career SES members (or equivalent);

    (2)  Have current Fully Successful performance ratings or above;

    (3)  Consistently apply Department appraisal systems effectively in their respective organizations; and

    (4)  Possess a thorough knowledge and understanding of the performance appraisal system and other pertinent aspects of the SES.

f.        Appointees will not serve on the PRB reviewing the actions of their own organizations.  Accordingly, the supervisory official who made or reviewed the initial appraisal of an executive may not act as a member of the PRB considering the appraisal of that subordinate executive.  In addition, a subordinate to an executive whose performance appraisal is under review may not act as a member of the PRB with respect to his or her superior.  No senior executive may review his/her own rating.  A member of a PRB in conflict with the above will remove himself or herself from action or consideration by the PRB and such action/consideration will be accomplished by other PRB members.

4.   FUNCTIONS.

a.        Each PRB shall review and evaluate the initial appraisal and rating by the rating official of the senior executive, the senior executive's written response (if any), and the written comments of the reviewing official (if such written comments were made), and any accompanying recommendations for awards, bonuses, proposed corrective

-49-

actions, or the like.  In its consideration of a case, a PRB may call witnesses if it feels added clarification is needed. Each PRB shall consider equity and consistency among the ratings of executives as well as the accuracy, fairness, and effectiveness of individual ratings.  A primary goal of the review is to ensure that final ratings above the Fully Successful are awarded only to senior executives whose performance fully justifies them.  A PRB may review any aspect of the appraisal process, including the critical elements and performance requirements set for a senior executive prior to or as adjusted (modified) during the performance appraisal period.

b.      PRB recommendations shall be in writing and shall be submitted under signature of the PRB chairperson, along with the proposed rating and accompanying documentation, to the appropriate appointing authority.  Where the PRB does not concur with the initial appraisal or rating, or the record shows employee or reviewing official disagreement with the rating official's actions, the PRB's recommendations shall be supported by a written justification.  No appraisal or rating is final until the appropriate appointing authority takes final action.  As has been indicated earlier, a PRB is also responsible for reviewing or making recommendations, to the appointing authority concerning individual performance actions such as bonuses for career SES appointees or pay increases for career and noncareer SES appointees.

CHAPTER VII.  PAY FOR THE SENIOR EXECUTIVE SERVICE

A.   <u>SALARY LEVELS</u> for the SES are established as a function of personal qualifications, individual and organizational performance, and the duties and responsibilities of the position held by the senior executive, and DOJ guidance.  The SES pay band has a floor equal to 120% of GS 15, step-1, and a ceiling of Executive Level II.  During periods when the DOJ pay-for-performance system is not certified by the Office of Personnel Management and Office of Management and Budget, the payband will be limited to Executive Level III.  Decisions affecting pay levels for those members in key executive positions must be confirmed by the Deputy Attorney General prior to being made final.

B.   <u>SETTING INDIVIDUAL PAY RATES</u>.

1.   <u>Initial Salary Level</u>.  The Director will establish an initial salary which reflects up to a 10% increase over pre-SES salary.  In instances where a greater increase is warranted, the Director may seek a waiver from the Deputy Attorney General.

2.   <u>Pay Adjustments</u>.  The DOJ will conduct a salary review of all senior executives on at least an annual basis.  Recommendations for merit based salary increases will be provided by the Director.

   a.   Lowering a senior executive's pay.  A senior executive's pay may be lowered as the result of poor performance or conduct.

   b.   Pay Computation.  To compute the hourly rate of an SES employee, divide the annual rate by 2,087 (5 CFR 534.404).

   c.   Premium Pay.  SES members are excluded from all forms of premium pay, including overtime, Sunday and holiday pay rates, night, standby, irregular and hazardous duty differential, and compensatory time off (5 U.S.C 5541(2)(xvii).

C.   <u>AWARDS</u>.

1.  <u>Presidential Ranks</u>.  SES career appointees may be awarded
one of two Presidential ranks for sustained superior
performance, Distinguished Rank or Meritorious Rank.  The
Director will receive recommendations for candidates for these
ranks from the Deputy Director and other high ranking heads of
offices and divisions.  The recommendations take into account
an individual's performance over a period of three years in the
SES.  The Director will forward recommendations to the Attorney
General who will make final nominations to the President.

The President may award to any SES career appointee nominated
by the Attorney General the rank of:

    a.  Distinguished Executive for sustained extraordinary
    accomplishment, or

    b.  Meritorious Executive for sustained accomplishment.

    An SES appointee who receives a rank of either
Distinguished or Meritorious Executive shall not be entitled to
receive that same award during the following four years.  A
Distinguished rank award winner cannot receive a performance
award in the same calendar year.

    A career SES member awarded a Distinguished or Meritorious
rank will receive a monetary award consistent with the
appropriate rank (5 U.S.C. §4507), currently 20% of basic pay
for Meritorious and 35% of basic pay for Distinguished.  A
Distinguished rank may be awarded to no more than one percent
of the total number of SES members.  A Meritorious rank may be
awarded to no more than five percent of the total number of SES
members.

2.  <u>Performance Awards (Bonuses)</u> may be paid to a limited
    number of executives who demonstrate exceptional
    performance in attaining organizational goals.
    Eligibility for performance bonuses is determined during
    the annual performance appraisal process.  All career SES
    members rated at least Fully Successful in all critical
    elements may be recommended by the Director to the Deputy
    Attorney General for a performance award of between five
    and 20 percent of the senior executive's basic pay.
    Funding for performance awards granted in any fiscal year

-52-

is based on three to ten percent of the aggregate salary
of career appointees as of the end of the preceding fiscal
year.  A career SES member may receive only one such award
for performance in a single year.

3.  <u>Incentive Awards</u>.  Incentive awards, including time-off,
significant accomplishment, and on-the-spot awards
recognize contributions resulting in tangible or
intangible benefits or savings.  These awards are designed
to improve government efficiency, economy and
effectiveness by motivating and rewarding employees for
efforts which benefit the government.  Senior executives
are normally exempt from monetary Incentive Awards in lieu
of their eligibility to receive performance awards as
described in item #2, above.  Executives remain eligible
for recognition under the Suggestion, Director's Awards,
and Attorney General's Awards Programs.

a.  Basis.  Awards may be based on contributions such as
suggestions, inventions, or special acts or service in the
public interest connected with or related to official
employment.

b.  Form of recognition.  An incentive award may be either
monetary or non-monetary.  A non-monetary award could be
in the form of a medal, certificate, plaque, citation,
badge, or other similar item that has an award or honor
connotation.

c.  Approval.  Recommendations for executive
Incentive Awards must be submitted in writing to the SES
Board.  Such recommendation must clearly identify the
unusual nature of the accomplishment and why the
achievement qualifies for recognition outside of the
performance award process.  In addition to approval by the
SES Board, final concurrence/approval of the Director and
the Department of Justice is also required.

D.  <u>LIMITATION ON SALARY</u>.  The aggregate amount of pay that a
member of the SES may receive during any calendar year may not
exceed the salary limitation described in 5 U.S.C. §5307.
Included in the determination of aggregate pay are:  base pay;
locality adjustment; recruitment and relocation bonuses;
retention allowance; performance awards and rank awards.  Any

-53-

excess amount (excluding retention pay) will be paid in a lump sum amount at the start of the next calendar year.  Monies received from bonuses, rank or performance awards are not included in computing an SES member's retirement pay.

CHAPTER VIII.  EXECUTIVE DEVELOPMENT

A.    EXECUTIVE DEVELOPMENT PROGRAM.  Employees will be provided
      progressive developmental opportunities prior to, and
      following, entry into the SES.  The Director will ensure that
      funding and staffing, sufficient to support this policy, are
      available.

      1.    Program Management.  Overall management of the SES
            development program will be provided by the SES Board.

      2.    Monitoring.  The SES Board will have responsibility for
            establishing an executive development program.  The
            program for SES incumbents will encompass developmental
            experiences which, through continuing short-term
            opportunities and periodic involvement in more extended
            programs, will:

            a.  Help meet organizational needs for managerial
            improvements and increased productivity;

            b.  Help the individual keep up to date in professional,
            technical, managerial, social, and political areas;

            c.  Meet the need for intellectual and personal growth;
            and

            d.  Include provisions for executive sabbaticals for
            carefully selected members.  Members of SES will be
            responsible for continuing to develop their executive
            knowledge, skills, and abilities and for fostering the
            development of their subordinates.

B.    SABBATICALS.  A sabbatical may be granted to any career
      appointee in the SES by the Director/Deputy Attorney General.
      Sabbaticals are granted to permit a career appointee to engage
      in study or uncompensated work experience which will contribute
      to the individual's development and effectiveness.  A
      sabbatical may not exceed 11 months nor may it result in the
      loss of, or reduction in, pay or leave to which the career
      appointee is otherwise entitled.  The Director or designee may
      authorize travel expenses and per diem allowances if these are
      deemed essential for the study or experience.

-55-

1.  <u>Eligibility</u>.  A sabbatical may not be granted to any career appointee:

    a.   More than once in any ten year period;

    b.   Unless the appointee has completed seven years of service:

        (1)  In one or more positions in the SES;

        (2)  In one or more positions in the civil service, the level of duties and responsibilities of which are equivalent to those of SES positions; or

        (3)  In any combination of such positions except that not less than two of the seven years of service must be in SES; and

    c.   If the appointee is eligible for voluntary retirement with a right to an immediate annuity.

2.   <u>Service Agreement</u>.  The career appointee accepting a sabbatical must agree to serve in the civil service upon the completion of the sabbatical for a period of two consecutive years.  If the career appointee fails to meet this agreement (except for sufficient reason as determined by the Director/Deputy Attorney General or designee who granted the sabbatical), the appointee shall be liable to the United States for all expenses, including salary, of the sabbatical.

3.   <u>Employment Provisions</u>.  While an individual is on a sabbatical:

    a.   The individual continues to receive his or her SES salary;

    b.   The individual continues to earn leave and is charged for any leave taken; and

    c.   The individual remains subject to the SES performance appraisal system, but should be evaluated against standards appropriate to activities involved in the

-56-

sabbatical.  It would not be appropriate to award a bonus
for performance during the sabbatical.

CHAPTER IX.   MISCELLANEOUS PROVISIONS

A.   <u>TRAVEL EXPENSES</u> of SES candidates may be paid by the FBI
pursuant to the applicable provisions of the MAOP if these
expenses are incurred incident to pre-employment interviews
requested by the FBI.

B.   <u>ANNUAL LEAVE</u> accrued by individuals after entry into the SES is
subject to a limit of 720 hours in accordance with Title 5
U.S.C., Section 6304 as amended by Public Law 103-356,
10/13/94.  Any employee who became a member of the FBI SES
prior to 10/13/94 may be entitled to an adjusted annual leave
ceiling and should contact the PRAU or the Employee Benefits
Unit.

Effective October 31, 2004, the Workforce Flexibility Act
of 2004 provides that all members of the FBI SES will accrue
eight hours of annual leave per pay period regardless of their
total number of years of federal service.

When an employee moves into an SES appointment, any
annual leave at the time of the move in excess of the
employee's maximum accumulation level (normally 240 hours)
is subject to forfeiture if not used by the beginning of the
leave year immediately following entry into the SES, unless
restored under conditions provided by 5 U.S.C. Section 6304(a)-
(d).  The annual leave which is not subject to forfeiture and
the annual leave which accrues while serving in the SES are
carried forward into subsequent leave years up to the limit of
720 hours.  Once the 720 hour limit is reached, any additional
annual leave accrued must be used by the end of the leave year
in which accumulated or forfeited, unless restored under
conditions provided by 5 U.S.C., Section 6304(a)-(d).

If an individual moves from an SES appointment to a non-
SES appointment, any annual leave in excess of that which
otherwise would be permitted remains to the individual's
credit.  Subsequently, if the individual uses more annual leave
in a leave year than earned, the balance carried forward will
become the new leave ceiling if it is still above the maximum
limit permitted for the position.

C.   <u>LAST MOVE HOME EXPENSES</u>.  Individuals transferred to accept a
     position in the SES or SES members who are transferred in the
     interest of the Government from one official station to another
     for permanent duty during or after five years
     preceding retirement eligibility are authorized travel,
          transportation and moving benefits as provided in
     5 U.S.C. Sec 5724(a)(3).

D.   <u>FURLOUGHS</u>.

     1.   <u>Definition</u>.  "Furlough" means placing a career appointee
          in a temporary status without duties and pay because of
          lack of work or funds or other nondisciplinary reason.

     2.   <u>Short furloughs</u>.

          a.  A short furlough is one that will last for 30
          consecutive calendar days or less (or for 22 workdays or
          less if the furlough does not cover consecutive days)
          within a 12-month period beginning on the first day of the
          furlough.

          b.  Competitive procedures are not required in selecting
          the SES appointees to be furloughed for short periods.
          Selections will be made for sound management reasons.

     3.   <u>Long furloughs</u>.

          a.  A long furlough is one that will last for more than 30
          consecutive calendar days (or for more than 22 workdays if
          the furlough does not cover consecutive days) within a 12-
          month period beginning on the first day of the furlough.
          The furlough may not exceed one year.

          b.  An SES appointee may be furloughed for more than 30
          days only when the FBI intends to recall the appointee to
          a duty status with pay within one year from the beginning
          of the furlough.  A furlough shall not be used when the
          executive will have to be separated through a RIF action
          when the furlough terminates.

          c.  Competitive procedures, developed for competition for
          job retention under a RIF, will be used in selecting SES
          career appointees for long furloughs of more than 30 days.

4.   <u>Notice requirements</u>.

   a.   The career appointee will be given written notice at least 30 calendar days before the effective date of the start of the furlough.  The notice will include the following information:

   (1)   The reasons for the decision to take the furlough action.

   (2)   The expected duration and the effective dates of the furlough.

   (3)   The basis for selecting the appointee for furlough when some, but not all, SES appointees in a given organizational unit are being furloughed.

   (4)   The place where the appointee may inspect the regulations and records pertinent to the action.

5.   <u>Appeal Rights</u>.  An employee may appeal a furlough decision by writing to the Director within 20 days of the effective date of the furlough.

E.   <u>TRAINING</u>.  Career appointees will be informed of the goals and objectives of the FBI SES.  Additional training opportunities may be recommended by an executive's immediate superiors, the SES Board, or self initiated by the executive with approval of an immediate superior.

F.   <u>REPORTS AND EVALUATION</u>.  The FBI will report to the Department of Justice such information, and take such corrective action, as the Attorney General may direct as a result of his/her oversight responsibilities.

G.   <u>EXTENSION BEYOND MANDATORY RETIREMENT</u>.  The Attorney General has delegated to the Director of the FBI, the authority to grant exceptions to mandatory retirement for FBI law enforcement members of the SES.  These exceptions may be granted to a limited number of individuals -- no more than 20 individuals at any given time -- whose continued service would be in the public interest and promote the mission of the FBI.

-60-

Any SES member who is a Special Agent and desires to extend his/her Bureau Service, must:

1.    Approximately 18 months prior to mandatory retire-ment, make known their intentions in a memorandum to the Director.  The memorandum must specify to what age or date the requestor desires to continue service, not to exceed age 60.  Any employee considering this option is encouraged to discuss this matter fully with the Director.

2.    The Director may furnish the senior executive's request along with his/her observations to the SES Board.

3.    The SES Board will review all pertinent information and provide the Director with a recommendation at which time the Director will serve as the final authority         for approving/denying the request.

H.    RECORDS.  Unless otherwise instructed by FBIHQ, all performance related documentation including, but not limited to, information maintained in any performance file or folder other than the employee's official FBIHQ or Field Office Personnel File must be maintained for a period of one calendar year beyond the date the associated summary/initial/final rating is issued.