## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANDREW G. MCCABE, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 19-2399 (RDM) |
| WILLIAM P. BARR, | ) | |
| in his official capacity as | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| UNITED STATES, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

## RULE 56(d) DECLARATION OF MURAD HUSSAIN

I, Murad Hussain, make this Declaration in support of Plaintiff Andrew G. McCabe's Opposition to Defendants' Motion to Dismiss and Motion for Summary Judgment ("Motion"):

1.      I am a partner in the law firm of Arnold & Porter Kaye Scholer LLP ("Arnold & Porter"), a member of the bar of this Court, and licensed to practice law in the District of Columbia.

2.      I am counsel of record for Plaintiff Andrew G. McCabe in the above-captioned matter.  In that capacity, I make this declaration pursuant to Federal Rule of Civil Produce 56(d), which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the Court may deny the motion and permit the nonmovant to take appropriate discovery. *See, e.g.*, *Hedgeye Risk Management, LLC v. Heldman*, 271 F.Supp.3d 181, 187 (D.D.C. 2017) (Moss, J.) (considering affidavit submitted by plaintiff's counsel of record).

3.      I filed Plaintiff's Complaint on August 8, 2019.

4.      Attached hereto as **Plaintiff's Exhibit ("PX-") 1** is a true and correct copy of the letter dated October 15, 2019 that I sent to opposing counsel that same date, requesting the preservation of all documents, records, and communications referencing or relating to Plaintiff, which were created on or after January 20, 2017, and which are in the possession, custody, or control of several government entities and 30 named individuals (or the government entity responsible for any identified former government employee's files).   The named individuals included Defendants Barr and Wray, Donald Trump, Jeff Sessions, Rod Rosenstein, Michael Horowitz, Scott Schools, Candice Will, and David Bowdich.  I sent that letter in anticipation of commencing discovery in this litigation.

5.      Defendant has not yet filed an Answer to the Complaint, and discovery has not yet commenced.  Plaintiff therefore has had no opportunity to take discovery prior to the filing of Defendants' Motion or before making this Rule 56(d) request.

6.      At this time, Plaintiff has assembled a small set of supporting evidence from his own records and from publicly available sources.  However, much of the relevant evidence in this case is in Defendants' exclusive possession or the possession of current or former government officials.  Plaintiff requires discovery to properly establish his entitlement to relief.  As set forth in Plaintiff's brief in opposition to Defendants' Motion, Plaintiff is opposing Defendants' Motion because he has not yet obtained any discovery in this matter.

7.      Some of the currently available evidence includes Exhibit A to the Complaint, a handwritten note by Federal Bureau of Investigation ("FBI") official Candice Will, head of its Office of Professional Responsibility ("OPR"), which was made publicly available on the FBI's Freedom of Information Act ("FOIA") "Vault" website (https://vault.fbi.gov).   The letter is attached hereto as **Exhibit PX-2A**.  The available evidence also includes a March 5, 2018 email

from Will to then-Deputy Director David Bowdich, which was also made publicly available on the FBI's "Vault" website.  That email is attached hereto as **Exhibit PX-2B**.

8.      The currently available evidence also includes Trump's posts ("tweets") to his personal and presidential accounts on http://www.twitter.com, as well as transcriptions and audio/video recordings of Trump's statements to the press and public, as documented in publicly available Internet sources.  A summary chart compiling such evidence, titled "Selected Public Statements by Donald J. Trump" and listing each statement's online URL source, is attached hereto as **Exhibit PX-3**.  I created this summary chart, to the best of my ability, and audio/video recordings have been transcribed as accurately as possible under the circumstances given the quality of the recordings.

9.      The following paragraphs describe the disputes at issue in this case and the discovery that Plaintiff requires prior to summary judgment.  This declaration describes only the information and documents Plaintiff presently intends to seek.  Plaintiff expects that the scope of discovery will change as the case unfolds.

10.     Plaintiff alleges that Defendants engaged in multiple acts of political patronage by demoting, terminating, and accelerating his termination, in violation of the First Amendment. Compl. ¶¶ 170-87.  The parties agree that Defendants' motive is a determinative issue on these claims.  *Id.* ¶ 173; Defs.' Mem. in Supp. of Summ. J. ("SJ Mem.") 26-27 ("Plaintiff must prove that political association 'was a "substantial" or "motivating" factor' behind his removal."). Accordingly, Plaintiff presently seeks the following discovery:

        a.      Information and documents relating to Defendants' decisions to demote and terminate Plaintiff; their motivation for doing so; the timing, process, and pace of Plaintiff's

disciplinary proceedings; and why Defendants decided to complete those proceedings before Plaintiff could retire.

        b.     Information and documents relating to Department of Justice ("DOJ") and FBI officials' awareness and perception of, and their responses to, (i) a belief by Trump (or their own belief) that Plaintiff was not politically loyal to Trump (or to them), or (ii) a desire by Trump (or their own desire) to remove Plaintiff from the position of Deputy Director or Acting FBI Director, or to terminate Plaintiff's employment.

        c.     Information and documents relating to DOJ or FBI officials' belief or conclusion in 2017 that a photograph of Plaintiff with his family, wearing T-shirts supporting his wife's 2015 Virginia state senate campaign, was a "political" problem for Plaintiff.

        d.     Information and documents relating to DOJ and FBI officials' awareness and perception of, and responses to, Trump's tweets, including but not limited to his tweets on December 23, 2017, at 3:27 p.m. and 3:30 p.m.:

- "How can FBI Deputy Director Andrew McCabe, the man in charge, along with leakin' James Comey of the Phony Hillary Clinton investigation (including her 33,000 illegally deleted emails) be given $700,000 for wife's campaign by Clinton Puppets during investigation?"  PX-3, line 10.

- "FBI Deputy Director Andrew McCabe is racing the clock to retire with full benefits. 90 days to go?!!!"  PX-3, line 11.

As an example of Defendants' awareness and response to Trump's tweets concerning Plaintiff, attached hereto as **Exhibit PX-4** is a series of Twitter posts by reporter Jason Leopold, discussing documents that DOJ produced to him in response to a Freedom of Information Act ("FOIA") request.  The documents reflect that, in response to Trump's August 11, 2018 tweet that criticized

the FBI for not disclosing Plaintiff's text messages in response to a right-wing organization's FOIA request (and in which Trump stated, "I may have to get involved," *see* PX-3, line 20), Rosenstein's office contacted the DOJ personnel responsible for handling FOIA requests to discuss the issue directly.

e.      Information and documents relating to whether Trump or Sessions asked Defendant Wray to fire Plaintiff at any time(s). As corroboration that at least one such request occurred, attached hereto as **Exhibit PX-5** is a true and correct copy of a January 23, 2018 article published by reporter Jonathan Swan, stating that "Attorney General Jeff Sessions—at the public urging of President Donald Trump—has been pressuring FBI Director Christopher Wray to fire Deputy Director Andrew McCabe, but Wray threatened to resign if McCabe was removed, according to three sources with direct knowledge."[1]  *See also* Decl. of Andrew G. McCabe ("McCabe Decl.") ¶ 32.

f.      Information and documents of the DOJ relating to the interpretation, understanding, and application of DOJ Order 1202 to Plaintiff's demotion and termination proceedings, including Defendants' knowledge, awareness, and consultation of Order 1202 during the period of February 2017 to March 2018.

g.      Information and documents relating to Defendants' policy, practice, and guidance regarding recusals relating to Attorney General Jeff Session's March 2017 decision to recuse himself from any existing or future investigations of any matters related in any way to the

---

[1] *See* Jonathan Swan, *Scoop: FBI Director Threatened to Resign Amid Trump, Sessions Pressure*, AXIOS, (Jan. 23, 2018), *available at* https://www.axios.com/scoop-1516661397-877adb3e-5f8d-44a1-8a2f-d4f0894ca6a7.html.

campaigns for President of the United States,[2] including information and documents reflecting matters from which Sessions was recused and DOJ and FBI officials' interpretation and understanding of the recusal's scope.

       h.    Information and documents relating to Deputy Attorney General Rod Rosenstein's involvement in Plaintiff's disciplinary proceedings, any role he played in Plaintiff's demotion or termination decision, and why he did not exercise final decision-making authority despite Candice Will's understanding that he would (*see* PX-2).  As examples of such discoverable material concerning Will's communications with Rosenstein or his office concerning Plaintiff's disciplinary proceedings, attached hereto as **Exhibits PX-6**, **PX-7**, **PX-8**, **PX-9**, and **PX-10** are true and correct copies of emails available on the FBI's FOIA Vault website.[3]  **PX-6** is a March 5, 2018 email from Candice Will to Rosenstein.  **PX-7** is a March 7, 2018 email from Will to Principal Associate Deputy Attorney General Robert Hur, of Rosenstein's office.  **PX-8** is an email calendar appointment for Will's March 7, 2018 telephone conference with Hur, and **PX-9** appears to contain (despite heavy redactions) Will's handwritten notes of her March 7, 2018 telephone call with Hur. **PX-10** is a heavily redacted March 8, 2018 email from the Office of Legal Counsel to Hur, regarding the FBI SES policies on removal; Hur forwards the memorandum to Schools, who then forwards it to Will.

       i.    Information and documents relating to penalties imposed on government employees after OIG issued findings substantiating charges of "lack of candor" against those other

---

[2] *See* Press Release No. 17-237, U.S. Dep't of Justice, Attorney General Sessions Statement on Recusal (Mar. 2, 2017), *available at* https://www.justice.gov/opa/pr/attorney-general-sessions-statement-recusal.

[3] Available on pp. 2,  13-17, and 51-53 at https://vault.fbi.gov/deputy-director-mccabe-office-of-professional-responsibility-investigation/deputy-director-mccabe-office-of-professional-responsibility-investigation-part-09-of-09/view.

employees, including whether or not any such employees were permitted to retire before a penalty was imposed, as evidence that Plaintiff was treated differently based on Defendants' discriminatory/retaliatory motive.  Publicly available information corroborates the existence of relevant FBI policies and/or practices on this issue.  *E.g.*, DOJ OIG, *Findings of Misconduct by a Senior DOJ Official for Ethical Misconduct, Sexual Harassment, Sexual Assault, and Lack of Candor to the OIG* (Dec. 4, 2018) (stating that OIG found that a "senior DOJ official lacked candor in his statements to the OIG," that "[c]riminal prosecution of the senior DOJ official was declined," that **he "retired from his position**,*"* and that OIG "completed its investigation and provided its report to the [relevant DOJ office] for appropriate action" (emphasis added));[4] DOJ OIG, *Findings of Misconduct by a Senior DEA Official for Violating Ethics Regulations, DEA Standards of Conduct, and the Federal Acquisition Regulation, and for Lack of Candor* (June 10, 2019) ("[T]he OIG concluded that the senior DEA official lacked candor by making false entries about alcohol counseling on a Questionnaire for National Security Position, in violation of the DEA Standards of Conduct and potentially in violation of criminal statutes. . . . Criminal prosecution of the senior DEA official . . . was declined.  The senior DEA official *retired from his position.*  The OIG completed its investigation and provided its report to DEA and JMD for appropriate action." (emphasis added)).[5]

       j.     Information and documents showing that OIG investigations and Defendants' disciplinary proceedings for "lack of candor" need not be accelerated to completion before the subjects of those proceedings are able to retire, as evidence that Plaintiff was treated differently based on Defendants' discriminatory/retaliatory motive.  As examples of such

---

[4] Available at https://oig.justice.gov/reports/2018/f181204.pdf.

[5] Available at https://oig.justice.gov/reports/2019/f190610.pdf.

documents, attached hereto as **Exhibits PX-11** and **PX-12**, true and correct copies of emails available on the FBI's FOIA Vault website.[6]  **Exhibit PX-11** is a redacted October 24, 2016 email from then-FBI Director James Comey to Plaintiff, Candice Will, and David Bowdich, among others, in which Comey seeks the recipients' thoughts about the practice of Chuck Rosenberg (then the administrator of the Drug Enforcement Administration) "of not closing [investigative] matters when an employee resigns or retires[,] to avoid an employee who has engaged in misconduct returning to government service without record of a completed investigation."  **PX-12** is Will's redacted October 25, 2016 email responding to Comey's request.  The entire email is redacted except for her conclusion:  "Bottom line is we will do whatever you think is best."

11.    Defendants' Motion asserts the following two defenses to Plaintiff's First Amendment claims:  (a) that Plaintiff was not demoted (*id.* at 9 n.9); and (b) that Defendants' decision to terminate Plaintiff was motivated by their intent to discipline Plaintiff for alleged misconduct[7] (*see id.*).  Because these defenses raise multiple disputes of material fact, Plaintiff will seek the following discovery:

a.    All information and documents described in Paragraph 10, *supra*.

b.    Information and documents relating to Plaintiff's January 2018 demotion, including the appointment and service of David Bowdich as FBI Deputy Director or "Acting"

---

[6]  Available on pp. 117 and 123-24 at https://vault.fbi.gov/deputy-director-mccabe-office-of-professional-responsibility-investigation/deputy-director-mccabe-office-of-professional-responsibility-investigation-part-09-of-09/view.

[7]  Courts "allow inquiry into motive where a bad one could transform an official's otherwise reasonable conduct" into a constitutional violation.  *Crawford-El v. Britton*, 951 F.2d 1314, 1317 (D.C. Cir. 1991).  Among the relevant sources of evidence of improper motive are:  "The historical background of the decision[,] . . . [t]he specific sequence of events leading up to the challenged decision[,] . . . [and t]he legislative or administrative history[, which] may be highly relevant, especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports."  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267-68 (1977).

Deputy Director beginning on January 29, 2018; the essential duties and functions of the Deputy Director position; the FBI's policy, if any, establishing an "Acting" Deputy Director position and/or two Deputy Director positions; and DOJ and FBI officials' beliefs about whether and how Plaintiff served as FBI Deputy Director from January 29, 2018 through March 16, 2018.

c.      The factual basis for OIG's decision to describe Plaintiff as "Former Deputy Director" when titling its February 2018 report ("OIG Report"[8]) and to state on Page 4 of that report that Plaintiff held the position of Deputy Director "until January 29, 2018."

d.      Documents dated March 16, 2018 or earlier referring to Plaintiff as "former" Deputy Director.

e.      Information and documents relating to (i) a decision by the FBI Inspection Division ("INSD") to expand a pre-existing investigation of media leaks to include determining the source of the information in the October 30, 2016 *Wall Street Journal* ("WSJ") article regarding Plaintiff's August 12, 2016 telephone call with a DOJ official; (ii) any concerns expressed by the INSD investigators about the conduct of the investigation; and (iii) the INSD's pre-existing investigation of media leaks, including the nature of the investigated leaks, when the investigation was opened and closed, and if it has not been closed, why it has not been closed.

f.      Information and documents relating to the decision by the Office of the Inspector General ("OIG") to investigate Plaintiff in connection with his statements to INSD investigators during the above-referenced media leak investigation ("the OIG investigation").

g.      Information and documents relating to decisions to omit exculpatory evidence, including the testimony of Michael Kortan, from the OIG Report and disciplinary decisions.

---

[8] Available at https://oig.justice.gov/reports/2018/o20180413.pdf.

h.    Information and documents relating to the timeline of the OIG Investigation's completion and OIG Report's drafting and publication, including any decisions, attempts, or pressure to accelerate the Investigation or Report.

i.    Information and documents in Defendants' possession before March 16, 2018 reflecting that Plaintiff, Michael Kortan, or Lisa Page informed then-FBI Director Comey or his chief of staff James Rybicki about efforts to communicate with any *Wall Street Journal* reporter regarding the October 2016 articles referencing Plaintiff and cited in the OIG Report.  As examples of such discoverable material, attached hereto as **Exhibits PX-13**, **PX-14**, **PX-15**, and **PX-16**, are true and correct copies of emails available on the FBI's FOIA Vault website.[9]  **PX-13** is an October 21, 2016 email from Plaintiff to Comey, Rybicki, and Bowdich, informing them about the first of the *Wall Street Journal* articles at issue, and that Plaintiff would work with Michael Kortan to provide factual information to the report.  **PX-14** is an October 23, 2016 email from Plaintiff to Comey, stating that Plaintiff and Michael Kortan worked that day "to shape the WSJ story on [Plaintiff's] alleged conflict."  **PX-15** is also an October 23, 2016 email from Plaintiff to Comey, forwarding the initial *Wall Street Journal* article at issue.  **PX-16** is an October 24, 2016 email from Comey to Plaintiff and Rybicki, forwarding an online blog story commenting on the facts disclosed in the initial October 23, 2016 *Wall Street Journal* article.

12.    Plaintiff further alleges that Defendants unlawfully deprived him of his property interest in his entitlement to collect his immediate retirement (by giving legal effect to Defendants' legally ineffective decision to terminate Plaintiff), and deprived him of his property interest in his entitlement to continued employment, and that they did so arbitrarily and without adequate notice

---

[9] Available on pp. 12, 13-15, 17, and 46-50 at https://vault.fbi.gov/deputy-director-mccabe-office-of-professional-responsibility-investigation/deputy-director-mccabe-office-of-professional-responsibility-investigation-part-08-of-09/view.

and opportunity to be heard, in violation of the Due Process Clause of the Fifth Amendment. Compl. ¶¶ 148-69.  Among other things, Defendants now attempt to invoke the "crime exception" to the 30-day advanced written notice provision of 5 U.S.C. § 7543(b) (as applied to the FBI Senior Executive Service pursuant to 5 U.S.C. § 3151) and related FBI Senior Executive Service policy, ¶ V.C.2.a.(1) (Dkt. 23-23 at 15).  On this basis, Defendants assert that they lawfully curtailed Plaintiff's termination proceedings upon "reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment can be imposed."  SJ Mem. 2.  Plaintiff seeks the following discovery to oppose this defense and demonstrate that Defendants violated his procedural due process rights by affording him constitutionally deficient procedures, and also to demonstrate the existence of his legitimate property entitlements:

      a.      All information and documents described in Paragraphs 9-11, *supra*.

      b.      Information and documents relating to the development and implementation of Plaintiff's termination proceedings, including Defendants' basis for "making it up as we go along" (Bromwich Decl. ¶ 15), and to accelerate the proceedings as they unfolded.  *See, e.g.*, PX-3, line 11 ("FBI Deputy Director Andrew McCabe is racing the clock to retire with full benefits. 90 days to go?!!!"); PX-2 (Will: "It seems unlikely that this will reach final resolution before Mr. McCabe's March 18 retirement date, but that is up to the DAG.")

      c.      Information and documents relating to Plaintiff's counsel's requests for additional relevant materials and requests for more time to prepare for the March 15, 2018 hearing, and why Defendants denied counsel's requests to extend or postpone Plaintiff's oral presentation.  *See* Compl. ¶¶ 120-22 ("It was not until . . . less than 24 hours before Plaintiff's presentation to Schools . . . that Schools permitted Plaintiff to [review key evidence.] . . . Despite counsel's pleas, Schools flatly rejected the request to postpone the oral hearing, without any

explanation about why Plaintiff and his counsel could not be given more time to review the record. Schools' only concession was to extend Plaintiff's deadline for providing his written record [by less than one day].").

        d.    Information and documents relating to Defendants' interpretation, application, assertion, and evidentiary basis for invoking the "crime exception" to the 30-day advanced written notice provision of 5 U.S.C. § 7543(b) (as applied to the FBI Senior Executive Service pursuant to 5 U.S.C. § 3151) and related FBI Senior Executive Service policy, ¶ V.C.2.a.(1) (Dkt. 23-23 at 15) in Plaintiff's disciplinary proceedings and in disciplinary proceedings other than Plaintiff's.

        e.    Information and documents dated March 16, 2018 or earlier that reflect Defendants' conclusion that Plaintiff committed a crime for which a sentence of imprisonment can be imposed.

        f.    Information and documents identifying what "crime for which a sentence of imprisonment can be imposed" upon which Defendants supposedly relied, if at all, to accelerate Plaintiff's disciplinary proceedings.  Defendants do not identify any alleged crime or criminal statute in their pending request for this Court to enter summary judgment in their favor based on the crime exception.  *See generally* SJ Mem.

        g.    Information and documents relating to Defendants' standards and process for invoking the crime exception, including their process for notifying employees of such invocation during disciplinary proceedings.  For example, attached hereto as **Exhibit PX-17A** is a true and correct excerpt of Part 1, Section 13-11.1(1) of the FBI's Manual of Administrative Operations and Procedures, dated January 31, 2007 and available on the FBI's FOIA Vault website (https://vault.fbi.gov/maop), which identifies one such process.

h.      Information and documents pertaining to Defendants' policies, practices, and guidance regarding the duration of a standard workweek and pay period, employee work obligations within a standard workweek and pay period, when employees are deemed to have worked and completed an entire pay period, how annual leave is accrued and spent, and the use of terminal leave.  For example, attached hereto as **Exhibit PX-17B** is a true and correct excerpt of Part 2, Section 1-2.4.1 of the FBI's Manual of Administrative Operations and Procedures, dated January 31, 2007 and available on the FBI's FOIA Vault website (https://vault.fbi.gov/maop), which states that the "regular business day" ends at 5 p.m.

i.      Information and documents relating to the FBI Office of the General Counsel's standards and process for determination whether an employee's separation was due to "gross misconduct"; its interpretation and application of the term "gross misconduct"; and why it concluded that Plaintiff's separation from the FBI was not due to "gross misconduct."  *See* PX-23 (attached to McCabe Decl.).

13.      Plaintiff further alleges that he is entitled to *mandamus* relief because Defendants have failed to perform non-discretionary duties owed to him.  Compl. ¶¶ 148-56, 188-93.  Plaintiff seeks discovery on all information and documents described in Paragraphs 9-12, *supra*, to support his claim for *mandamus* relief.

14.      Plaintiff also intends to seek unredacted versions of above-referenced exhibits.

15.      To date Plaintiff has had no opportunity to take discovery.  At a minimum, the above-described information and documents are essential for Plaintiff to oppose summary judgment on his claims.  Plaintiff has not and cannot learn of all the relevant facts and present them in an admissible form without discovery.

16.     The above-described information and documents are discoverable pursuant to Federal Rule of Civil Procedure 26(b)(1) because they are relevant to Plaintiff's claims.   The information and documents are available in the form of government records, recorded communications, and deposition testimonies of Defendants (including, as applicable, 30(b)(6) witnesses), David Bowdich, Michael Horowitz, Rod Rosenstein, Scott Schools, Jeff Sessions, Candice Will, and other individuals presently or formerly at the White House, DOJ, and FBI.  All information and documents that Plaintiff seeks can be obtained from existing databases and competent witnesses.

17.     Accordingly, this Court should grant relief under Federal Rule of Civil Procedure 56(d).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 23, 2019.


  /s/ Murad Hussain
Murad Hussain
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, D.C. 20001
Telephone: (202) 942-5000
Fax: (202) 942-5999