**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANDREW G. MCCABE, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| WILLIAM P. BARR, | ) |
| in his official capacity as | ) |
| ATTORNEY GENERAL OF THE | ) |
| UNITED STATES, *et al.,* | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

Civil Action No. 19-2399 (RDM)

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS**
**AND PLAINTIFF'S COUNTERSTATEMENT OF MATERIAL FACTS**

As required by Local Civil Rule 7(h)(1) and this Court's Standing Order in Civil Cases,

and in support for his Opposition to Defendants' Motion for Summary Judgment, Plaintiff hereby

submits his (1) response to Defendants' Statement of Material Facts as to Which There Is No

Genuine Issue ("Defs.' SMF"), and (2) his Counterstatement of Material Facts as to Which There

Is No Genuine Dispute ("CMF").

## I.     RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

**Defs.' SMF No. 1:** Andrew G. McCabe ("Plaintiff" or "Mr. McCabe") became a Federal Bureau

of Investigation ("FBI") employee in 1996. Compl. ¶ 23.

  *Plaintiff's Response:* No dispute.

**Defs.' SMF No. 2:**     Plaintiff became a member of the FBI Senior Executive Service ("SES"),

see 5 U.S.C. § 3151, in 2009. Compl. ¶ 27.

  *Plaintiff's Response:* Not disputed.

**Defs.' SMF No. 3:**     On February 1, 2016, Plaintiff became the FBI's Deputy Director. Compl. ¶ 29.

    *Plaintiff's Response:* Not disputed.

**Defs.' SMF No. 4:**     In May 2017, the FBI's Inspection Division ("INSD") began investigating whether information published in an October 30, 2016 *Wall Street Journal* article "was an unauthorized leak and, if so, who was the source of the leak." U.S. Department of Justice, Office of Inspector General, "A Report of Investigation of Certain Allegations Relating to Former FBI Deputy Director Andrew McCabe" ("OIG Rpt."), at 1, 14 (Feb. 2018), https://oig.justice.gov/reports/2018/o20180413.pdf.

    *Plaintiff's Response:* Disputed.  The cited evidence does not establish the asserted fact. The OIG Report does not state that the investigation of the *Wall Street Journal* ("WSJ") article **began** in May 2017.  Rather, it states that May 2017 was the month when INSD "expanded a pre-existing investigation of media leaks" to include determining the source of the information in the October 30, 2016 WSJ article.  In other words, the OIG Report asserts that May 2017 was when the WSJ-related investigation was appended to the prior investigation of an unrelated leak. However, there is no evidence that the INSD investigation of the WSJ article began in May 2017, only a few days before INSD agents first asked Plaintiff about the article on May 9, 2017. Moreover, as set forth in the Declaration of Michael R. Bromwich ("Bromwich Decl."), based on his personal experience as former Inspector General of the U.S. Department of Justice, the time needed to become familiar with facts under investigation make it unlikely that the INSD agents would have asked Plaintiff questions about the WSJ article only a few days after they began investigating it.  Bromwich Decl. ¶ 5.

**Defs.' SMF No. 5:**    Pursuant to that investigation, Inspection Division Agents interviewed Plaintiff. *Id.* at 2, 15.

    *Plaintiff's Response:* Disputed.  The pincite to page 15 of the OIG Report references the INSD agents' May 9, 2017 meeting with Plaintiff.  The purpose of this May 9, 2017 meeting was to review a draft signed, sworn statement from an earlier April 2017 interview related to an existing investigation that Plaintiff had initiated regarding an unauthorized disclosure to the media. *See* McCabe Decl. ¶¶ 21-22.

**Defs.' SMF No. 6:**    Inspection Division Agents became concerned that Plaintiff may have lacked candor when questioned about his role in the disclosure to the Wall Street Journal. *Id.* at 1, 21.

    *Plaintiff's Response:*  Disputed.  Plaintiff does not dispute Defendants' summary of the pincited OIG Report passages.  However, the OIG Report does not establish that these INSD agents, in fact, developed this concern as described, because the Report is authored by someone other than the referenced agents and is therefore not competent evidence even under the relaxed standards for summary judgment.

**Defs.' SMF No. 7:**    In August 2017, the Inspection Division referred the investigation to the Department of Justice's Office of the Inspector General ("OIG"). *Id.* at 1, 21.

    *Plaintiff's Response:*  Disputed.  Plaintiff does not dispute Defendants' summary of the pincited OIG Report passages.  However, the OIG Report is not competent evidence to establish the asserted date of the referral.

**Defs.' SMF No. 8:**    The OIG interviewed Plaintiff, under oath, on two separate occasions. OIG Rpt. at 2, 18, 24.

   *Plaintiff's Response:* Disputed.  OIG interviewed Plaintiff at least three times: July 28, 2017; November 28-29, 2017; and December 4, 2017.  McCabe Decl. ¶¶ 30, 33, 34.

**Defs.' SMF No. 9:**    In February 2018, the OIG issued a report entitled, "A Report of Investigation of Certain Allegations Relating to Former FBI Deputy Director Andrew McCabe," Feb. 2018, https://oig.justice.gov/reports/2018/o20180413.pdf.

   *Plaintiff's Response:* Not disputed.

**Defs.' SMF No. 10:**    The OIG Report was released publicly on April 13, 2018.    *See* https://oig.justice.gov/reports/all.htm.

   *Plaintiff's Response:* Not disputed (although the cited evidence does not conclusively establish the asserted fact).

**Defs.' SMF No. 11:**    The OIG Report concluded that Plaintiff had lacked candor on four occasions, in violation of FBI rules: once when speaking with then-FBI Director James Comey on October 31, 2016; once while being questioned, under oath, by Inspection Division Agents on May 9, 2017; and twice while being questioned, under oath, by OIG on July 28, 2017 and November 29, 2017. OIG Rpt. at 2, 22, 27, 29, 31, 35.

   *Plaintiff's Response:*  Plaintiff does not dispute Defendants' summary of the pincited OIG Report passages, but disputes the factual basis for the stated conclusion, as well as the conclusion itself.  *See, e.g.,* Plaintiff's Exhibit ("PX-"[1]) 23 (FBI letter to Plaintiff stating that he was not terminated for "gross misconduct").

---

[1] Citations to Plaintiff's exhibits attached to the Declaration of Murad Hussain ("Hussain Decl.") are labeled as "PX-1" through "PX-17B," and those attached to the Declaration of Andrew G. McCabe ("McCabe Decl.") are labeled as "PX-18" through "PX-24."

**Defs.' SMF No. 12:**  The OIG also concluded that Plaintiff authorized the disclosure of information to the *Wall Street Journal* in violation of the FBI's and the Department of Justice's media policy.  *Id.* at 2, 32, 35.

> **Plaintiff's Response:** Plaintiff does not dispute Defendants' summary of the pincited OIG Report passages, but disputes the factual basis for the stated conclusion as well as the conclusion itself.  *See, e.g.,* PX-23.

**Defs.' SMF No. 13:**  Before finalizing its report, the OIG shared a draft with Plaintiff and his counsel.  Oral Resp. Tr. at 165 ln. 6-8.

> **Plaintiff's Response:** Not disputed that Plaintiff and his counsel were permitted to review a draft, but disputed insofar as they were not permitted to take the draft report outside of the OIG's office.  *See* Bromwich Decl. ¶ 7; McCabe Decl. ¶ 43.

**Defs.' SMF No. 14:**  Plaintiff, through counsel, submitted a written response to the OIG Report. See OIG Rpt. at 23 n.8.

> **Plaintiff's Response:**  Not disputed.

**Defs.' SMF No. 15:**  The OIG responded to arguments offered by Plaintiff in his response.  *See, e.g.*, *id.* at 23 n.8, 25 n.10, and 26 n.11.

> **Plaintiff's Response:** Plaintiff does not dispute that the pincited passages summarize the statements in the OIG Report, but disputes the validity of the OIG responses.  For example, the pincite to p.25 n.10 suggests that none of the circumstantial evidence supports McCabe's account of informing Comey about the Clinton Foundation disclosures to WSJ.  However, Defendants' own evidence repeatedly references an October 30, 2016 email from Michael Kortan, FBI Assistant Director for the Office of Public Affairs, to then-Director Comey's Chief of Staff disclosing Kortan's work with the WSJ reporter about the Clinton Foundation disclosure.  *See* DX-

5 at 4 (describing Oct. 30, 2016 Kortan-Rybicki email); DX-3 at 178:12-179:4 (citing Kortan-Rybicki email).

**Defs.' SMF No. 16:**   The OIG "issu[ed] [its] report to the FBI for such action as it deem[ed] appropriate."  OIG Rpt. 2, 35.

> *Plaintiff's Response:* Disputed.  Plaintiff does not dispute that the text of the OIG report states: "The OIG is issuing this report to the FBI for such action as it deems appropriate."  OIG Rpt. 2, 35.  But the cited evidence does not establish OIG personnel's motives for issuing the report to the FBI.

**Defs.' SMF No. 17:**   The then-career head of the FBI Office of Professional Responsibility, Assistant Director Candice Will,[1] reviewed the OIG Report on behalf of the FBI. Letter from Will to Andrew McCabe ("FBI Rec.") at 15 (March 7, 2018) (attached as Ex. 1).  [FOOTNOTE 1: "*See* https://archives.fbi.gov/archives/news/pressrel/press-releases/fbi-director-names-candice-m.-will-as-assistant-director-for-office-of-professional-responsibility.")

> *Plaintiff's Response:* Not disputed.

**Defs.' SMF No. 18:**   Assistant Director Will determined that it was not clear whether Plaintiff was under oath when he spoke with the Inspection Division Agents, but otherwise agreed with the OIG's findings that Plaintiff had lacked candor under oath and not under oath and had improperly disclosed the existence of an FBI Investigation. FBI Rec. at 1, 12-14. When considering an appropriate penalty for Plaintiff's conduct, Assistant Director Will explained that she took several factors into account, including consistency with FBI precedent, the FBI's guidelines for punishment, and aggravating and mitigating circumstances. *Id.* at 14-15.

> *Plaintiff's Response:* Disputed.  Plaintiff does not dispute the summary of Will's letter. However, Will's letter does not establish that she, in actuality, agreed with OIG's findings or that

she believed she was appropriately taking the *Douglas* factors into account, because motive is a key factual dispute in this case and Plaintiff has not had the opportunity to pursue any discovery on that issue.

**Defs.' SMF No. 19:**   As Assistant Director Will noted, dismissal is the FBI's standard penalty for lacking candor under oath. *Id.* at 14.

 ***Plaintiff's Response:***  Disputed.  Plaintiff does not dispute that Will stated this.  However, Plaintiff has not had the opportunity to pursue any discovery on any FBI disciplinary policies and practices, including the standard penalty for lack of candor under oath. Additionally, two recent OIG investigation findings indicate that employees retired before any adverse action was taken. *See*  DOJ OIG, *Findings of Misconduct by a Senior DOJ Official for Ethical Misconduct, Sexual Harassment, Sexual Assault, and Lack of Candor to the OIG* (Dec. 4, 2018), *at* https://oig.justice.gov/reports/2018/f181204.pdf (stating that OIG found that a "senior DOJ official lacked candor in his statements to the OIG," that "[c]riminal prosecution of the senior DOJ official was declined," that he "retired from his position," and that OIG "completed its investigation and provided its report to the [relevant DOJ office] for appropriate action"); DOJ OIG, *Findings of Misconduct by a Senior DEA Official for Violating Ethics Regulations, DEA Standards of Conduct, and the Federal Acquisition Regulation, and for Lack of Candor* (June 10, 2019), *at* https://oig.justice.gov/reports/2019/f190610.pdf ("[T]he OIG concluded that the senior DEA official lacked candor by making false entries about alcohol counseling on a Questionnaire for National Security Position, in violation of the DEA Standards of Conduct and potentially in violation of criminal statutes. . . . Criminal prosecution of the senior DEA official . . . member was declined.  The senior DEA official retired from his position.  The OIG completed its investigation and provided its report to DEA and JMD for appropriate action.").

**Defs.' SMF No. 20:**  Ultimately, Assistant Director Will recommended that Plaintiff be "dismissed from the rolls of the FBI."  *Id.* at 15.

　　*Plaintiff's Response:* Disputed.  Plaintiff does not dispute that this is an accurate excerpt of Will's letter.  However, the letter does not establish that Will, in actuality, believed that the written recommendation was appropriate.  Motive is a key factual dispute in this case and Plaintiff has not had the opportunity to pursue any discovery on that issue.

**Defs.' SMF No. 21:**  In making her recommendation, Assistant Director Will stated, in part, as follows: "I find that dismissal is appropriate because all FBI employees know that lacking candor under oath results in dismissal and that our integrity is our brand. Without it, we are nothing. As the Deputy Director, you held the second-highest position in the FBI and are expected to comport yourself with the utmost integrity. Despite this, you repeatedly lacked candor with the Director of the FBI, the OIG, and the FBI's Inspection Division."  *Id.*

　　*Plaintiff's Response:* Disputed.  Plaintiff does not dispute that this is an accurate excerpt of Will's letter.  However, the letter does not establish that Will, in actuality, believed that the written recommendation was appropriate.  Motive is a key factual dispute in this case and Plaintiff has not had the opportunity to pursue any discovery on that issue.

**Defs.' SMF No. 22:**  After her review, Assistant Director Will informed Plaintiff via letter, on March 7, 2018, of her conclusions and recommendation that he be removed from the FBI. *Id.* at 1.

　　*Plaintiff's Response:* Disputed.  Plaintiff does not dispute that the letter from Will was dated March 7, 2018, or that Plaintiff ultimately received a copy of the letter at a later date. However, Will sent the letter via FedEx to Plaintiff's house while he out of town, and the letter was not delivered to Plaintiff, but rather, was returned to Will's office.  See Bromwich Decl. ¶ 12; McCabe Decl.. ¶ 45.

**Defs.' SMF No. 23:**   The report of investigation accompanying the recommendation letter states that Andrew McCabe is an "ES-0 Deputy Director." OPR, Report of Investigation at 1 (Mar. 6, 2018) (attached as Ex. 1).

*Plaintiff's Response:* Disputed.   Plaintiff does not dispute that the OPR Report of Investigation states this, but disputes the implication that the statement is accurate.  The February 2018 OIG Report states that Plaintiff was not Deputy Director after January 29, 2018.  *See* OIG Rpt. 4 ("McCabe served as Acting Director until August 1, 2017, when Christopher Wray was confirmed by the Senate as the new FBI Director. At that time, McCabe resumed his duties as Deputy Director, a position he held until January 29, 2018."); *see also* OIG Rep., Cover Page ("A Report of Investigation of Certain Allegations Relating to Former FBI Deputy Director Andrew McCabe").

**Defs.' SMF No. 24:**   DOJ Order 1202 was signed by then-Attorney General Eric Holder. DOJ Order 1202, at 1 (Nov. 26, 2013) (attached to DX-4, Letter from Schools to McCabe).

*Plaintiff's Response:* Not disputed.

**Defs.' SMF No. 25:**   DOJ Order 1202 states that the Deputy Director of the FBI can be removed only by the Attorney General.  *Id.* at 14 (specifying that individuals in "[k]ey SES [p]ositions" can be removed only by the Attorney General, and defining key positions to include "[a]ll career SES officials who are deputy Component Heads in Components with a single deputy position"); see About FBI, Leadership & Structure, Director Christopher Wray, https://www.fbi.gov/about/leadership-and-structure (listing a single Deputy Director position for FBI).

*Plaintiff's Response:* Not disputed.

**Defs.' SMF No. 26:**   Assistant Director Will forwarded her 15-page recommendation (along with the 17-page report of investigation) to the Office of the Deputy Attorney General. Compl., Ex. A.

*Plaintiff's Response:* Not disputed, except insofar as Exhibit A to the Complaint does not establish this fact.  Exhibit A is a handwritten note from Will to Director Wray and Deputy Director Bowdich stating her intent to transmit the recommendation to the DAG.

**Defs.' SMF No. 27:**   Associate Deputy Attorney General (ADAG) Scott Schools was then the highest ranking career official in the Department of Justice.  *See* Statement, Department of Justice, Office of Public Affairs, Attorney General Jeff Sessions Announces Bradley Weinsheimer to Replace Departing Associate Deputy Attorney General Scott Schools, July 3, 2018, https://www.justice.gov/opa/pr/attorney-general-jeff-sessions-announces-bradley-weinsheimer-replace-departing-associate.

*Plaintiff's Response:*  Not disputed, but immaterial.

**Defs.' SMF No. 28:**   On  March  8,  2018,  after  receiving  Assistant  Director  Will's recommendation, ADAG Schools sent Plaintiff a letter informing him of the procedures that the Department would follow in reviewing the matter and of the rights he possessed related to this review. Letter from Schools to McCabe ("Schools Letter") (Mar. 8, 2018) (Attached as Ex. 4).

*Plaintiff's Response:*  Disputed.  Plaintiff does not dispute that the letter from Schools was dated March 8, 2018, and that he ultimately received it.  However, Plaintiff  was out of town at the time, and Defendants did not deliver the letter to Plaintiff on that date.  *See* Bromwich Decl. ¶ 12; McCabe Decl. ¶ 45.

**Defs.' SMF No. 29:**   Attached to ADAG Schools' letter was a copy of DOJ Order 1202.  DOJ Order 1202, at 14.

*Plaintiff's Response:* Not disputed.

**Defs.' SMF No. 30:**   ADAG Schools' letter also stated that any decision to remove Mr. McCabe would be effective no earlier than March 16, 2018.  Schools Letter at 1.

*Plaintiff's Response:* Disputed, insofar as Schools' letter dated March 8, 2018 does not actually reference any other possible decision except removal, stating: "This letter notifies you that your removal would be effective no earlier than March 16, 2018."

**Defs.' SMF No. 31:**   The Department of Justice furnished Mr. McCabe with a week to submit oral and written responses to the notice of proposed removal.[2]  *Id.*   [FOOTNOTE 2: "The letter from ADAG Schools stated that Plaintiff's written response was due March 15, 2018, but that deadline was extended until noon on March 16, 2018. Compl. ¶ 122."]

*Plaintiff's Response:* Disputed.  DOJ did not "furnish[]" Plaintiff with a week.  Plaintiff and his counsel had to request an extension of time for Plaintiff's written response.  Plaintiff and his counsel were receiving additional new evidence at late as the morning of Thursday, March 15, 2018.  On the morning of March 14, Plaintiff's counsel explicitly stated to DOJ officials that the time provided was insufficient.  *See* Bromwich Decl. ¶¶ 22, 24-25.

**Defs.' SMF No. 32:**   On March 15, 2018, Plaintiff and two of his attorneys provided Plaintiff's oral reply to ADAG Schools and another career Department of Justice attorney. Mar. 15, 2018 Tr. of Hearing in the Matter of Andrew McCabe ("Oral Resp. Tr.") (attached as Ex. 3).

*Plaintiff's Response:* Not disputed.

**Defs.' SMF No. 33:**   The hearing lasted more than four hours.  *See id.* at 1, 201.

*Plaintiff's Response:* Not disputed.

**Defs.' SMF No. 34:**   During the hearing, Plaintiff answered questions from his lawyers and from ADAG Schools, and his lawyers presented argument.  *See generally* Oral Resp. Tr.

*Plaintiff's Response:*  Not disputed.

**Defs.' SMF No. 35:**   At the end of the hearing, ADAG Schools told Plaintiffs' counsel that the Attorney General would make the decision of whether or not to remove Plaintiff.  *Id.* at 198–200.

*Plaintiff's Response:*  Disputed.  The transcript reflects that, at the end of Plaintiff's March 15, 2018 hearing, Schools stated: "I don't know how all of that's going to play.  Obviously I don't know what the answer is yet."  Oral Resp. Tr. 200:17-19.  Schools did not tell Plaintiff's counsel that Sessions would make the decision of whether or not to remove Plaintiff.  Rather, Plaintiff's counsel asked Schools about next steps; Schools responded ambiguously but suggested that depending on his recommendation, the decision might pass either to AG Sessions (in the case of termination or a suspension of 30 days or more), DAG Rosenstein (in the case of suspension shorter than 30 days), or "someone."  *Id.* at 198:14-200:19.   At this point, Plaintiff's counsel requested the opportunity to "meet with the attorney general personally" if Schools proposed termination.  *Id.* at 201:3-10.  Schools did not reject that request and said he would "make sure they are aware of that" request.  *Id.* at 201:11-13.

**Defs.' SMF No. 36:**   At the hearing, Plaintiff's counsel stated, "if it's a suspension for more than 30 days or a termination that goes to him." Oral Resp. Tr. at 199:13–14.

*Plaintiff's Response:*  Not disputed that this is an excerpt of the transcript, but disputed insofar as this excerpt is incomplete.  The transcript reflects that Plaintiff's counsel stated: "So but if it's not a termination, I think it is—if it's a suspension for more than 30 days or a termination that goes to him. But if it's less, your decision is final?  Is that right?  No."  Schools then stated: "Not really."  Oral Resp. Tr. 199:12-16.

**Defs.' SMF No. 37:**   The reference to "him" at line 14 of page 199 of the Oral Response Transcript is a reference to the Attorney General.  Oral Resp. Tr. at 198–99.

*Plaintiff's Response:*  Not disputed.

**Defs.' SMF No. 38:**   The next day, Plaintiff, through counsel, submitted an eleven-page, single-spaced letter responding to the notice of proposed removal.  Letter from Bromwich to Schools ("Resp. Letter") (March 16, 2018) (attached as Ex. 5).

     *Plaintiff's Response:*  Not disputed.  However, Plaintiff's counsel submitted the letter under protest, after asking Schools to give more time to submit the letter, but Schools denied that request and extended the deadline only from Thursday, March 15, 2018 to Friday, March 16, 2018 at 12 p.m.  *See* Bromwich Decl. ¶ 23.

**Defs.' SMF No. 39:**   The letter submitted by Plaintiff's counsel refers to Plaintiff as the Deputy Director of the FBI.  *Id.* at 1.

     *Plaintiff's Response:*  Not disputed, but immaterial.  The view of Plaintiff's counsel that Plaintiff was legally entitled to the position and title of Deputy Director has no bearing on Defendants' contemporaneous position, admitted in the February 2018 OIG Report, that Plaintiff was only Deputy Director until January 29, 2018.  *See* OIG Rpt. 4 ("McCabe served as Acting Director until August 1, 2017, when Christopher Wray was confirmed by the Senate as the new FBI Director. At that time, McCabe resumed his duties as Deputy Director, a position he held until January 29, 2018."); *see also* OIG Rpt., Cover Page ("A Report of Investigation of Certain Allegations Relating to *Former* FBI Deputy Director Andrew McCabe" (emphasis added)).

**Defs.' SMF No. 40:**   In neither his oral nor written response did Plaintiff raise concerns with the Attorney General's involvement in the decision-making process.  *See* Oral Resp. Tr.; Response Letter.

     *Plaintiff's Response:*  Disputed, insofar as Sessions did not have any involvement in the decision-making process at the time Plaintiff made his oral and written responses. As reflected in the hearing transcript, Schools suggested that Sessions would only become involved if Schools

recommended Plaintiff be terminated or suspended beyond 30 days.  *See* Oral Resp. Tr. at 198:14–200:19.

**Defs.' SMF No. 41:**   ADAG Schools issued a written recommendation to the Attorney General. Memo. from ADAG Schools to the Attorney General ("ADAG Rec."), at 1–6 (Mar. 16, 2018) (attached as Ex. 6).

     *Plaintiff's Response:*   Disputed. Plaintiff does not dispute that Defendants' Exhibit 6 purports to be a written recommendation issued to Sessions.  However, because Defendants' motion for summary judgment is premature, coming before they have answered the Complaint and before Plaintiff has had any chance to take discovery, Plaintiff has had no opportunity to ascertain whether, when, or how Schools "issued" anything to Sessions.

**Defs.' SMF No. 42:**   ADAG Schools' recommendation states that its purpose is to "provide a recommendation regarding the proposed removal of FBI Deputy Director Andrew G. McCabe." *Id.* at 1.

     *Plaintiff's Response:*   Disputed. Plaintiff does not dispute that Defendants' Exhibit 6 contains the quoted language.  However, because Defendants' motion for summary judgment is premature, coming before they have answered the Complaint and before Plaintiff has had any chance to take discovery, Plaintiff has had no opportunity to ascertain whether, when, or how Schools "recommended" anything to Sessions.

**Defs.' SMF No. 43:**   In his written recommendation, ADAG Schools recommended that the Attorney General "sustain the charge[s] that Mr. McCabe [(i)] lacked candor" under oath in his interview with OIG, (ii) lacked candor not under oath in his interview with Inspection Division Agents, and (ii) authorized the disclosure of an on-going FBI investigation in contravention of FBI policy. *Id.* at 1–6.

   *Plaintiff's Response:* Disputed.  Plaintiff does not dispute the summary of Schools' letter. However, Schools' letter does not establish that he, in actuality, agreed with these written recommendations.  Motive is a key factual dispute in this case and Plaintiff has not had the opportunity to pursue any discovery on that issue.

**Defs.' SMF No. 44:**   ADAG Schools concluded that the OIG's finding that Plaintiff lacked candor in his conversation with former FBI Director James Comey was not supported by a preponderance of the evidence.  *Id.* at 5.

   *Plaintiff's Response:* Not disputed.

**Defs.' SMF No. 45:**   ADAG Schools recommended that Plaintiff be "dismissed from the rolls of the FBI." *Id.* at 6.

   *Plaintiff's Response:* Disputed.  Plaintiff does not dispute the text of Schools' written recommendation.  However, the cited evidence does not establish that Schools, in actuality, agreed with the written recommendation that Plaintiff be dismissed from the FBI.  Motive is a key factual dispute in this case and Plaintiff has not had the opportunity to pursue any discovery on that issue.

**Defs.' SMF No. 46:**   ADAG Schools based his dismissal recommendation, in part, on the fact that the "standard penalty for lack of candor under oath is dismissal." *Id.*

   *Plaintiff's Response:* Disputed.  Defendants provide no evidence for the assertion that it is a "fact" that the "standard penalty for lack of candor under oath is dismissal," and the cited

document does not state it is a "fact." Rather, Schools stated, without evidence: "As Ms. Will notes, the standard penalty for lack of candor under oath is dismissal." Plaintiff has not had the opportunity to pursue any discovery on any FBI disciplinary policies and practices, including the standard penalty for lack of candor under oath. Additionally, two recent OIG investigation findings indicate that employees retired before any adverse action was taken. *See* DOJ OIG, *Findings of Misconduct by a Senior DOJ Official for Ethical Misconduct, Sexual Harassment, Sexual Assault, and Lack of Candor to the OIG* (Dec. 4, 2018), *at* https://oig.justice.gov/reports/2018/f181204.pdf (stating that OIG found that a "senior DOJ official lacked candor in his statements to the OIG," that "[c]riminal prosecution of the senior DOJ official was declined," that he "retired from his position," and that OIG "completed its investigation and provided its report to the [relevant DOJ office] for appropriate action"); DOJ OIG, *Findings of Misconduct by a Senior DEA Official for Violating Ethics Regulations, DEA Standards of Conduct, and the Federal Acquisition Regulation, and for Lack of Candor* (June 10, 2019), *at* https://oig.justice.gov/reports/2019/f190610.pdf ("[T]he OIG concluded that the senior DEA official lacked candor by making false entries about alcohol counseling on a Questionnaire for National Security Position, in violation of the DEA Standards of Conduct and potentially in violation of criminal statutes. . . . Criminal prosecution of the senior DEA official . . . member was declined. The senior DEA official retired from his position. The OIG completed its investigation and provided its report to DEA and JMD for appropriate action.").

**Defs.' SMF No. 47:** ADAG Schools also stated that "[t]he substantiated findings of lack of candor under oath are compounded by the finding of lack of candor not under oath, and the unauthorized disclosure finding." *Id.*

*Plaintiff's Response:* Plaintiff does not dispute that Schools' letter states this language, but does dispute this insofar as it purports to establish that Schools, in actuality, agreed with this written statement.   Motive is a key factual dispute in this case and Plaintiff has not had the opportunity to pursue any discovery on that issue.

**Defs.' SMF No. 48:**   ADAG Schools noted, "as Ms. Will [had] observed," that Mr. McCabe "was the second highest-ranking official in the FBI, and he [wa]s expected to handle himself with utmost integrity."   *Id.*

*Plaintiff's Response:* Not disputed.  However, Plaintiff was not the second highest-ranking official in the FBI at the time of this statement.   *See* OIG Rpt. 4 ("McCabe served as Acting Director until August 1, 2017, when Christopher Wray was confirmed by the Senate as the new FBI Director. At that time, McCabe resumed his duties as Deputy Director, a position he held until January 29, 2018.")

**Defs.' SMF No. 49:**   On March 16, 2018, the Attorney General adopted the recommendation of ADAG Schools that Mr. McCabe be removed. Compl. ¶ 38; ADAG Rec. at 6.

*Plaintiff's Response:* Disputed.  The cited evidence does not establish that AG Sessions was adopting Schools' recommendation.  Paragraph 38 of the Complaint states only: "On March 16, 2018, just before 10 p.m., Sessions issued a public statement announcing that he had terminated Plaintiff's employment with the FBI.  Page 6 of Schools' March 16, 2018 letter merely displays a signature above the name "Jefferson B. Sessions III" and a statement captioned "Decision": "For the reasons stated in the foregoing recommendation, I have decided that Andrew G. McCabe should be removed from the Federal Bureau of Investigation and from the civil service."  Plaintiff does not dispute that this signature reflects AG Sessions' intent that Plaintiff's employment "should be" terminated, but it does not state that Sessions intended for termination to be immediate.

Plaintiff also disputes the implication that Sessions reached his decision to terminate Plaintiff on March 16, 2018. Defendants provide no evidence that Sessions actually reached that decision on March 16, rather than an earlier date.

**Defs.' SMF No. 50:**   The Attorney General wrote: "For the reasons stated in the foregoing recommendation, I have decided that Andrew G. McCabe should be removed from the Federal Bureau of Investigation and from the civil service." *Id.*

*Plaintiff's Response:* Disputed. The cited evidence does not establish that Sessions wrote this statement; the formatting of the text indicates that it was written by Schools as part of his March 16, 2018 letter, which was then provided to Sessions. Plaintiff does not dispute that underneath the above-quoted text, a handwritten signature appears above the typed name "Jefferson B. Sessions III."

**Defs.' SMF No. 51:**   Mr. McCabe's removal was effective on March 16, 2018. *Id.*

*Plaintiff's Response:* Disputed. The cited evidence does not support this fact. Plaintiff does not dispute that Defendants caused his separation from the FBI to be recorded as effective on March 16, 2018. *See* McCabe Decl. ¶ 50; PX-21. However, Plaintiff disputes that he was actually removed, or that he separated from the FBI that date. As noted in Plaintiff's response to Defs.' SMF No. 50, Sessions stated only that Plaintiff "should be" removed, and did not state that the removal should be effective immediately or on any other date. Whether and when Plaintiff's removal was effective is a mixed legal and factual conclusion, disputed at length in Argument Section IV.A of Plaintiff's brief opposing Defendants' Motion and all of the evidence cited therein.

## II.     PLAINTIFF'S COUNTERSTATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

1.      Plaintiff held the position of Deputy Director until January 29, 2018.  OIG Rpt. 4 ("McCabe became Acting Director of the FBI on May 9, 2017, when FBI Director James Comey was fired.  McCabe served as Acting Director until August 1, 2017, when Christopher Wray was confirmed by the Senate as the new FBI Director.  At that time, McCabe resumed his duties as Deputy Director, a position he held until January 29, 2018.").

2.      At the time of Plaintiff's separation from the FBI in March 2018, Plaintiff was in a non-duty status known as "terminal leave."  McCabe Decl. ¶ 40; PX-24 (email from FBI human resources official David Schlendorf).

3.      The text of the OIG Report states that OIG was "issuing this report to the FBI for such action as it deems appropriate," and does not state a recommendation of any specific action for the FBI to take.  OIG Rpt. 2, 35.

4.      According to Defendant DOJ's publicly available documents, two recent OIG investigation findings each state that an employee under investigation for "lack of candor" ultimately "retired from his position," and do not state that the employees were terminated before they could retire.  *See* DOJ OIG, *Findings of Misconduct by a Senior DOJ Official for Ethical Misconduct, Sexual Harassment, Sexual Assault, and Lack of Candor to the OIG* (Dec. 4, 2018), *at* https://oig.justice.gov/reports/2018/f181204.pdf (stating that OIG found that a "senior DOJ official lacked candor in his statements to the OIG," that "[c]riminal prosecution of the senior DOJ official was declined," that he "retired from his position," and that OIG "completed its investigation and provided its report to the [relevant DOJ office] for appropriate action"); DOJ OIG, *Findings of Misconduct by a Senior DEA Official for Violating Ethics Regulations, DEA Standards of Conduct, and the Federal Acquisition Regulation, and for Lack of Candor* (June 10,

2019), *at* https://oig.justice.gov/reports/2019/f190610.pdf ("[T]he OIG concluded that the senior DEA official lacked candor by making false entries about alcohol counseling on a Questionnaire for National Security Position, in violation of the DEA Standards of Conduct and potentially in violation of criminal statutes. . . .  Criminal prosecution of the senior DEA official . . . was declined. The senior DEA official retired from his position.  The OIG completed its investigation and provided its report to DEA and JMD for appropriate action.").

5.      The text of the OIG Report states that OIG "found" that Plaintiff had "lacked candor" on four occasions: once when speaking with then-FBI Director James Comey on October 31, 2016 about the *Wall Street Journal* article published online on October 30, 2016, entitled "FBI in Internal Feud Over Hillary Clinton Probe," and then republished in print on October 31, 2016, entitled "FBI, Justice Feud in Clinton Probe"; once while being questioned by Inspection Division Agents on May 9, 2017; and twice while being questioned by OIG on July 28, 2017 and November 29, 2017.  OIG Rpt. 1-2, 22.

6.      The text of the OIG Report does not reference any testimony or emails by Michael Kortan, the then-FBI Assistant Director for Public Affairs ("AD/OPA").  *See generally* OIG Rep.

7.      According to publicly available sources, during the 2015 Virginia state election cycle, a political action committee ("PAC") of then-Virginia Governor, Terry McAuliffe, made campaign contributions of over $250,000 to each of five Democratic Party campaigns for Virginia state senate.  One state senate campaign received $803,500 from that PAC, another received $781,500, and Dr. McCabe's campaign received $467,500.  Virginia Public Access Project, https://www.vpap.org/donors/248345-common-good-va/?start_year=2015&end_year=2015; OIG Rpt. 5-6.

8.      In 2015, former U.S. Secretary of State Hillary Clinton declared her candidacy for the Democratic Party's nomination for the U.S. presidency.  Amy Chozick, *Hillary Clinton Announces 2016 Presidential Bid*, N.Y. TIMES (Apr. 12, 2015), https://www.nytimes.com/2015/04/13/us/politics/hillary-clinton-2016-presidential-campaign.html.

9.      According to Defendant FBI's publicly available documents, in July 2015, the FBI opened an investigation into whether Clinton had improperly stored or transmitted classified information on a private email server while conducting official business during her tenure as Secretary of State ("Clinton email investigation").  *See* FBI Memorandum, *Clinton E-Mail Investigation* 1 (July 2016), https://vault.fbi.gov/hillary-r.-clinton/Hillary%20R.%20Clinton%20Part%2001%20of%2037.

10.     According to Defendant FBI's publicly available documents, on July 5, 2016, FBI Director Comey publicly announced the conclusion of the Clinton email investigation with the recommendation that the facts did not support bringing any criminal charges against Clinton.  *Statement by FBI Director James B. Comey on the Investigation of Secretary Hillary Clinton's Use of a Personal E-Mail System,* FBI, (July 5, 2016), https://www.fbi.gov/news/pressrel/press-releases/statement-by-fbi-director-james-b-comey-on-the-investigation-of-secretary-hillary-clinton2019s-use-of-a-personal-e-mail-system.

11.     On July 26, 2016, Clinton accepted the Democratic Party's presidential nomination, and on July 22, 2016, Donald J. Trump accepted the Republican Party's presidential nomination. *Who Is Running for President?*, N.Y. Times, July 26, 2016, at https://www.nytimes.com/interactive/2016/us/elections/2016-presidential-candidates.html

12.     On July 31, 2016, the FBI began a counter-intelligence investigation into whether Trump campaign associates were linked to the Russian government's efforts to interfere in the 2016 U.S. presidential election ("Russia investigation").  McCabe Decl. ¶ 15; *see also* Page 47 at https://docs.house.gov/meetings/IG/IG00/20180322/108023/HRPT-115-1_1-p1-U3.pdf;  Page  2 of https://intelligence.house.gov/uploadedfiles/redacted_minority_memo_2.24.18.pdf.

13.     On October 23, 2016, the *Wall Street Journal* published online an article concerning then the McAuliffe PAC's contributions to Dr. McCabe's 2015 Virginia state senate campaign, and stated that McAuliffe was "an influential Democrat with long-standing ties to Bill and Hillary Clinton."  OIG Rpt. 5-6; *see also* Devlin Barrett, *Clinton Ally Aided Campaign of FBI Official's      Wife*,      Wall      St.      Journal,      Oct.      24,      2016      (print      edition), https://www.wsj.com/articles/clinton-ally-aids-campaign-of-fbi-officials-wife-1477266114.

14.     On October 24, 2016, *Wall Street Journal* reporter Devlin Barrett contacted Michael Kortan about a follow-up story concerning Plaintiff's oversight of the FBI's investigation into the Clinton Foundation, a non-profit organization established by former president Bill Clinton. OIG Rpt. 6.

15.     On January 12, 2017, OIG announced its initiation of a review of allegations regarding certain actions by the DOJ and FBI in advance of the 2016 election ("2016 election investigation").  The allegations under review included allegations "that Department and FBI employees improperly disclosed non-public information."  *See* DOJ OIG, *DOJ OIG Announces Initiation of Review* (Jan. 12, 2017), at https://oig.justice.gov/press/2017/2017-01-12.pdf.

16.     In March 2017, then-Attorney General Jeff Sessions stated: "I have decided to recuse myself from any existing or future investigations of any matters related in any way to the campaigns for President of the United States. . . .  Consistent with the succession order for the

Department of Justice, Acting Deputy Attorney General and U.S. Attorney for the Eastern District

of Virginia Dana Boente shall act as and perform the functions of the Attorney General with respect

to any matters from which I have recused myself to the extent they exist." *Attorney General*

*Sessions Statement on Recusal,* Department of Justice, Press Release No. 17-237 (Mar. 2, 2017),

https://www.justice.gov/opa/pr/attorney-general-sessions-statement-recusal.

17.    In May 2017, the Russia investigation was assigned to a Special Counsel, former

FBI Director Robert S. Mueller III.  *See generally* Special Counsel Robert S. Mueller III, REPORT

ON THE INVESTIGATION INTO RUSSIAN INTERFERENCE IN THE 2016 PRESIDENTIAL ELECTION (Mar.

2019) ("Special Counsel Report"), *redacted version available at* https://www.justice.gov/storage/

report.pdf, 2019 WL 1780145 (Vol. I), and 2019 WL 1780146 (Vol. II).

18.    The Russia investigation identified links between individuals in Trump's

presidential campaign and the Russian government and other Russian individuals and entities.  *See,*

*e.g.*, Plea Agreement at 1, 4, *United States v. Gates*, No. 17-CR-201-2 (D.D.C. Feb. 23, 2018)

(admitting to working as an employee of companies run by Manafort, including as an agent of the

Party of Regions); Statement of the Offense at 1-3, *United States v. Flynn*, No. 17-CR-232 (D.D.C.

Dec. 1, 2017) (pleading guilty to making false statements to FBI regarding Flynn's conversations

with the Russian ambassador to the United States about U.S. sanctions); Statement of the Offense

at 1-3, *United States v. Papadopoulos,* No. 17-CR-182 (D.D.C. Oct. 5, 2017) (Trump's National

Security Advisory pleading guilty to making false statements to the FBI regarding his

communications with foreign individuals tied to the Russian government).

19.    On June 11, 2018, OIG issued a report on its 2016 election investigation, entitled

"A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice

in Advance of the 2016 Election."  Available at https://www.justice.gov/file/1071991/download.

December 23, 2019                    Respectfully submitted,

  /s/ Murad Hussain
Howard N. Cayne (D.C. Bar. No. 331306)
Murad Hussain (D.C. Bar. No. 999278)
Brittany McClure (D.C. Bar. No. 1001889)
Owen Dunn (D.C. Bar. No. 1044290)
Ryan D. White (D.C. Bar. No. 1655918)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC  20001-3743
Telephone: (202) 942-5000
Fax: (202) 942-5999

*Attorneys for Plaintiff Andrew G. McCabe*