**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ANDREW G. MCCABE.,

        Plaintiff,

    v.

WILLIAM P. BARR, in his official capacity as
Attorney General of the United States, *et al.*,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:19-CV-2399-RDM

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

ARGUMENT .......................................................................................................................4

I.     The Court Can Resolve Defendants' Motion Under Rule 12, but if the Court Disagrees, Summary Judgment is Not Premature..................................................................................4

II.    Plaintiff's Demotion-Related Claims Should Be Dismissed.............................................6

     A.   Plaintiff Lacks Standing to Pursue a First Amendment Claim Based on an Alleged Demotion...................................................................................................................7

     B.   Plaintiff's Demotion-Related Due Process Argument Should Be Rejected ........................7

III.   Plaintiff's First Amendment Claims Do Not Withstand Scrutiny......................................9

     A.   The Procedures Leading up to Plaintiff's Removal Are Not A Free-standing Adverse Action Forming the Basis of a First Amendment Claim......................................................10

     B.   Plaintiff's First Amendment Claim Fails Because He Was Removed for Misconduct.....11

IV.    Plaintiff's Due Process Claims Fail .................................................................................15

     A.   Plaintiff's Substantive Due Process Claims Lack Merit.................................................16

          1.   Plaintiff Lacks a Protected Property Interest.............................................................17

               a.   Plaintiff Has No Property Interest in Continued Employment at the FBI....................18

               b.   Plaintiff Lacks a Property Interest in the Law-Enforcement Officer Retirement Annuity ...................................................................................22

          2.   Defendants Did Not Engage in Conduct that Shocks the Conscience ...................25

     B.   Plaintiff's Procedural Due Process Claims Are Flawed......................................................27

CONCLUSION..................................................................................................................29

# TABLE OF AUTHORITIES

## Cases

*Albright v. Oliver,*
    510 U.S. 266 (1994) ....................................................................................................16, 26, 27

*Am. Farm Lines v. Black Ball Freight Serv.,*
    397 U.S. 532 (1970) ..................................................................................................................9

*Am. Fed. of Gov't Employees, AFL–CIO, Local 446 v. Nicholson,*
    475 F.3d 341 (D.C. Cir. 2007) ................................................................................................25

*Am. Fed'n of Gov't Emps., AFL-CIO v. United States,*
    330 F.3d 513 (D.C. Cir. 2003) ................................................................................................17

*Am. Fed'n of Gov't Emps., Local 2741 v. District of Columbia,*
    689 F. Supp. 2d 30 (D.D.C. 2009) ..........................................................................................17

*Am. Mfrs. Mut. Ins. Co. v. Sullivan,*
    526 U.S. 40 (1999) ............................................................................................................10, 27

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................................6, 13

*Bishop v. Wood,*
    426 U.S. 341 (1976) ..........................................................................................................20, 28

*Bloch v. Powell,*
    348 F.3d 1060 (D.C. Cir. 2003) ........................................................................................18, 19

*Brady v. Office of Sergeant at Arms,*
    520 F.3d 490 (D.C. Cir. 2008) ................................................................................................10

*Breiterman v. U.S. Capitol Police,*
    324 F.R.D. 24 (D.D.C. 2018)...................................................................................................14

*Cage v. Harper,*
    No. 17-CV-07621, 2018 WL 4144624 (N.D. Ill. Aug. 30, 2018) ..........................................20

*Clark v. Library of Cong.,*
    750 F.2d 89 (D.C. Cir. 1984) ..................................................................................................12

*Cleveland Bd. of Educ. v. Loudermill,*
    470 U.S. 532 (1985) ................................................................................................................20

*Cobb v. City of Harahan,*
    516 F. App'x 337 (5th Cir. 2013) ............................................................................................20

*Collins v. Harker Heights,*
   503 U.S. 115 (1992) ..................................................................................................16

*Convertino v. U.S. Dep't of Justice,*
   684 F.3d 93 (D.C. Cir. 2012) .....................................................................................5

*Crooks v. Mabus,*
   845 F.3d 412 (D.C. Cir. 2016) ............................................................................ 18, 19

*Cty. of Sacramento v. Lewis,*
   523 U.S. 833 (1998) ............................................................................................ 17, 25

*Daney v. Dep't of the Interior,*
   25 F. App'x 994 (Fed. Cir. 2001)..............................................................................19

*Donnelly v. F.A.A.,*
   411 F.3d 267 (D.C. Cir. 2005) .................................................................................19

*Elrod v. Burns,*
   427 U.S. 347 (1976) ..................................................................................................27

*Estate of Phillips v. District of Columbia,*
   455 F.3d 397 (D.C. Cir. 2006) .................................................................................16

*Farris v. Clinton,*
   602 F. Supp. 2d 74 (D.D.C. 2009) ..........................................................................10

*FDIC v. Henderson,*
   940 F.2d 465 (9th Cir.1991) .....................................................................................20

*Fischbach v. D.C. Dep't of Corr.,*
   86 F.3d 1180 (D.C. Cir. 1996) .................................................................................12

*Flaningam v. Cty. of Winnebago,*
   243 F. App'x 171 (7th Cir. 2007) .............................................................................19

*Food & Water Watch, Inc. v. Vilsack,*
   808 F.3d 905 (D.C. Cir. 2015) ...................................................................................7

*Fraternal Order of Police Dep't of Corr. Labor Comm. v. Williams,*
   375 F.3d 1141 (D.C. Cir. 2004) ...............................................................................26

*Garcia ex rel. Garcia v. Miera,*
   817 F.2d 650 (10th Cir.1987) ...................................................................................26

*Garrow v. Gramm,*
   856 F.2d 203 (D.C. Cir. 1988) .................................................................................18

*Griffith v. FLRA*,
  842 F.2d 487 (D.C. Cir. 1988) .................................................................................................20

*Hamilton v. Geithner*,
  666 F.3d 1344 (D.C. Cir. 2012) ..............................................................................................14

*Harding v. Gray*,
  9 F.3d 150 (D.C. Cir. 1993).....................................................................................................13

*Hiligh v. Sands*,
  389 F. Supp. 3d 69 (D.D.C. 2019) .............................................................................................6

*In re Grand Jury Investigation*,
  315 F. Supp. 3d 602 (D.D.C. 2018) ........................................................................................24

*In re Grand Jury Investigation*,
  916 F.3d 1047 (D.C. Cir. 2019) ..........................................................................................9, 24

*Izaak Walton League of Am. v. Johnson*,
  400 F. Supp. 2d 38 (D.D.C. 2005) ..........................................................................................24

*Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*,
  909 F.3d 446 (D.C. Cir. 2018) ..................................................................................................5

*Kelly v. Indep. Sch. Dist. No. 12 of Oklahoma Cty., Oklahoma*,
  80 F. App'x 36 (10th Cir. 2003) ..............................................................................................20

*Kentucky Dep't of Corr. v. Thompson*,
  490 U.S. 454 (1989) .................................................................................................................18

*Martinez v. California*,
  444 U.S. 277 (1980) .................................................................................................................28

*McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conference of the U.S.*,
  83 F. Supp. 2d 135 (D.D.C. 1999), aff'd in part, vacated in part, 264 F.3d 52 (D.C. Cir. 2001) ...........29

*McManus v. District of Columbia*,
  530 F.Supp.2d 46 (D.D.C. 2007) ............................................................................................17

*Messina v. Krakower*,
  439 F.3d 755 (D.C. Cir. 2006) ..................................................................................................5

*Mozier v. Bd. of Ed. of Cherry Hill Twp., Camden Cty.*,
  450 F. Supp. 742 (D.N.J. 1977) ..............................................................................................21

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) .................................................................................................................28

*Nat'l Collegiate Preparatory v. D.C. Charter Sch. Bd.*,
   No. CV 19-1785 (JEB), 2019 WL 7344826 (D.D.C. Dec. 11, 2019) .................................................28

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*,
   366 F.3d 930 (D.C. Cir. 2004) ..........................................................................................................7

*Nicholas v. Pennsylvania State Univ.*,
   227 F.3d 133 (3d Cir. 2000) ............................................................................................................17

*O'Hare Truck Serv., Inc. v. City of Northlake*,
   518 U.S. 712 (1996) ..........................................................................................................................10

*Owens v. District of Columbia*,
   875 F. Supp. 2d 75 (D.D.C. 2012), *on recon. in part*, 923 F. Supp. 2d 241 (D.D.C. 2013), *aff'd*, 606 F.
   App'x 585 (D.C. Cir. 2015) .............................................................................................................26

*Parker v. District of Columbia*,
   293 F. Supp. 3d 194 (D.D.C. 2018) .........................................................................................28, 29

*Rochin v. California*,
   342 U.S. 165 (1952) ..................................................................................................................... 4, 26

*Rosales-Mireles v. United States*,
   —— U.S. ——, 138 S. Ct. 1897 (2018) .........................................................................................25

*Said v. Nat'l R.R. Passenger Corp.*,
   317 F. Supp. 3d 304 (D.D.C. 2018), *amended on recon.*, 390 F. Supp. 3d 46 (D.D.C. 2019) ..16, 17, 26

*Seneca v. Price*,
   257 F. Supp. 3d 95 (D.D.C. 2017) .....................................................................................................5

*Staub v. Proctor Hosp.*,
   562 U.S. 411 (2011) ..........................................................................................................................12

*Stern v. F.B.I.*,
   737 F.2d 84 (D.C. Cir. 1984) ...........................................................................................................22

*Sveen v. Melin*,
   —— U.S. ——, 138 S.Ct. 1815 ......................................................................................................24

*Thompson v. Dist. of Columbia*,
   530 F.3d 914 (D.C. Cir. 2008) .........................................................................................................18

*Tri Cty. Indus., Inc. v. District of Columbia*,
   104 F.3d 455 (D.C. Cir. 1997) .........................................................................................................16

*United States v. Chem. Found.*,
   272 U.S. 1 (1926) ..............................................................................................................................13

*Wilburn v. Robinson,*
   480 F.3d 1140 (D.C. Cir. 2007) ...................................................................................12

*Williams v. Johnson,*
   701 F. Supp. 2d 1 (D.D.C. 2010) ...............................................................................12

*Winder v. Erste,*
   511 F. Supp. 2d 160 (D.D.C. 2007), *aff'd in part, rev'd in part and remanded*, 566 F.3d 209 (D.C. Cir.
   2009) ..............................................................................................................17, 26, 27

## Statutes

5 U.S.C. App. 3 § 2 ............................................................................................................13

5 U.S.C. § 6302(b) ............................................................................................................23

5 U.S.C. § 7543 ................................................................................................................19

5 U.S.C. § 8412(d)(2) ......................................................................................................22

18 U.S.C. § 1001 ........................................................................................................21, 22

18 U.S.C. § 1621 ........................................................................................................21, 22

28 U.S.C. § 509 ..................................................................................................................8

28 U.S.C. § 510 ..................................................................................................................9

## Regulations

28 C.F.R. § 0.15(a) ............................................................................................................9

28 C.F.R. § 0.25(d) ..........................................................................................................14

28 C.F.R. § 0.29e(b) ..................................................................................................... 1, 21

## Other Authorities

Department of Justice, Office of Legal Counsel,
   https://www.justice.gov/olc...................................................................................14

Department of Justice, Statement on Testimony of Former FBI Director James Comey (June 8,
2017)
   https://www.justice.gov/opa/pr/department-justice-issues-statement-testimony-former-fbi-
   director-james-comey....................................................................................................23

FBI, Special Agent Selection Process, All You Need to Know to Apply
   https://www.fbijobs.gov/sites/default/files/how-to-apply.pdf........................................23

Hearing Transcript, June 13, 2017, Senate Select Committee on
Intelligence………………………………………………………………………………..24

**INTRODUCTION**

The United States Department of Justice's Office of Inspector General (OIG) concluded that Plaintiff Andrew McCabe lacked candor when questioned under oath while employed as the Deputy Director of the Federal Bureau of Investigation ("FBI").   OIG, "A Report of Investigation of Certain Allegations Relating to Former FBI Deputy Director Andrew McCabe" ("OIG Rpt.") (Feb. 2018), https://oig.justice.gov/reports/2018/o20180413.pdf.   The then-career head of the FBI's Office of Professional Responsibility, Assistant FBI Director Candace Will (now retired), also concluded that then-FBI Deputy Director McCabe lacked candor under oath.   Letter from Assistant Director Will to Andrew McCabe ("FBI Rec.") at 15 (Mar. 7, 2018) (attached as Ex. 1 to Mem. in Support of Mtn. to Dismiss and for Summ. J. ["MTD/SJ Mem."], Nov. 1, 2019, ECF No. 23).   And then-Associate Deputy Attorney General ("ADAG") Scott Schools, the highest-ranking career official in the Department of Justice at the time, similarly concluded that Mr. McCabe lacked candor under oath while employed as the Deputy Director of the FBI.   Mem. from ADAG Schools to the Attorney General ("ADAG Rec."), at 1–6 (Mar. 16, 2018) (attached as Ex. 6 to MTD/SJ Mem.).   Additionally, all three determined that Mr. McCabe lacked candor while not under oath and improperly authorized subordinates to reveal an ongoing FBI Investigation.

On that basis, Assistant Director Will and ADAG Schools recommended that Mr. McCabe be removed from the FBI.   In Assistant Director Will's words, despite the fact that he "held the second-highest position in the FBI and [was] expected to comport [himself] with the utmost integrity," Mr. McCabe acted in a way "incompatible with the FBI's Core Values" by "repeatedly lack[ing] candor with the Director of the FBI, the OIG, and the FBI's Inspection Division."[1]   FBI Rec. at 15.   Then-Attorney General Sessions agreed with these senior career officials' recommendations and removed Mr. McCabe from the FBI and the civil service.

---

[1] OIG did not make a recommendation about whether Mr. McCabe should remain with the FBI because disciplinary decisions fall outside the OIG's purview.   *See* 28 C.F.R. § 0.29e(d) ("OIG investigations that result in findings of administrative misconduct are reported to management for appropriate disposition."); *see also* OIG Rpt. at 2.

In these circumstances, the Attorney General's decision represented an unremarkable application of the FBI's standard protocol, under which dismissal constitutes the standard penalty for lack of candor under oath. Plaintiff, however, sees impropriety at nearly every turn, suggesting, for example, that OIG was not neutral, but concluded that Plaintiff lacked candor under oath—as well as not under oath, and improperly authorized an ongoing investigation—not because the men and women of that office thought that those conclusions were true, but to provide cover for his removal. *See* Compl. ¶¶ 178-179, ECF No. 1; *see* also Pl.'s Br. in Opp. to Defs.' Mtn. to Dismiss and for Summ. J. ("Opp."), Dec. 23, 2019, ECF No. 27, at 26 n.12. This suggestion captures the tenor of Plaintiff's Complaint. Thus, as Defendants' opening brief established, the Court should dismiss Plaintiff's Complaint or, in the alternative, enter summary judgment in favor of Defendants. Defendants established, for example, that under the Due Process Clause, Plaintiff, assisted by a team of lawyers from two well-regarded law firms, did not need more than a week to respond to the 15-page notice of proposed removal, when he had been on notice of the essential elements of the notice for more than three weeks. MTD/SJ Mem. at 23-26. Defendants also demonstrated that Plaintiff's removal did not violate the First Amendment but, as indicated earlier, was a routine application of standard FBI protocol, supported by the conclusions of the OIG, the career head of the FBI's Office of Professional Responsibility, and the highest ranking career official in the Department of Justice. *Id.* at 28.

Plaintiff predictably disagrees in his opposition brief, but his arguments are unpersuasive.[2] First, Plaintiff argues that Defendants' motion should be considered only a motion for summary judgment, and that summary judgment is premature. But Plaintiff's claims should be rejected as a matter of law based on the 12(b)(6) record, which includes not only the Complaint itself, but documents incorporated in the Complaint by reference and documents of which the Court can take judicial notice—such as the OIG Report, the FBI's notice of proposed removal, and the ADAG's

---

[2] Perhaps less predictably, but correctly in view of the preclusive effect of the Civil Service Reform Act, MTD/SJ Mem. at 10-14, Plaintiff disclaims any intent to bring standalone statutory claims. Similarly surprisingly, but just as correctly in view of the applicable waiver doctrine and the lack of any supporting factual allegations, *id.* at 17-22, Plaintiff denies basing any of his due process claims on any alleged bias harbored by former Attorney General Sessions.

recommendation of removal. Thus, Defendants properly moved for dismissal under Rule 12(b)(6). Moreover, even if the Court were to agree with Plaintiff that these materials were not incorporated by reference into his Complaint and thus determine that Defendants' motion should be converted fully to a motion for summary judgment, summary judgment would not be premature: No amount of discovery will provide Plaintiff the ammunition he needs to stave off summary judgment on his due process claims, because the facts he seeks in discovery will not change the outcome, or his First Amendment claims, as discovery will not remedy the fundamental flaws in his Complaint.

While Plaintiff primarily challenges his removal, he also challenges an alleged demotion under the First Amendment and Due Process Clause. These claims fail. First, they proceed from a faulty premise, as Plaintiff does not plausibly allege that he was in fact demoted. Prior to his removal, Plaintiff's own counsel, the FBI, and ADAG Schools all identified Plaintiff as the Deputy Director of the FBI, and the documents in Plaintiff's Official Personnel File do the same. In any case, Plaintiff lacks standing to raise a freestanding demotion-related First Amendment claim, because there is no relief that the Court can award on such a claim, given that Plaintiff's employment records reflect no demotion. Finally, Plaintiff's argument that his due process rights were violated because the alleged demotion stripped former Attorney General Sessions of the authority to remove him fails: the Attorney General possessed the authority to remove Plaintiff regardless of whether he had been demoted.

And more broadly, Plaintiff's First Amendment claims cannot survive review. Plaintiff bases those claims on his alleged demotion, Defendant's supposed rush to judgment in removing him, and his removal. The demotion claim has already been discussed. Plaintiff's rush-to-judgment claim similarly fails to get off the ground: This is a due process claim, not a First Amendment one. Finally, Plaintiff's removal did not violate the First Amendment. He was removed not because of any perceived political affiliation, but rather because of serious misconduct inconsistent with the FBI's cores values. And he does not make plausible allegations that the decision maker, former Attorney General Sessions, removed him for political reasons.

Plaintiff's Due Process arguments fare no better. He now contends that the Complaint contains substantive due process claims, in addition to the procedural due process claims expressly asserted. Even if Plaintiff had sufficiently pleaded substantive due process claims in his Complaint, they would lack merit. The substantive due process doctrine protects only certain significant property interests, and in the context of executive action, is violated only by conscience-shocking action. *See Rochin v. California*, 342 U.S. 165, 172 (1952) (concluding that forced stomach pumping violated substantive due process). But the doctrine does not protect property interests in continued employment (or an employer related annuity), which Plaintiff lacked in any case. Moreover, Defendants' action—the dismissal of an employee for misconduct—does not shock the conscience; forced stomach pumping, this isn't. *See id.* Finally, one of Plaintiff's substantive due process claims overlaps with, and is thus foreclosed by, his (unsuccessful) First Amendment claim.

Plaintiff's procedural due process claims find a similar fate. His property-based procedural due process claims come up short because Plaintiff has no protected property interests in his continued employment or the law-enforcement annuity. And all of his procedural due process claims lack merit because the substance of the notice and the time given to respond satisfy the Constitution, if not Mr. McCabe.

Accordingly, for the reasons stated in this memorandum and in Defendants' opening brief, the Court should dismiss Plaintiff's claims or enter summary judgment in favor of Defendants.

## **ARGUMENT**

I.    **The Court Can Resolve Defendants' Motion Under Rule 12, but if the Court Disagrees, Summary Judgment is Not Premature**

Plaintiff contends that Defendants' motion should be treated as seeking solely summary judgment as to his due process claims—not dismissal under Rule 12(b)(6)—because it relies on documents outside the pleadings, and that summary judgment should be deferred under Rule 56(d). Opp. at 17–18. But Plaintiff's due process claims can and should be resolved under Rule 12(b)(6). Defendants identify several purely legal reasons why those claims fail as a matter of law—including, for example, that the substantive due process doctrine does not protect the sort of property rights

Plaintiff claims to possess, *see* p. 18 below—and thus are subject to dismissal under Rule 12(b)(6). And to the extent Defendants' arguments as to the due process claims depend on documents outside of the Complaint, the Complaint incorporates by reference the FBI's recommendation (Compl. ¶ 115), ADAG Schools's March 8, 2018 letter (*id.* ¶ 118), and ADAG Schools's March 16, 2018 letter and the Attorney General's Decision (*id.* ¶ 126), so they can be considered on a Rule 12(b)(6) motion. *See Seneca v. Price*, 257 F. Supp. 3d 95, 96 (D.D.C. 2017). In any event, the Court can properly take judicial notice of—and thus consider on a Rule 12(b)(6) motion—the transcript of the oral hearing, Plaintiff's counsel's response letter, and the FBI's Senior Executive Service (SES) policy, all of which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 464 (D.C. Cir. 2018) (quotation marks omitted). (For the same reason, the Court can also take judicial notice of the FBI's Special Agent Hiring Policy Guide, Mr. McCabe's personnel documents, and two Attorney General Orders cited in this brief.) Plaintiff's due process claims are therefore subject to dismissal under Rule 12(b)(6).

And even if the Court were to determine that Defendants' Rule 12(b)(6) motion should be converted to one under Rule 56 as to Plaintiff's due process claims, none of the discovery that Plaintiff seeks with respect to those claims is "necessary to the litigation," as Plaintiff must show to successfully invoke Rule 56(d). *See Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012). For example, facts related to Defendants' application of the crime exception to the 30-day notice provision in other cases cannot alter the law, and under the law, a procedural protection (like the 30-day notice provision) does not, contrary to Plaintiff's argument, create a property interest. *See* p. 21 below. Nor will any alleged discovery vindicate Plaintiff's startling submission that, contrary to the FBI's Special Agent Hiring Policy Guide, its website, and common sense, an FBI Special Agent's work day ends at 5 p.m.

Plaintiff's attempt to avoid summary judgment on the First Amendment claim under Rule 56(d) should likewise be denied because he has not alleged sufficient nonconclusory facts to warrant discovery. A Rule 56(d) request is properly denied "where the requesting party has offered only a conclusory assertion without any supporting facts to justify the proposition that the discovery sought will produce the evidence required." *Messina v. Krakower*, 439 F.3d 755, 762 (D.C. Cir. 2006) (quotation

omitted).  In other words, "discovery is available only if a plaintiff has plausibly alleged facts sufficient to state a claim against a defendant." *Hiligh v. Sands*, 389 F. Supp. 3d 69, 74 n.4 (D.D.C. 2019).

Here, Plaintiff acknowledges that his First Amendment claim requires him to plead and prove that his perceived political affiliation was a motivating factor in prompting his termination.[3]  Opp. at 18.  As explained below and in Defendants' opening brief, however, the key deficiency in the Complaint is the lack of any nonconclusory factual allegations that the *decision maker* for that personnel action was motivated by his perceived political affiliation. The Complaint includes numerous allegations about *the President's* statements purportedly showing *the President's* disapproval of Plaintiff's perceived political affiliation.  *E.g.*, Compl. ¶¶ 5, 46, 53–57, 67–69, 71, 72, 74, 76, 78, 83–85, 90, 93–95, 101, 102, 104, 133–147.  But Plaintiff acknowledges that the official who terminated him was *then-Attorney General Sessions*, not the President. *See* Compl. ¶ 131; *see also id.* ¶¶ 116, 117.  The Complaint lacks sufficient nonconclusory allegations that *Attorney General Sessions's* decision to terminate Plaintiff was motivated by any unlawful reason. Instead, as in *Iqbal*, the Complaint's allegations about Attorney General Sessions's supposed hidden motivations are too conclusory to survive dismissal—a flaw that cannot be remedied by counsel's declaration about discovery requests that might yield evidence supporting those conclusory allegations. *Compare Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009), *with* Compl.  ¶ 3 (Attorney General Sessions "knowingly acted in furtherance of Trump's plan and scheme"); ¶ 4 ("Defendants knew that they were implementing Trump's unconstitutional motivations for removing Plaintiff from the civil service"); ¶ 7; ¶ 8; ¶ 10; ¶ 11.  Plaintiff's First Amendment claims are thus subject to dismissal under Rule 12(b)(6) or summary judgment under Rule 56 without further discovery.

## II.    Plaintiff's Demotion-Related Claims Should Be Dismissed

Plaintiff tries to recast his January 29 transition to terminal leave as a demotion, and uses that

---

[3] Besides being terminated, Plaintiff also alleges that he was demoted. Opp. at 21–22. As explained further below, Plaintiff was not actually demoted; but even if he had been, he alleges that the official who demoted him was *Director Wray*, not the President. *See* Compl. ¶¶ 7, 105–09. Yet the Complaint contains no nonconclusory allegations that *Director Wray's* purported decision to demote Plaintiff was motivated by Plaintiff's perceived political affiliation.

alleged demotion to support two arguments: (1) the demotion constitutes a "free-standing adverse action" on which to base his First Amendment claim, and (2) because of his demotion, the Attorney General lacked authority to remove him from the FBI, and his removal thus violated substantive due process.  Both demotion-based claims should be dismissed.

A.   Plaintiff Lacks Standing to Pursue a First Amendment Claim Based on an Alleged Demotion

As to Plaintiff's First Amendment claim, Plaintiff has not demonstrated standing, i.e., that he has suffered any injury from a purported demotion that is redressable by this Court.  *See Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 937 (D.C. Cir. 2004).  "In determining standing, [the court] may consider materials outside of the complaint."  *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015); *see also* Fed. R. Civ. Pr. 12(b)(1).  As relief for his alleged demotion, Plaintiff seeks expungement of records documenting a demotion.  Compl. ¶ 194(c).  But Plaintiff's personnel documents reflect no demotion; instead, they reflect that he was the FBI's Deputy Director at the time he was removed.  Declaration of Lovely A. Carrier, Jan. 22, 2020 (attached); Standard Form 50, Notification of Personnel Action re: Andrew G. McCabe, March 16, 2018 (attached as Exhibit 1); Standard Form 52, Request for Personnel Action re: Andrew G. McCabe, March 16, 2018 (attached as Exhibit 2).   To the extent Plaintiff's claim rests on a formal demotion, then, he has suffered no redressable injury, as there is no record to expunge.   The claim must therefore be dismissed.

B.   Plaintiff's Demotion-Related Due Process Argument Should Be Rejected

Additionally, there is a straightforward Rule 12(b)(6) basis on which to reject Plaintiff's argument that his alleged demotion somehow stripped Attorney General Sessions of the legal authority to remove Plaintiff:  Plaintiff fails to plausibly allege that he was actually demoted.  Even Plaintiff's own counsel referred to him as the "FBI Deputy Director"— once expressly, Letter from Bromwich to Schools at 1 ("Resp. Letter") (March 16, 2018) (attached as Ex. 5 to MTD/SJ Mem.), and again implicitly, Mar. 15, 2018 Tr. of Hearing in the Matter of Andrew McCabe ("Oral Resp. Tr."), at 199:13–14 (attached as Ex. 3 to MTD/SJ Mem.).   And both the FBI and ADAG removal recommendations refer to Plaintiff as the Deputy Director.  FBI Rec. at 1; ADAG Rec. at 1.  Finally,

the Court may also take judicial notice of two Orders from the Attorney General confirming his Deputy Director status at the time he was removed; the Orders show that David Bowdich was serving as the Deputy Director only in an acting capacity—recall, Mr. McCabe was on extended leave— until after the date of McCabe's planned retirement.  Attorney General Order No. 4101-2018, Feb. 2, 2018 (attached as Exhibit 3); Attorney General Order No. 4112-2018, Feb. 14, 2018 (attached as Exhibit 4).  Plaintiff's assertion that Director Wray demoted him, notwithstanding the Attorney General's Orders, thus has no legs on which to stand.  To be sure, only the Attorney General or the Deputy Attorney General possess the authority to appoint, reassign, reinstate, or transfer key positions such as Deputy Director.  DOJ Order 1202, app'x p. 12, ECF No. 27-12.  But instead of demoting Plaintiff, the Attorney General expressly ordered that Plaintiff would remain the Deputy Director until the scheduled date of his departure from the FBI.  In light of all of this, Plaintiff cannot plausibly allege that he was actually demoted prior to his removal.

Plaintiff makes much of two cursory references to him as the "former" Deputy Director in the OIG Report—one in the Report's title and the other in its background section—but these two comments are insufficient to plausibly state a claim for demotion.  The OIG Report's purpose was to summarize the results of an investigation into Plaintiff's conduct, not to opine on what position he held at the time of its issuance.  The OIG's passing reference to Plaintiff's position had no bearing on its conclusions as to Plaintiff's conduct and create no dispute of material fact as to Plaintiff's employment status.

But none of this would matter in any event.  Even had Plaintiff been demoted from his Deputy Director role, Attorney General Sessions's removal decision would have been no less effective.  Plaintiff emphasizes that, through DOJ Order 1202, the Attorney General delegated his removal authority over non-key SES positions to the FBI Director.  DOJ Order 1202 at 14.  In his words, "Order 1202 did not empower Sessions to terminate Plaintiff," because he did not occupy a key SES position after his alleged demotion; therefore, he says, his removal was null and void.  Opp. at 32.  On one thing Plaintiff is correct:  DOJ Order 1202 itself did not "empower" the Attorney General to remove him.  Rather, the Attorney General's removal power derives from 28 U.S.C. § 509.  That

provision vests "all functions of agencies and employees of the Department of Justice in the Attorney General" and encompasses the power to appoint, remove, and supervise Department of Justice officers. *In re Grand Jury Investigation*, 916 F.3d 1047, 1049 (D.C. Cir. 2019). The Attorney General is also authorized to delegate "any function of the Attorney General" to another "officer, employee, or agency of the Department of Justice." 28 U.S.C. § 510. But the Attorney General is not stripped of his statutory power to carry out those functions by delegating them. Indeed, the Attorney General has authorized the Deputy Attorney General "to exercise all the power and authority of the Attorney General, unless any such power or authority is required by law to be exercised by the Attorney General personally." 28 C.F.R. § 0.15(a). Just as this regulation does not prohibit the Attorney General from continuing to exercise the vast array of functions he delegated to his Deputy, DOJ Order 1202 does not prohibit the Attorney General from exercising authority that he delegated to the head of the FBI. And because DOJ Order 1202 exists for purposes of internal agency management and is not "intended primarily to confer important procedural benefits upon" employees, *Am. Farm Lines v. Black Ball Freight Serv.,* 397 U.S. 532, 538 (1970), it offers Plaintiff no rights.

Finally, Plaintiff's argument fails under the Order's own terms. As Plaintiff himself alleges, he "remained a career FBI Senior Executive," even after his purported demotion. Compl. ¶ 153. And Plaintiff does not assert that he reported to anyone other than FBI Director Wray. So Plaintiff falls squarely within DOJ Order 1202's list of "[k]ey FBI SES positions," which includes "SES officials who report directly to the Director of the FBI." DOJ Order 1202 at 15. As a key FBI SES official, then, under the terms of DOJ Order 1202, he was removable by the Attorney General. *Id.* at 14–15. For all these reasons, to the extent Plaintiff's due process claims rests on the Attorney General's inability to remove Plaintiff because of his employment status, it must fail.

## III.   Plaintiff's First Amendment Claims Do Not Withstand Scrutiny

Plaintiff asserts in his opposition brief that his First Amendment claim rests on three separate alleged adverse actions: (1) a purported demotion on January 29, 2018; (2) his March 16, 2018 removal from the FBI; and (3) an allegedly rushed removal process. As already explained, to the extent Plaintiff's First Amendment claim rests on a demotion, it must be dismissed because he has alleged

no redressable injury. Additionally, any alleged deficiencies in the removal *process* is not the basis for a First Amendment claim based on his removal—process is the province of the Due Process Clause. Only Plaintiff's removal constitutes an adverse action that may form the basis of a First Amendment claim. And on that claim, Defendants are entitled to dismissal or summary judgment.

    A.    <u>The Procedures Leading up to Plaintiff's Removal Are Not A Free-standing Adverse Action Forming the Basis of a First Amendment Claim</u>

Plaintiff asserts that the "rushed process" used to remove him "constitutes a free-standing adverse action" giving rise to a First Amendment claim. Opp. at 26. Here, Plaintiff conflates the requirements of the First Amendment with the Fifth. The First Amendment is concerned with the reasons for his removal; the Fifth, with the process used to effectuate it. *Compare O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 714 (1996) ("Government officials may not discharge public employees for refusing to support a political party or its candidates, unless political affiliation is a reasonably appropriate requirement for the job in question."), *with Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("[A]fter finding the deprivation of a protected interest[, courts] look to see if the [government's] procedures comport with due process."). Not even Plaintiff is able to explain the basis for this claim without resorting back to his due process arguments. Opp. at 27 ("The proceedings unfolded haphazardly, also violating due process.").[4]

Plaintiff's cursory arguments in support of this purported independent claim reveal how incongruent it is with a true First Amendment retaliation claim. He attempts to make the decision making process out to be a separate adverse action by arguing that it caused the "loss of his immediate pension eligibility." *Id.* at 26. But it wasn't the decision making *process* that triggered the loss of his immediate pension eligibility; it was his ultimate *removal* that did. Considering an alternative outcome to the decision making process illustrates the point. Suppose the Attorney General had declined to follow ADAG Schools's recommendation to remove Plaintiff. Plaintiff would have retired on March

---

[4] The only cases Plaintiff cites stand for the proposition that an irregular process may be *evidence* that an adverse action was retaliatory, not that the process is itself the adverse action supporting an independent First Amendment claim. *See Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 n.3 (D.C. Cir. 2008); *Farris v. Clinton*, 602 F. Supp. 2d 74, 87 (D.D.C. 2009).

17 as the Deputy Director and would have received all the retirement benefits for which his service had qualified him. So he would have no First Amendment claim, no matter how rushed he perceived the decision making process to be. That the process yielded a different outcome in this case does not make it a separately actionable adverse action under the First Amendment. Plaintiff's attempt to dress up this due process claim in First Amendment language is unavailing. Plaintiff's process-based First Amendment claim should be dismissed.

> ### B.   Plaintiff's First Amendment Claim Fails Because He Was Removed for Misconduct

As Defendants' opening brief explains, the separate written opinions of the OIG, Assistant Director Will, and ADAG Schools were detailed in their factual recitations and precise in their conclusions. While they differed slightly on the number of occasions in which they determined that Plaintiff lacked candor, *see* OIG Rpt. 2; FBI Rec. 14–15; ADAG Rec. 1–6, as to the central issues they spoke with unanimity: Plaintiff lacked candor (both under oath and not under oath) in violation of the FBI's Offense Codes and authorized the disclosure of an ongoing investigation in violation of the FBI's Policy on Media Relations. Assistant Director Will and ADAG Schools were both clear about what they believed to be the proper consequence for Plaintiff's actions: Removal from his position as the "second highest-ranking official"—the Deputy Director—"of the FBI." ADAG Rec. 6; FBI Rec. 15. As Assistant Director Will put it, the integrity of the entire institution was at stake. FBI Rec. 17. Because he was the Deputy Director, she explained, Plaintiff was "expected to comport himself with the utmost integrity." *Id.* Despite that, as Assistant Director Will concluded, "McCabe repeatedly lacked candor" and thus acted inconsistently "with the FBI's Core Values." *Id.* ADAG Schools echoed Assistant Director Will's concerns, adding in his recommendation to the Attorney General that "[t]he substantiated findings of lack of candor under oath are compounded by the finding of lack of candor not under oath, and the unauthorized disclosure finding." ADAG Rec. 6. "For these reasons and having considered the Douglas factors," ADAG Schools recommended that the Attorney General "concur in [Assistant Director Will's] proposal that Mr. McCabe be dismissed from the FBI." *Id.* The Attorney General followed these recommendations and removed Plaintiff. *Id.*

In sum, these documents show that, regardless of what the Attorney General may have believed about Plaintiff's political affiliation, the decision to remove him was due to the lack-of-candor and unauthorized-disclosure findings of an independent investigative entity and two high-ranking career officials. *See Williams v. Johnson*, 701 F. Supp. 2d 1, 18 (D.D.C. 2010). Plaintiff cannot show that his perceived political association "was a substantial or motivating factor behind his removal." *Clark v. Library of Cong.*, 750 F.2d 89, 101–02 (D.C. Cir. 1984) (quotation marks omitted). And he cannot overcome the import of the documented findings against him—because, as Assistant Director Will explained, "lacking candor under oath results in dismissal," FBI Rec. 17, then-Attorney General Sessions "would have reached the same decision" no matter what Plaintiff's perceived political affiliation. *See, e.g., Wilburn v. Robinson*, 480 F.3d 1140, 1149 (D.C. Cir. 2007).

In challenging the former Attorney General's legitimate reasons for his dismissal, it is not enough for Plaintiff to dispute "the correctness or desirability of the reasons offered" for his removal "absent demonstrably discriminatory motive." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996), *as amended on denial of reh'g* (July 15, 1996) (citations omitted). Liability, in other words, cannot rest on a "determination that an employer misjudged" the facts underlying the decision adverse to the employee. *Id.* Instead, the only issue is whether the employer articulates a legitimate explanation for its action that it "honestly believes." *Id.*

When it comes to showing that former Attorney General Sessions acted from a discriminatory or retaliatory motive, Plaintiff is empty-handed. So his Complaint falls back on allegations about statements made by the President.[5] *E.g.*, Compl. ¶¶ 5, 46, 53–57, 67–69, 71, 72, 74, 76, 78, 83–85, 90, 93–95, 101, 102, 104, 133–147. But the President didn't remove Plaintiff; then-Attorney General Sessions did. The President's public statements do not speak to the Attorney General's motivations. Nor do Plaintiff's conclusory allegations about the supposed hidden motives lurking behind the

---

[5] Plaintiff's invocation of the "cat's paw" theory of liability from the employment discrimination context makes the President's statements no more relevant here. As a threshold matter, this Court should not extend that doctrine to a Cabinet Secretary acting under an oath to uphold the Constitution and entitled to the presumption of regularity. In any event, Plaintiff fails even to state a claim that the President's statements were an intended and proximate cause of the former Attorney General's decision. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011).

thorough written opinions and recommendations of Assistant Director Will and ADAG Schools, Opp. to Defs.' SMF Nos. 18, 20, 21, 43, 45, 47, ECF Nos. 27-30, implicate anything about Attorney General Sessions's decision. Such conjecture as to two long-tenured career officials does not suffice to state a claim, let alone survive summary judgment. *Iqbal*, 556 U.S. at 680–81; *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993).

The same goes for Plaintiff's suggestion that the OIG Report itself was tainted by the "corrupting influence" of the President and the Attorney General. Opp. 25–26 & n.12. Plaintiff contends that the IG initiated and accelerated the investigation into Plaintiff's lack of candor, and produced an inaccurate report, out of the IG's fear that the President would remove him from his position. Opp. 25. His argument on this point hinges on the President's general removal power over the IG and a single Tweet that the IG was "late with reports on Comey etc." Pl.'s Ex. 4, line 15, ECF No. 27-5. Yet Plaintiff's conclusory assertion that the President's removal power had a "corrupting influence" over the IG and the OIG as a whole is insufficient to overcome the "presumption of regularity" that attaches to all federal officials' actions. *United States v. Chem. Found.*, 272 U.S. 1, 14 (1926). That presumption carries particular weight as applied to the OIG, the whole purpose of which is to act as an "independent and objective unit[]" to conduct "investigations." 5 U.S.C. App. 3 § 2. A single Tweet by a non-OIG official does not plausibly overcome that presumption. Plaintiff fails to cast doubt on the "obvious alternative explanation," *Iqbal*, 556 U.S. at 682 (citation omitted), for the initiation of the OIG investigation and the timing of its completion: the investigation was initiated because the FBI referred to the OIG its concerns over Plaintiff's lack of candor, OIG Rpt. 15, and the nature of these concerns about the Bureau's second-in-command made the Report's completion all the more urgent.

What is more, Plaintiff admits that the timing of his disciplinary proceedings and when to remove him was up to Defendants' discretion. Opp. 27. Plaintiff's assertion that other officials, occupying lesser positions, in other agencies, may have retired before the conclusion of their disciplinary proceedings, *see* Pl.'s Counterstatement of Material Fact No. 4, ECF No. 27-30, does not make it any more plausible that former Attorney General Sessions's exercise of that discretion was

politically motivated here. *Breiterman v. U.S. Capitol Police*, 324 F.R.D. 24, 31–32 (D.D.C. 2018) (stating that to demonstrate an employee was treated more harshly than another, the comparator evidence "must involve misconduct similar to, or of a comparable seriousness as, [Plaintiff's] alleged misconduct").   Indeed, as Assistant Director Will and ADAG Schools both stressed in their recommendations, the "standard penalty for lack of candor under oath is dismissal," ADAG Rec. 6, and the importance and prominence of Plaintiff's Deputy Director role underlined the seriousness of the lack-of-candor findings here.  Dismissal was the unremarkable consequence of those findings.

Equally groundless is Plaintiff's accusation that "Defendants" hurriedly "bypassed the FBI General Counsel altogether in order to consult the Office of Legal Counsel ("OLC") . . . about 'FBI SES policies.'"  Opp. 24.  That the Attorney General's Office consulted with OLC about Plaintiff's removal does not evince any political motive on the part of Attorney General Sessions.  It is the OLC's responsibility to "provide[] legal advice to . . . all executive agencies" and to "review[] all proposed orders of the Attorney General."  https://www.justice.gov/olc; *see also* 28 C.F.R. § 0.25(d).  The consultation between these offices was, therefore, routine.  The consultation does not plausibly support a claim of political bias on the part of Attorney General Sessions.

Nor does the timeline of events in this case make a politically motivated removal any more plausible.  In some cases, where an adverse action occurs soon after an employee's exercise of protected activity, a causal relationship between the two may be inferred.  *Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012).  Not here.  If timing demonstrates anything in this case, it's that the serious lack-of-candor and unauthorized-disclosure determinations precipitated Plaintiff's removal.  Plaintiff was removed by the Attorney General within a month of the release of the OIG Report.  Compl. ¶¶ 110–27.  Within that month, Assistant Director Will and ADAG Schools conducted their own review of the Report's findings—with ADAG Schools holding a hearing and considering Plaintiff's oral and written responses.  *Id.* ¶¶ 115–26.  At the end of their independent reviews, both of these high-ranking career officials recommended removal.  *Id.* ¶¶ 115, 126.  The Attorney General removed Plaintiff immediately after receiving ADAG Schools' recommendation.

*Id.* ¶ 126–27.  The timeline of events here thus draws a clear path from the OIG Report, to the two-part review by career officials, to Plaintiff's removal by the Attorney General.

Plaintiff confuses this timeline by pointing to sporadic public statements made by the President over the course of several years.  *See* Opp. at 22–23.  But again, those statements are irrelevant, as the President had no say in the decision to remove Plaintiff.  And in any event, none of the President's statements—or any other allegations, for that matter—plausibly support the coordinated decision making that Plaintiff alleges occurred here:  that the FBI's Inspection Division referred the investigation to OIG, that OIG found Plaintiff lacked candor and made an unauthorized disclosure, that Assistant Director Will and ADAG Schools recommended Plaintiff's removal, and that former Attorney General Sessions removed Plaintiff immediately after receiving ADAG Schools's recommendation, all because one non-decision maker believed that Plaintiff was a Democrat.

In sum, Plaintiff's First Amendment claims fail as a matter of law:  No amount of discovery will cure the fundamental flaws in Plaintiff's allegations that his removal was motivated by anything other than the lack-of-candor and unauthorized-disclosure findings.

## IV.    Plaintiff's Due Process Claims Fail

In his opposition brief, Plaintiff asserts that his Complaint raises both substantive and procedural due process claims.  The Complaint never uses the term "substantive due process."  Nor are related terms like "arbitrary" or "shock the conscience" used.  Given that substantive due process is, at a literal level, a contradiction in terms, akin to "green pastel redness," John Hart Ely, *Democracy and Distrust: A Theory of Judicial Review* 18 (1980), something more than what Plaintiff provided in the Complaint should be necessary to preserve a substantive due process claim, lest the Complaint become something like a Rorschach test in which Plaintiff identifies new claims depending on his needs.  No matter:  neither kind of due process claim is viable.  The recently identified substantive due process claims fail primarily for lack of a protected property interest and any conscience-shocking government conduct, though one strain of the substantive due process claims also is trumped by Plaintiff's overlapping (albeit unsuccessful) First Amendment claim.  And Plaintiff's procedural due process

claims fail for a variety of reasons as well, including that the property-based claims lack a protected property interest and that Plaintiff was provided adequate notice and a sufficient opportunity to be heard. Accordingly, the Court should either dismiss Plaintiff's due process claims or enter judgment in Defendants' favor.

A.    Plaintiff's Substantive Due Process Claims Lack Merit

Mr. McCabe contends that Defendants violated his substantive due process rights by depriving him of (i) employment in the FBI up to his retirement date and (ii) the immediate pension available to federal law enforcement officers, for which his services qualified him. Opp. at 35-36, 42. With respect to his employment, he alleges that Defendants acted arbitrarily, and with respect to his pension, he contends that the Defendants acted both arbitrarily and out of political animus. *Id.* These claims lack merit.

To establish a substantive due process claim in the context of executive action, as opposed to legislative action, a plaintiff must show, so far as is relevant here, that there is a (1) significant, protected property interest, and (2) conscience-shocking executive action. *Said v. Nat'l R.R. Passenger Corp.*, 317 F. Supp. 3d 304, 341 (D.D.C. 2018), *amended on reconsideration*, 390 F. Supp. 3d 46 (D.D.C. 2019). Only significant property rights are protected under the substantive due process doctrine because, "[a]s a general matter, the Court has [ ] been reluctant to expand the concept of substantive due process," given that "the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992). Indeed, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994). The D.C. Circuit has recognized that an act of "grave unfairness," such as "a deliberate flouting of the law that trammels significant personal or property rights," may violate the right to "substantive" due process under the Fifth Amendment. *See, e.g., Tri Cty. Indus., Inc. v. District of Columbia*, 104 F.3d 455, 459 (D.C. Cir. 1997). But, to violate substantive due process, this act of "grave unfairness," like any other executive action, "must be so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Estate of Phillips v. District of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2006).

A substantive due process claim is not available "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Instead, "that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.*

      1.    <u>Plaintiff Lacks a Protected Property Interest</u>

Plaintiff argues that he has protected property interests in immediate payments of both the retirement annuity for retired law-enforcement officers and in continued employment at the FBI. Opp. at 29, 37-38. Plaintiff is incorrect on both counts for at least two reasons.

<u>First</u>, even if Plaintiff had an entitlement to continued employment at the FBI and the annuity, those property interests could not support his substantive due process claims because they are not the sort of fundamental property interests protected by the doctrine: numerous courts have held, or stated in dicta, that the substantive due process doctrine does not protect property interests in public employment. *Am. Fed'n of Gov't Emps., AFL-CIO v. United States*, 330 F.3d 513, 523 (D.C. Cir. 2003); *Said v. Nat'l R.R. Passenger Corp.*, 317 F. Supp. 3d 304, 340–41 (D.D.C. 2018), *amended on reconsideration*, 390 F. Supp. 3d 46 (D.D.C. 2019); *Am. Fed'n of Gov't Emps., Local 2741 v. District of Columbia*, 689 F. Supp. 2d 30, 36 (D.D.C. 2009); *McManus v. District of Columbia*, 530 F.Supp.2d 46, 71 (D.D.C. 2007); *Winder v. Erste*, 511 F. Supp. 2d 160, 182–83 (D.D.C. 2007), *aff'd in part, rev'd in part and remanded*, 566 F.3d 209 (D.C. Cir. 2009); *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000) (Alito, J.) (holding that "when a plaintiff challenges a non-legislative state action (such as an adverse employment decision), we must look, as a threshold matter, to whether the property interest being deprived is 'fundamental' under the Constitution," and concluding plaintiff's "tenured public employment" was not "a fundamental property interest entitled to substantive due process protection"). Tellingly, Plaintiff cites no cases to the contrary. And if the substantive due process doctrine does not protect property interests in employment, then, by extension, it does not protect property interests in the benefits of employment, such as employment-related retirement benefits.

Second, even if a property interest in employment or a retirement annuity can be protected by the substantive due process doctrine, Plaintiff's substantive due process claims fail because he has no protected property interest in either.  MTD/SJ Mem. at 15-17.

       a.   Plaintiff Has No Property Interest in Continued Employment at the FBI

Plaintiff argues that he has a property interest in his employment with the FBI because: (1) the FBI's SES Policy created for-cause removal protections, and (2) the SES Policy created a "limited property interest" in 30 days of employment from the notice of proposed removal.  Opp. at 37-39. The SES Policy states that "[a] career appointee may be removed from the SES for *a variety* of reasons, *including* less than fully successful performance, misconduct, conditions arising before appointment, and reduction in force (RIF)."  FBI SES Policy at 13 (emphasis added).   It also states that "[a]ction *may* be taken against a member of the SES for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function."  *Id.* at 16 (emphasis added).

An employee has a property interest in a government job only if, under the law, "he did not serve in his job at his employer's 'will,' but he could be removed only 'for cause.'" *Thompson v. Dist. of Columbia*, 530 F.3d 914, 918 (D.C. Cir. 2008) (citation omitted).  The D.C. Circuit has noted that "our attention has yet to be called to any case where a court has held that a government employee has a protected property interest in employment where language qualifying discharge for 'cause' or for comparable reasons, is not present."  *Garrow v. Gramm*, 856 F.2d 203, 206–07 (D.C. Cir. 1988). Moreover, "to create a protected property interest, regulations must limit discretion by 'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow."  *Bloch v. Powell*, 348 F.3d 1060, 1069 (D.C. Cir. 2003) (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989)).  Put otherwise, a "claim of entitlement is not viable when a government agency wields significant or unfettered discretion in determining whether to award or rescind a particular benefit." *Crooks v. Mabus*, 845 F.3d 412, 419 (D.C. Cir. 2016) (quotation marks omitted).  Finally, handbooks, regulations, or policies that use permissive language when discussing potential grounds for dismissal do not limit the bases on

18

which an employer may remove an employee and, thus, do not create a property interest in continued employment. *Flaningam v. Cty. of Winnebago*, 243 F. App'x 171, 173–74 (7th Cir. 2007); *see also Daney v. Dep't of the Interior*, 25 F. App'x 994, 996 (Fed. Cir. 2001).

The FBI SES Policy does not establish for-cause removal protections from the SES, or the FBI. The SES Policy does not have "explicitly mandatory language," *Bloch*, 348 F.3d at 1069 (quotation marks omitted), stating that removal may only be for cause or is otherwise limited to specific bases. Instead, the SES policy contains permissive language (such as "may"), which suggests that the Policy illustrates the bases on which the FBI may base a removal decision, but does not exhaust the grounds on which the FBI may remove an SES employee. *See* FBI SES Policy at 13, 16, 17. In short, the FBI retains significant discretion to remove SES employees in the best interest of the Bureau. *Id.* at 13 ("[a] career appointee may be removed from the SES for a *variety* of reasons, *including* less than fully successful performance, misconduct, conditions arising before appointment, and reduction in force (RIF)" (emphasis added)). That the FBI retains such discretion scotches Plaintiff's claim that he enjoyed for-cause removal protections creating a protected property interest in employment at the FBI. *See Crooks*, 845 F.3d at 419; *Flaningam*, 243 F. App'x at 173–74.

Plaintiff attempts to bolster his argument that he had for-cause removal protections by touting the similarity of the FBI SES Policy to 5 U.S.C. § 7543, which lists the bases on which agencies covered by that statute may remove career SES employees. Plaintiff admits that § 7543 does not apply to the FBI. Opp. at 39. But he argues that, in creating the FBI SES Policy, the bureau "largely [ ] cop[ied] the statutory text of § 7543." *Id.* The use of the word "largely" obscures a key distinction between the language of § 7543 and the FBI's SES Policy. Section 7543 states that "[a]n agency may take an action covered by this subchapter against an employee *only* for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." (emphasis added). Crucially, however, the FBI's SES Policy omits the word "only" in its adaptation of this language. FBI SES Policy at 16. And the omission of the word "only"—especially in conjunction with other discretionary language in the Policy, *see id.* at 13—endows the FBI with a level of discretion absent from § 7543, torpedoing any claims of for-cause protection. *Cf. Donnelly v.*

19

*F.A.A.*, 411 F.3d 267, 271 (D.C. Cir. 2005) ("[Courts] must strive to interpret a statute to give meaning to every clause and word[.]").  This difference makes sense in the context of the larger legal regime that governs employment at the FBI.  As a general matter, most FBI employees (including Plaintiff) are exempted from the Civil Service Reform Act's for-cause removal protections, as explained in the opening brief.  MTD/SJ Mem. at 10-14.  It is logical for the same at-will structure to apply to the FBI's SES employees, allowing the Bureau the necessary flexibility to manage its workforce.

Plaintiff's argument that he had a "limited property right" in his continued employment for 30 days after notice of proposed removal fares no better.  Opp. at 38.  The gist of the argument is that the FBI's SES policy entitled him to 30 days' notice prior to removal, and so entitled him to 30 days' employment after notice.  Even if the SES policy gave him a right to the 30-day notice procedure—it did not, as discussed below—that fact would not afford Plaintiff any entitlement to continued employment.  The SES policy, by "merely conditioning an employee's removal on compliance with certain specified procedures," "grant[s] no right to continued employment."  *Bishop v. Wood*, 426 U.S. 341, 347 (1976); *Cobb v. City of Harahan*, 516 F. App'x 337, 340–41 (5th Cir. 2013).  As the D.C. Circuit has put it more generally, the "provision of procedural safeguards cannot in itself create a property interest for purposes of due process analysis."  *Griffith v. FLRA*, 842 F.2d 487, 495 (D.C. Cir. 1988).  This conclusion is consistent with the Supreme Court's admonition that "[t]he categories of substance and procedure are distinct.  Were the rule otherwise, the Clause would be reduced to a mere tautology.  'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

The cases cited by Plaintiff are inapplicable, as all involved employment arrangements materially different from Plaintiff's.  *See* Opp. at 38 n.21.  *Cage v. Harper* involved regulations that provided not only procedural protections, but an entitlement to "[an] additional term of employment" of 12 months after the provision of a notice of dismissal without cause.  *Cage v. Harper*, No. 17-CV-07621, 2018 WL 4144624, at *4 (N.D. Ill. Aug. 30, 2018).  The FBI SES Policy has no similar guarantee of an "additional term of employment."  As for *Kelly v. Indep. Sch. Dist. No. 12 of Oklahoma Cty.*, Oklahoma, 80 F. App'x 36, 40 (10th Cir. 2003), and *FDIC v. Henderson*, 940 F.2d 465, 476 (9th

Cir.1991), they involved employment contracts with notice provisions *and* for-cause removal protections, which precluded removal except "for cause" during the notice periods. The FBI SES Policy has no similar for-cause removal protections. Finally, *Mozier v. Bd. of Ed. of Cherry Hill Twp., Camden Cty.*, 450 F. Supp. 742, 748 (D.N.J. 1977), did not hold that a notice provision afforded the plaintiff an entitlement to a term of employment; it simply concluded that the employer had provided the notice required by the contract.

In any case, Plaintiff did not have an entitlement to 30-days' notice, so he could not have an entitlement to 30 days' additional employment. The FBI SES Policy provides that "if there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment can be imposed, the advance notice may be curtailed to as little as seven days." SES Policy at 16. A months' long OIG investigation culminating in a 35-page report concluded that, among other things, Mr. McCabe lacked candor under oath. *See, e.g.,* OIG Rpt. at 2. More specifically, OIG recounted how Mr. McCabe had falsely testified under oath on multiple occasions, and that his innocent explanations for his repeated misstatements were belied by the facts. *Id.* at 29-32. Providing knowingly false testimony under oath can be a crime. *See, e.g.,* 18 U.S.C. § 1001; 18 U.S.C. § 1621. Accordingly, prior to Mr. McCabe's removal, OIG referred the matter to the U.S. Attorney's Office for the District of Columbia for further investigation. See Declaration of Stephen F. Lyons at 2, *Citizens for Responsibility and Ethics in Washington v. U.S. Department of Justice*, No 1:18-cv-1766 (D.D.C. Mar. 26, 2019), ECF No. 27; *see also* 28 C.F.R. § 0.29e(b) ("OIG investigations that result in findings of potential criminal misconduct or civil liability are referred to the appropriate prosecutorial or litigative office."). Thus, the Department had reasonable cause to believe that Plaintiff had committed a crime for which a sentence of imprisonment could be imposed and, by extension, for reducing the notice period to less than 30 days.

Plaintiff disputes the propriety of Defendants' invocation of the crime exception, but his arguments lack merit. He argues that Defendants could not invoke the crime exception based on the OIG's investigation because it is an administrative proceeding, not a criminal proceeding. But providing false testimony under oath is a potential criminal violation, not merely an administrative

misstep.  S*ee, e.g.*, 18 U.S.C. § 1001; 18 U.S.C. § 1621; *see also Stern v. F.B.I.,* 737 F.2d 84, 89 (D.C. Cir. 1984) (concluding, in context of FOIA, that "[b]y focusing on specific and potentially unlawful activity by particular employees, the investigation went beyond general monitoring of agency activities," and constituted a law-enforcement investigation).  He also argues that Defendants never invoked the crime exception.  But the provision was satisfied, and it includes no requirement that it be specifically cited in the notice of proposed removal.

In short, Plaintiff lacked any property interest in continued employment with the FBI.

b.   Plaintiff Lacks a Property Interest in the Law-Enforcement Officer Retirement
     Annuity

Defendants explained in the opening brief that Plaintiff has no property interest in the immediately available law-enforcement officer annuity because he did not meet the requirements to establish an entitlement to the annuity:  He was not employed as a law enforcement officer "after becoming 50 years of age and completing 20 years of service."  5 U.S.C. § 8412(d)(2).  MTD/SJ Mem. at 16.

Plaintiff disagrees.  He argues that there is a question of fact about whether former Attorney General Sessions actually removed Plaintiff on March 16, because (1) Plaintiff finished his "tour of duty" at 5 p.m. on Friday, March 16, 2018, several hours before Attorney General Sessions removed him, and therefore should be deemed as employed for the full pay period ending on Plaintiff's retirement date; and (2) then-Attorney General Sessions lacked the authority to remove him because Plaintiff was no longer in a position over which the Attorney General had sole removal authority under DOJ Order 1202, and because the Attorney General was recused from the matter.  Opp. at 29-33.   Plaintiff is wrong.  Not only do these arguments raise questions of law rather than fact, but they should be resolved in Defendants' favor.

Plaintiff's tour of duty argument is flawed:  An FBI Agent's day does not stop at 5 p.m., even on a Friday.  (Plaintiff started as a Special Agent and remained one throughout his career.)  The FBI's Special Agent Hiring Policy Guide states, in a section entitled "Willingness to Work an Average of Ten Hours a Day, Irregular Shifts, Nights, Weekends, Holidays, and Other Unscheduled Duty," that

"[a]pplicants must be advised that [Special Agents] are expected to be available for duty at all times, based upon the needs of the FBI." *Id.* at § 4.1.2.9 (attached as Exhibit 5). Similarly, in a document on the FBI's Website entitled "Federal Bureau of Investigation, Special Agent Selection Process, All You Need to Know to Apply," the Bureau states that "FBI Special Agents must . . . [w]ork a minimum of 50 hours a week, which may include irregular hours, and be on call 24/7, including holidays and weekends." *Id.* at 3 (available at https://www.fbijobs.gov/sites/default/files/how-to-apply.pdf). This requirement makes sense, given that federal crimes and threats to national security do not clock out at 5 p.m. Plaintiff's argument to the contrary is premised largely on the fact that the FBI gave him credit for accrued leave as if he had fully completed his last pay period. Opp. at 30-32. But the leave accrual statute, 5 U.S.C. § 6302(b), which states that leave hours are awarded based on completion of the "basic administrative workweek," is focused solely on leave accrual, and so does not establish a general rule for work hours at the FBI. *Id.* ("*For the purpose of this subchapter* [addressing annual and sick leave,] an employee is deemed employed for a full biweekly pay period if he is employed during the days within that period . . . which fall within his basic administrative workweek.") (emphasis added).

Plaintiff's argument that former Attorney General Sessions lacked the authority to remove him is also unavailing. First, Plaintiff has not plausibly alleged that he was actually demoted from the Deputy Director position prior to his removal. *See* pp. 9-10 above, SJ/MTD Mem. at 19 n.9. And in any case, the Attorney General has the authority to remove both FBI officials who report directly to the FBI Director, as well as lower level officials, even if he shares some of that authority with others. *See* pp. 10-11 above.

Second, former Attorney General Sessions did not lack authority to remove Plaintiff as the result of a recusal. Former Attorney General Sessions recused himself from "any existing or future investigations of any matters related in any way to the campaigns for President of the United States." U.S. Dep't of Justice, Statement on Testimony of Former FBI Director James Comey, June 8, 2017 (https://www.justice.gov/opa/pr/department-justice-issues-statement-testimony-former-fbi-director-james-comey). But that recusal did not preclude former Attorney General Sessions from

23

tending to his obligation to run the Department, including the FBI.  He explained this in his prepared remarks to the Senate with regard to his role in the removal of former FBI Director Comey:  "The scope of my recusal, however, does not and cannot interfere with my ability to oversee the Department of Justice, including the FBI, which has an $8 billion budget and 35,000 employees."   Hearing Transcript, June 13, 2017, Senate Select Committee on Intelligence, at 11.  And, when asked by Senator Susan Collins "why . . . [he] believe[d] that [his] recommendation to fire Director Comey was not inconsistent with [his] March 2nd recusal," *id.* at 28, then-Attorney General Sessions further explained:

> The recusal involved one case involved in the Department of Justice and in the FBI.  They conduct thousands of investigations.  I'm the Attorney General of the United States.  It's my responsibility to our Judiciary Committee and other committees to ensure that Department is run properly.  I have to make difficult decisions, and I do not believe that it is a sound position to say that if you're recused for a single case involving any one of the great agencies, like DEA or U.S. Marshals or ATF that are part of the Department of Justice, you can't make a decision about the leadership in that agency.

*Id.*  Thus, former Attorney General Sessions did not recuse himself from resolving the question of whether the Deputy Director of the FBI should be removed from the Bureau for, among other things, lack of candor under oath.  And Plaintiff has no basis for arguing that the former Attorney General misunderstood the scope of his own recusal.  *Cf. Izaak Walton League of Am. v. Johnson*, 400 F. Supp. 2d 38, 43 (D.D.C. 2005) ("[A]n agency is in the best position to interpret its actions.").  That said, Plaintiff does not argue that Sessions was required to be recused, but simply that he was recused. Opp. at 34.  So, even if one rejected the Attorney General's interpretation of his own (for purposes of this matter, voluntary) recusal, his decision to remove McCabe would be an implicit partial rescission of that recusal, because, as there was no requirement for a recusal from this matter, former Attorney General Sessions had the power to act.  *See In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 628 (D.D.C. 2018), *aff'd*, 916 F.3d 1047 (D.C. Cir. 2019) (noting, in a different context, that "'like Ulysses binding himself to the mast,' *Sveen v. Melin*, —— U.S. ——, 138 S.Ct. 1815, 1823, —— L.Ed.2d

24

—— (2018), the Attorney General voluntarily has limited his power—but unlike Ulysses, the Attorney General can unbind himself at will").

Accordingly, Plaintiff lacks a property interest in the annuity he seeks.

2.   <u>Defendants Did Not Engage in Conduct that Shocks the Conscience</u>

Plaintiff's substantive due process claims fail not only for lack of a sufficient property interest, but also for lack of any actions that legally constitute a substantive due process violation.  As noted earlier, "in a [substantive] due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Rosales-Mireles v. United States*, —— U.S. ——, 138 S. Ct. 1897, 1906 (2018).  Defendants took no conscience-shocking action.

Plaintiff alleges that Defendants violated his substantive due process rights in several ways. First, he contends that Defendants "arbitrarily deprived Plaintiff of his pension in violation of substantive due process, by improperly recording his FBI separation date as March 16, 2018 and causing that erroneous date to be transmitted to the Office." Opp. at 35.  Second, he contends that "[t]he factfinder could also conclude, from the evidence explicitly linking Plaintiff's retirement benefits to Trump's vendetta against him . . . that Defendants' actions were intended to injure or to spite Plaintiff." *Id.* at 36.  And finally, he contends that Defendants "did not invoke [the crime-exception to the 30-day notice provision], so by supposedly terminating Plaintiff on fewer than 30 days' advanced written notice, Defendants exceeded the statutory restrictions on their removal discretion, deprived Plaintiff of his property interest in 30 days' continued employment, and thereby violated his substantive due process right to be free from arbitrary, ultra vires action." *Id.* at 42.

Each of these arguments fails.  "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Lewis*, 523 U.S. at 846.  Mere violations of law do not suffice. *Am. Fed. of Gov't Employees, AFL–CIO, Local 446 v. Nicholson*, 475 F.3d 341, 353 (D.C. Cir. 2007).  Thus, even if Defendants improperly recorded Plaintiff's separation date and sent that date to another government office, or failed to properly invoke a procedural provision for limiting notice of removal—they did neither—their conduct would not satisfy the standard set by cases involving

conduct like forced stomach pumping, *Rochin*, 342 U.S. at 172, and "grossly excessive corporal punishment," *Garcia ex rel. Garcia v. Miera*, 817 F.2d 650, 656 (10th Cir.1987).  Indeed, in a recent case, a court in this district (Walton, J.) held that "plaintiff's assertion that the 'defendant intentionally planned and orchestrated her termination in a manner that was deliberately intended to ensure that she had no opportunity to defend herself, or to go through the [collective bargaining agreement] process with her Union, . . .  while troubling if true, is simply not sufficient to satisfy the exceedingly high standard required to show a substantive due process violation." *Said v. Nat'l R.R. Passenger Corp.*, 317 F. Supp. 3d 304, 340–41 (D.D.C. 2018), *amended on reconsideration*, 390 F. Supp. 3d 46 (D.D.C. 2019); *see also Fraternal Order of Police Dep't of Corr. Labor Comm. v. Williams*, 375 F.3d 1141, 1144–47 (D.C. Cir. 2004) (rejecting substantive due process claim of union of correctional officers, who said that the District of Columbia's actions in employment context endangered physical safety of correctional officers, for lack of conscience-shocking action).  Defendants' alleged employment-related conduct here, like Amtrak's alleged conduct in the *Said* case, does not shock the contemporary conscience.  And Plaintiff, who provides no discussion of this element of his claim, certainly provides no basis for the Court to conclude otherwise.  Another statement by this Court well summarizes the state of affairs:  "Plaintiff's allegations in this case assert violations of the law, but they do not shock the conscience.  Defendants conducted an investigation of Plaintiff, and terminated Plaintiff based on the investigation's findings.  Defendants' Motion for Summary Judgment on Plaintiff's substantive due process claim [should] be granted." *Owens v. District of Columbia*, 875 F. Supp. 2d 75, 84 (D.D.C. 2012), *on reconsideration in part*, 923 F. Supp. 2d 241 (D.D.C. 2013), *aff'd*, 606 F. App'x 585 (D.C. Cir. 2015).

Plaintiff's first and third arguments fail, as explained above, and Plaintiff's second argument— that he was fired for political reasons, *see* Opp. at 22-24, 36—also falters as a legal matter.  "The more generalized notion of substantive due process" is not available when there is another more specific source of constitutional protection. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994)); *Winder v. Erste*, 511 F. Supp. 2d 160, 183 (D.D.C. 2007), *aff'd in part, rev'd in part and remanded*, 566 F.3d 209 (D.C. Cir. 2009). The First Amendment provides a more specific source of constitutional protection for claims of

political retribution by government employees, *see Elrod v. Burns*, 427 U.S. 347, 360 (1976), and thus forecloses Plaintiff's substantive due process claims. *See Albright*, 510 U.S. at 273; *Winder*, 511 F. Supp. 2d at 183.

B.    Plaintiff's Procedural Due Process Claims Are Flawed

Defendants explained in the opening brief that Plaintiff's procedural due process claims should be rejected because, among other things, Plaintiff lacks a protected property interest and was afforded adequate notice and an opportunity to be heard.  MTD/SJ Mem. at 15-17, 23-26.  Plaintiff disagrees, but his arguments are unpersuasive.  Crucially, Plaintiff states that he "does not allege bias" on behalf of the former Attorney General, so he has abandoned any procedural due process claims based on claims of bias against former Attorney General Sessions.  Rather, Plaintiff bases his procedural due process claims on the alleged improper deprivation of his supposed property rights in a law-enforcement annuity and employment with the FBI.  Opp. at 36, 43-45.  He also grounds his due process claims in an alleged deprivation of his liberty interest in his reputation.  *See, e.g.*, Compl. ¶ 169.  Mr. McCabe argues that the government's procedures did not comport with due process because they resulted in an erroneous deprivation of his annuity, Opp. at 36, and that he was deprived of his property interest in continued employment because the substance of the notice and the amount of time provided were constitutionally deficient, *id.* at 43-45.

"The first inquiry in every [procedural] due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'  Only after finding the deprivation of a protected interest do [courts] look to see if the [government's] procedures comport with due process."  *Sullivan*, 526 U.S. at 59 (citation omitted).  As explained already, Plaintiff has no protected property interest in a law enforcement annuity or employment with the FBI.  *See* pp. 19-26 above; MTD/SJ Mem. at 15-17.  Thus, his property-based procedural due process claims fail.

Mr. McCabe's claim that the deprivation of his law-enforcement annuity violated procedural due process because the deprivation was erroneous is also flawed.  Opp. at 36.  Plaintiff has no entitlement to the special law-enforcement annuity, as previously discussed, but even if he did, his argument would come up short.  The procedural component of the Due Process Clause "does not

protect any particular outcome; instead, it merely ensures that the procedures that led to such outcome are fair." *Nat'l Collegiate Preparatory v. D.C. Charter Sch. Bd.*, No. CV 19-1785 (JEB), 2019 WL 7344826, at *3 (D.D.C. Dec. 11, 2019).   As the Supreme Court stated almost 40 years ago, "[i]t must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284 n.9 (1980); *see also Bishop v. Wood*, 426 U.S. 341, 350 (1976).   Thus, Plaintiff's argument, which depends on an illogical extrapolation from outcome to procedure, contradicts Supreme Court precedent, and should be rejected.

In any case, the Court should reject all of Plaintiff's procedural due process claims, including those based on liberty interests, because the substance of the notice and the time afforded to respond to it were constitutionally sufficient.   "Notice under the Due Process Clause must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of' an action that might terminate the parties' liberty or property interests." *Parker v. District of Columbia*, 293 F. Supp. 3d 194, 206–07 (D.D.C. 2018) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).   "Notice must also provide interested parties with some sense of the factual basis for the action." *Id.* at 206–07.

Plaintiff contends the substance of the notice was deficient because it did not alert him that Defendants had a reasonable belief that the conduct for which dismissal was recommended constituted criminal conduct.  Opp. at 43-44.  Not so.  The FBI's notice to Plaintiff proposed that he be dismissed for lack of candor under oath (on two occasions) and not under oath (on two occasions), and for publicly disclosing an ongoing investigation.  FBI Rec. at 1.   The FBI also provided the factual bases for this proposal over 10 pages of the notice.  *Id.* at 1-11.   Other than one of the charges that Plaintiff lacked candor while not under oath, which ADAG Schools rejected, these were precisely the charges on which Plaintiff was actually removed.   ADAG Rec. at 1–6.  The removal did not turn on whether this conduct also constituted a crime, *id.*; it turned on the fact that Plaintiff's conduct violated

28

FBI personnel rules, *id*.[6]  Plaintiff does not—and cannot, *see* FBI Rec.—dispute that he was apprised of the FBI's belief that he violated various FBI personnel rules and of the Bureau's factual basis for that belief.  Thus, Plaintiff had sufficient notice to contest his removal and, by extension, sufficient notice under the Due Process Clause.  *See, e.g.*, *Parker*, 293 F. Supp. 3d at 206–07.

Finally, as explained in Defendants' opening brief, Plaintiff received adequate time to respond to the notice of proposed removal.  He first learned of the charges that formed the basis of his proposed removal, and the factual predicate for those charges, several weeks before he was removed.  MTD/SJ Mem. at 24.  The notice of proposed removal spanned only 15 pages, and he was assisted by counsel from two well regarded law firms in formulating his responses, which were lengthy and sophisticated:  He provided more than four hours of oral testimony, and his counsel submitted an 11-page, single-spaced letter.  MTD/SJ Mem. at 8, 24, 26.  The Due Process Clause does not require that Plaintiff, assisted by two more-than-capable counsel, receive more than a week to respond to a 15-page notice of proposed removal, the essential elements of which he had known about for three weeks.  *See McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conference of the U.S.*, 83 F. Supp. 2d 135, 168 (D.D.C. 1999) (concluding that plaintiff who had less than two weeks to respond to a 159-page document had been afforded an adequate opportunity to respond under the Due Process Clause), *aff'd in part, vacated in part*, 264 F.3d 52 (D.C. Cir. 2001).

## CONCLUSION

For the reasons stated above, and in Defendants' opening brief, the Court should dismiss Plaintiff's Complaint, or enter summary judgment in favor of Defendants.

Dated: January 23, 2020                                  Respectfully submitted,

                                                         JOSEPH H. HUNT
                                                         Assistant Attorney General

---

[6] At all events, it is difficult to accept the suggestion that Mr. McCabe, a lawyer, former special agent, and former Deputy Director of the FBI, did not recognize the potential criminal-law implications of allegations that he lacked candor when questioned under oath.

CHRISTOPHER R. HALL
Assistant Branch Director

*/s/ Justin M. Sandberg*
JUSTIN M. SANDBERG
Senior Trial Counsel
KYLA SNOW
Trial Attorney
GARRETT COYLE
Trial Attorney
U.S. Dep't of Justice, Civil Div., Federal Programs
Branch
1100 L Street, NW
Washington, D.C.  20001
Phone:  (202) 514-5838
Fax: (202) 616-8460
Justin.Sandberg@usdoj.gov

*Counsel for Defendants*

IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLUMBIA

| | |
|---|---|
| ANDREW G. MCCABE.,      ) | |
| ) | |
| Plaintiff,      ) | |
| ) | Case No. 1:19-CV-2399-RDM |
| v.      ) | |
| ) | |
| WILLIAM P. BARR, in his official capacity as ) | |
| Attorney General of the United States, *et al.*, ) | |
| ) | |
| Defendants.      ) | |
| ) | |
| ) | |
| ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S COUNTERSTATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

As required by Local Civil Rule 7(h)(1) and the Court's Standing Order, and in support for their Reply to Plaintiff's Opposition to Plaintiff's Motion for Summary Judgment, Defendants hereby submit the following response to Plaintiff's Counterstatement of Material Facts as to Which There Is No Genuine Issue, ECF No. 27-30.  Before responding to Plaintiff's additional factual allegations, Defendants submit a brief reply to some Plaintiff's responses to Defendants' initial Statement of Material Facts as to which there is no Genuine Issue, ECF No. 23.

### I.   Plaintiff's conclusory assertions of a dispute of material fact should be disregarded.

As an initial matter, although Defendants are not required to reply to Plaintiff's responses to Defendants' statements of material fact ("SMF"), Defendants note that many of Plaintiff's responses are attempts to create a factual dispute where none in fact exists and thus should be ignored.  In his response to Defendants' factual statements, Plaintiff "must point to specific facts in the record that reveal a genuine issue that is suitable for trial."  *Dougherty v. Cable News Network*, 396 F. Supp. 3d 84, 95 (D.D.C. 2019).  On

that task, Plaintiff fails.  Many of Plaintiff's responses are based on speculation and conjecture that could not support a claim on which relief can be granted, *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009), much less create a genuine dispute of material fact.  *See* Pl.'s Rep. to Defs.' SMF Nos. 11, 12, 15 & 16 (not disputing Defendants' summary of the conclusions reached by the OIG but variously disputing "the factual basis for the [OIG's] stated conclusion as well as the conclusion itself," "the validity of" certain aspects of the OIG investigation, and the OIG's "motives for issuing the report to the FBI); *id.* Nos. 18, 20, 21, 43, 45, 47 (speculating that the written opinions of Assistant Director Will and ADAG Schools do "not establish that [they], in actuality, agreed with [their] written recommendations"); *id.* Nos. 49 & 50 (speculating that the Attorney General's order effectuating Plaintiff's removal may not in fact reflect the Attorney General's true motivation for removing Plaintiff); *id.* Nos. 23 & 39 (contesting the accuracy or relevancy of statements that Plaintiff was the Deputy Director without evidentiary support).  These conclusory assertions, and any others like them, are insufficient to create a genuine dispute of material fact to overcome Defendants' alternative motion for summary judgment.

## II.  Defendants' Response to Plaintiff's Counterstatement of Material Facts

Plaintiff submits the following responses to Plaintiff's counterstatement of material facts ("CMF"), as required by this Court's Standing Order No. 10.b.vi.

1.  **Plaintiff's CMF No. 1:**  Plaintiff held the position of Deputy Director until January 29, 2018.  OIG Rpt. 4 ("McCabe became Acting Director of the FBI on May 9, 2017, when FBI Director James Comey was fired. McCabe served as Acting Director until August 1, 2017, when Christopher Wray was confirmed by the Senate as the new FBI Director. At that time, McCabe resumed his duties as Deputy Director, a position he held until January 29, 2018.").

    a.  **Defendants' Response:**  Disputed.  Plaintiff held the position of Deputy Director until his termination from the FBI and the civil service on March 16, 2018.

Declaration of Lovely A. Carrier, Jan. 22, 2020 (attached); Standard Form 50, Notification of Personnel Action re: Andrew G. McCabe, March 16, 2018 (attached as Exhibit 1); Standard Form 52, Request for Personnel Action re: Andrew G. McCabe, March 16, 2018 (attached as Exhibit 2); Attorney General Order No. 4101-2018, Feb. 2, 2018 (attached as Exhibit 3); Attorney General Order No. 4112-2018, Feb. 13, 2018 (attached as Exhibit 4); Letter from Bromwich to Schools at 1 ("Resp. Letter") (March 16, 2018) (attached to MTD/SJ Mem. as Ex. 5); Mar. 15, 2018 Tr. of Hearing in the Matter of Andrew McCabe ("Oral Resp. Tr."), at 199:13–14 (attached to MTD/SJ Mem. as Ex. 3)

2. **Plaintiff's CMF No. 2:**  At the time of Plaintiff's separation from the FBI in March 2018, Plaintiff was in a non-duty status known as "terminal leave." McCabe Decl. ¶ 40; PX-24 (email from FBI human resources official David Schlendorf).

     a. **Defendants' Response:** Defendants do not dispute that Plaintiff was on annual leave at the time of his separation, but dispute any suggestion that, because the leave occurred immediately before Plaintiff's separation from the government, it altered Plaintiff's relationship to the FBI in a way that annual leave taken at any other time would not.

3. **Plaintiff's CMF No. 3:** The text of the OIG Report states that OIG was "issuing this report to the FBI for such action as it deems appropriate," and does not state a recommendation of any specific action for the FBI to take.  OIG Rpt. 2, 35.

     a. **Defendants' Response:**  No dispute.

4. **Plaintiff's CMF No. 4:**  According to Defendant DOJ's publicly available documents, two recent OIG investigation findings each state that an employee under investigation for "lack of

candor" ultimately "retired from his position," and do not state that the employees were terminated before they could retire. *See* DOJ OIG, *Findings of Misconduct by a Senior DOJ Official for Ethical Misconduct, Sexual Harassment, Sexual Assault, and Lack of Candor to the OIG* (Dec. 4, 2018), *at* https://oig.justice.gov/reports/2018/f181204.pdf (stating that OIG found that a "senior DOJ official lacked candor in his statements to the OIG," that "[c]riminal prosecution of the senior DOJ official was declined," that he "retired from his position," and that OIG "completed its investigation and provided its report to the [relevant DOJ office] for appropriate action"); DOJ OIG, *Findings of Misconduct by a Senior DEA Official for Violating Ethics Regulations, DEA Standards of Conduct, and the Federal Acquisition Regulation, and for Lack of Candor* (June 10, 2019), *at* https://oig.justice.gov/reports/2019/f190610.pdf ("[T]he OIG concluded that the senior DEA official lacked candor by making false entries about alcohol counseling on a Questionnaire for National Security Position, in violation of the DEA Standards of Conduct and potentially in violation of criminal statutes. . . . Criminal prosecution of the senior DEA official . . . was declined. The senior DEA official retired from his position. The OIG completed its investigation and provided its report to DEA and JMD for appropriate action.").

a. **Defendants' Response:** No dispute, but immaterial.  The outcome and timeline of the investigations of individuals in a different position from Plaintiff, and at different agencies (the Office of Justice Programs, *see* DOJ OIG, *Findings of Misconduct by a Senior DOJ Official for Ethical Misconduct, Sexual Harassment, Sexual Assault, and Lack of Candor to the OIG* (Dec. 4, 2018), *at* https://oig.justice.gov/reports/2018/f181204.pdf, and the Drug Enforcement Administration, DOJ OIG, *Findings of Misconduct by a Senior DEA Official for Violating Ethics Regulations, DEA Standards of Conduct, and the Federal Acquisition Regulation, and for Lack of Candor* (June 10, 2019), *at*

4

https://oig.justice.gov/reports/2019/f190610.pdf), whose conduct was distinct from Plaintiff's, have no relevance to the outcome and timing of Plaintiff's investigation.

5. **Plaintiff's CMF No. 5:** The text of the OIG Report states that OIG "found" that Plaintiff had "lacked candor" on four occasions: once when speaking with then-FBI Director James Comey on October 31, 2016 about the *Wall Street Journal* article published online on October 30, 2016, entitled "FBI in Internal Feud Over Hillary Clinton Probe," and then republished in print on October 31, 2016, entitled "FBI, Justice Feud in Clinton Probe"; once while being questioned by Inspection Division Agents on May 9, 2017; and twice while being questioned by OIG on July 28, 2017 and November 29, 2017. OIG Rpt. 1-2, 22.

   a. **Defendants' Response:** No dispute.

6. **Plaintiff's CMF No. 6:** The text of the OIG Report does not reference any testimony or emails by Michael Kortan, the then-FBI Assistant Director for Public Affairs ("AD/OPA"). *See generally* OIG Rep.

   a. **Defendants' Response:** No dispute, but immaterial. Plaintiff points to no legal authority that would have required OIG to reference any and all evidence Plaintiff asserts was relevant. Moreover, it is improper to impugn "the correctness or desirability" of the conclusions reached by the OIG without any evidence of a "demonstrably discriminatory motive" for its Report. *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996), *as amended on denial of reh'g* (July 15, 1996) (citations omitted).

7. **Plaintiff's CMF No. 7:** According to publicly available sources, during the 2015 Virginia state election cycle, a political action committee ("PAC") of then-Virginia Governor, Terry McAuliffe, made campaign contributions of over $250,000 to each of five Democratic Party

campaigns for Virginia state senate. One state senate campaign received $803,500 from that PAC, another received $781,500, and Dr. McCabe's campaign received $467,500. Virginia Public Access Project, https://www.vpap.org/donors/248345-common-good-va/?start_year=2015&end_year=2015; OIG Rpt. 5-6.

    a.  **Defendants' Response:**  No dispute, but immaterial.  The amount of contributions various Virginia political campaigns received is not material to Defendants' motion for summary judgment on Plaintiff's due process and First Amendment claims related to the Attorney General's decision to remove Plaintiff from the FBI for misconduct, including lack of candor under oath. Memo. from ADAG Schools to the Attorney General ("ADAG Rec."), at 1–6 (Mar. 16, 2018) (attached as Ex. 6 to Defendants' Mtn. to Dismiss and for Summ. J.).

8. **Plaintiff's CMF No. 8:**  In 2015, former U.S. Secretary of State Hillary Clinton declared her candidacy for the Democratic Party's nomination for the U.S. presidency. Amy Chozick, *Hillary Clinton Announces 2016 Presidential Bid*, N.Y. TIMES (Apr. 12, 2015), https://www.nytimes.com/2015/04/13/us/politics/hillary-clinton-2016-presidentialcampaign.html.

    a.  **Defendants' Response:**  No dispute, but immaterial.  Hillary Clinton's presidential candidacy is not material to Defendants' motion for summary judgment on Plaintiff's due process and First Amendment claims related to the Attorney General's decision to remove Plaintiff from the FBI for misconduct, including lack of candor under oath. ADAG Rec. at 1–6.

9. **Plaintiff's CMF No. 9:**  According to Defendant FBI's publicly available documents, in July 2015, the FBI opened an investigation into whether Clinton had improperly stored or

transmitted classified information on a private email server while conducting official business during her tenure as Secretary of State ("Clinton email investigation"). *See* FBI Memorandum, *Clinton E-Mail Investigation* 1 (July 2016), https://vault.fbi.gov/hillary-r.-clinton/Hillary%20R.%20Clinton%20Part%2001%20of%2037.

    a.  **Defendants' Response:**  No dispute, but immaterial.  The existence of this investigation is not material to Defendants' motion for summary judgment on Plaintiff's due process and First Amendment claims related to the Attorney General's decision to remove Plaintiff from the FBI for misconduct, including lack of candor under oath.  ADAG Rec. at 1–6.

10. **Plaintiff's CMF No. 10:**  According to Defendant FBI's publicly available documents, on July 5, 2016, FBI Director Comey publicly announced the conclusion of the Clinton email investigation with the recommendation that the facts did not support bringing any criminal charges against Clinton. *Statement by FBI Director James B. Comey on the Investigation of Secretary Hillary Clinton's Use of a Personal E-Mail System,* FBI, (July 5, 2016), https://www.fbi.gov/news/pressrel/press-releases/statement-by-fbi-director-james-b-comey-onthe-investigation-of-secretary-hillary-clinton2019s-use-of-a-personal-e-mail-system.

    a.  **Defendants' Response:**  No dispute, but immaterial.  Former FBI Director Comey's public announcement regarding this investigation is not material to Defendants' motion for summary judgment on Plaintiff's due process and First Amendment claims related to the Attorney General's decision to remove Plaintiff from the FBI for misconduct, including lack of candor under oath.  ADAG Rec. at 1–6.

11. **Plaintiff's CMF No. 11:**  On July 26, 2016, Clinton accepted the Democratic Party's presidential nomination, and on July 22, 2016, Donald J. Trump accepted the Republican

Party's presidential nomination. *Who Is Running for President?*, N.Y. Times, July 26, 2016, at https://www.nytimes.com/interactive/2016/us/elections/2016-presidential-candidates.html.

    a. **Defendants' Response:**  No dispute, but immaterial.  The presidential nominations are not material to Defendants' motion for summary judgment on Plaintiff's due process and First Amendment claims related to the Attorney General's decision to remove Plaintiff from the FBI for misconduct, including lack of candor under oath. ADAG Rec. at 1–6.

12. **Plaintiff's CMF No. 12:**  On July 31, 2016, the FBI began a counter-intelligence investigation into whether Trump campaign associates were linked to the Russian government's efforts to interfere in the 2016 U.S. presidential election ("Russia investigation"). McCabe Decl. ¶ 15; *see also* Page 47 at https://docs.house.gov/meetings/IG/IG00/20180322/108023/HRPT-115-1_1-p1-U3.pdf;                               Page                       2                   of https://intelligence.house.gov/uploadedfiles/redacted_minority_memo_2.24.18.pdf.

    a. **Defendants' Response:**   No dispute, but immaterial.   The existence of an investigation into any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump is not material to Defendants' motion for summary judgment on Plaintiff's due process and First Amendment claims related to the Attorney General's decision to remove Plaintiff from the FBI for misconduct, including lack of candor under oath.  ADAG Rec. at 1–6.

13. **Plaintiff's CMF No. 13:**  On October 23, 2016, the *Wall Street Journal* published online an article concerning the McAuliffe PAC's contributions to Dr. McCabe's 2015 Virginia state

senate campaign, and stated that McAuliffe was "an influential Democrat with long-standing ties to Bill and Hillary Clinton." OIG Rpt. 5-6; *see also* Devlin Barrett, *Clinton Ally Aided Campaign of FBI Official's Wife*, Wall St. Journal, Oct. 24, 2016 (print edition), https://www.wsj.com/articles/clinton-ally-aids-campaign-of-fbi-officials-wife-1477266114.

   a. **Defendants' Response:**  No dispute.

14. **Plaintiff's CMF No. 14:**  On October 24, 2016, *Wall Street Journal* reporter Devlin Barrett contacted Michael Kortan about a follow-up story concerning Plaintiff's oversight of the FBI's investigation into the Clinton Foundation, a non-profit organization established by former president Bill Clinton. OIG Rpt. 6.

   a. **Defendants' Response:**  No dispute.

15. **Plaintiff's CMF No. 15:**  On January 12, 2017, OIG announced its initiation of a review of allegations regarding certain actions by the DOJ and FBI in advance of the 2016 election ("2016 election investigation"). The allegations under review included allegations "that Department and FBI employees improperly disclosed non-public information." *See* DOJ OIG, *DOJ OIG Announces Initiation of Review* (Jan. 12, 2017), at https://oig.justice.gov/press/2017/2017-01-12.pdf.

   a. **Defendants' Response:**  No dispute.

16. **Plaintiff's CMF No. 16:**  In March 2017, then-Attorney General Jeff Sessions stated: "I have decided to recuse myself from any existing or future investigations of any matters related in any way to the campaigns for President of the United States. . . . Consistent with the succession order for the Department of Justice, Acting Deputy Attorney General and U.S. Attorney for the Eastern District of Virginia Dana Boente shall act as and perform the functions of the Attorney General with respect to any matters from which I have recused

myself to the extent they exist." *Attorney General Sessions Statement on Recusal,* Department of

Justice, Press Release No. 17-237 (Mar. 2, 2017), https://www.justice.gov/opa/pr/attorney-

general-sessions-statement-recusal.

a. **Defendants' Response:**  No dispute, but immaterial.  Former Attorney General

Sessions' recusal from "investigations of any matters related in any way to the

campaigns for President of the United States" did not preclude the Attorney General

from carrying through with his obligation to run the Department of Justice, including

the FBI.  In his prepared remarks to the Senate with regard to his role in the removal

of former FBI Director Comey, former Attorney General Sessions explained:  "The

scope of my recusal, however, does not and cannot interfere with my ability to oversee

the Department of Justice, including the FBI, which has an $8 billion budget and

35,000 employees."  Hearing Transcript, June 13, 2017, Senate Select Committee on

Intelligence, at 11.  In response to questions from Maine Senator Susan Collins, he

further elaborated:

> The recusal involved one case involved in the Department of
> Justice and in the FBI.  They conduct thousands of investigations.
> I'm the Attorney General of the United States. It's my responsibility
> to our Judiciary Committee and other committees to ensure that
> Department is run properly. I have to make difficult decisions, and
> I do not believe that it is a sound position to say that if you're
> recused for a single case involving any one of the great agencies,
> like DEA or U.S. Marshals or ATF that are part of the Department
> of Justice, you can't make a decision about the leadership in that
> agency.

*Id.* at 28.  Former Attorney General Sessions' recusal from investigations related to the

2016 presidential campaign thus has no relevance to his removal of Plaintiff from the

FBI and is not material to Defendants' motion for summary judgment on Plaintiff's

due process and First Amendment claims related to the Attorney General's decision

to remove Plaintiff from the FBI for misconduct, including lack of candor under oath. ADAG Rec. at 1–6.

17. **Plaintiff's CMF No. 17:**  In May 2017, the Russia investigation was assigned to a Special Counsel, former FBI Director Robert S. Mueller III. *See generally* Special Counsel Robert S. Mueller III, REPORT ON THE INVESTIGATION INTO RUSSIAN INTERFERENCE IN THE 2016 PRESIDENTIAL ELECTION (Mar. 2019) ("Special Counsel Report"), *redacted version available at* https://www.justice.gov/storage/report.pdf, 2019 WL 1780145 (Vol. I), and 2019 WL 1780146 (Vol. II).

    a. **Defendants' Response:**  No dispute, but immaterial.  Any details related to what Plaintiff refers to as the "Russia investigation" are not material to Defendants' motion for summary judgment on Plaintiff's due process and First Amendment claims related to the Attorney General's decision to remove Plaintiff from the FBI for misconduct, including lack of candor under oath.  ADAG Rec. at 1–6.

18. **Plaintiff's CMF No. 18:**  The Russia investigation identified links between individuals in Trump's presidential campaign and the Russian government and other Russian individuals and entities. *See, e.g.*, Plea Agreement at 1, 4, *United States v. Gates*, No. 17-CR-201-2 (D.D.C. Feb. 23, 2018) (admitting to working as an employee of companies run by Manafort, including as an agent of the Party of Regions); Statement of the Offense at 1-3, *United States v. Flynn*, No. 17-CR-232 (D.D.C. Dec. 1, 2017) (pleading guilty to making false statements to FBI regarding Flynn's conversations with the Russian ambassador to the United States about U.S. sanctions); Statement of the Offense at 1-3, *United States v. Papadopoulos,* No. 17-CR-182 (D.D.C. Oct. 5, 2017) (Trump's National Security Advisory [*sic*] pleading guilty to making false statements to

the FBI regarding his communications with foreign individuals tied to the Russian government).

    a.  **Defendants' Response:**  Defendants do not dispute that individuals pleaded guilty to federal crimes in the cited cases, but dispute the apparent inadvertent suggestion in the second of Plaintiff's two cited dispositions that Mr. Papadopoulos was the Assistant to the President for National Security Affairs, commonly known as the National Security Advisor.   In any case, allegations regarding the "Russia investigation" are not material to Defendants' motion for summary judgment on Plaintiff's due process and First Amendment claims related to the Attorney General's decision to remove Plaintiff from the FBI for misconduct, including lack of candor under oath.  ADAG Rec. at 1–6.

19. **Plaintiff's CMF No. 19:**  On June 11, 2018, OIG issued a report on its 2016 election investigation, entitled "A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election." Available at https://www.justice.gov/file/1071991/download.

    a.  **Defendants' Response:**  No dispute, but immaterial.  The issuance of this June 11, 2018 report is not material to Defendants' motion for summary judgment on Plaintiff's due process and First Amendment claims related to the Attorney General's decision to remove Plaintiff from the FBI for misconduct, including lack of candor under oath. ADAG Rec. at 1–6.  The Attorney General's decision to remove Plaintiff was related to a separate report: U.S. Department of Justice, Office of Inspector General, "A Report of Investigation of Certain Allegations Relating to Former FBI Deputy

Director    Andrew    McCabe"    ("OIG    Rpt.")    (Feb.    2018)

https://oig.justice.gov/reports/2018/o20180413.pdf.


Dated: January 23, 2020                     Respectfully submitted,

                                            JOSEPH H. HUNT
                                            Assistant Attorney General

                                            CHRISTOPHER R. HALL
                                            Assistant Branch Director

                                            */s/ Justin M. Sandberg*
                                            JUSTIN M. SANDBERG
                                            Senior Trial Counsel
                                            GARRETT COYLE
                                            Trial Attorney
                                            KYLA M. SNOW
                                            Trial Attorney
                                            U.S. Dep't of Justice, Civil Div., Federal Programs
                                            Branch
                                            1100 L Street, NW
                                            Washington, D.C.  20001
                                            Phone: (202) 514-5838
                                            Fax: (202) 616-8460
                                            Justin.Sandberg@usdoj.gov

                                            *Counsel for Defendants*

13

## DECLARATION OF LOVELY A. CARRIER

Lovely A. Carrier declares under 28 U.S.C. § 1746:

1.     I am employed by the Federal Bureau of Investigation (FBI). I am the Unit Chief of the Payroll Management Unit (PMU) within the Human Resources Division of the FBI. I have held this position since 2016.

2.      PMU processes all personnel actions for each employee from the hire to separation actions.  Each employee's Official Personnel Folder (eOPF) contains all documents reflecting the employee's official employment history with the agency, including grades, occupations, and pay.

3.     Attached as **Exhibit 1** is an SF-52 Request for Personnel Action form from Plaintiff Andrew G. McCabe's eOPF with the social security number, date of birth, and forwarding address redacted for privacy. Names of Human Resources Division personnel are also redacted for privacy reasons. Box 7 on page 1 of Exhibit 1 shows that Plaintiff's position title at the time of his termination from the FBI on March 16, 2018, was Deputy Director of the FBI.

4.     Attached as **Exhibit 2** is an SF-50 Notification of Personnel Action form from Plaintiff's eOPF with the social security number, date of birth, and forwarding address redacted for privacy. Box 7 of Exhibit 2 shows that Plaintiff's position title at the time of his termination from the FBI on March 16, 2018, was Deputy Director of the FBI.

5.     I have reviewed the remaining documents in Plaintiff's eOPF. No documents in Plaintiff's eOPF show that Plaintiff was demoted from the position of Deputy Director of the FBI to any other position.

6.     The documents in Plaintiff's eOPF, including Exhibits 1 and 2, were made near the time of the underlying events from information transmitted by individuals with knowledge of the underlying events. The documents in Plaintiff's eOPF, including Exhibits 1 and 2, are all kept in

the course of the regularly conducted activity of the FBI, and making those documents is a regular practice of that activity.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief, and based upon records maintained in the ordinary course of business.

Executed on January 22, 2020, at Washington, District of Columbia.

Lovely A. Carrier

# Exhibit 1

# Exhibit 1

Standard Form 52
Rev 7/91
U.S. Office of Personnel Management
Guide to Processing Personnel Actions, Chapter 4

# REQUEST FOR PERSONNEL ACTION

## PART A - Requesting Office (Also complete Part B, Items 1,7-22,32,33,36 and 39)

| 1. Actions Requested | 2. Request Number |
|---|---|

| 3. For Additional Information Call    (Name and Telephone Number) | 4. Proposed Eff. Date 03-16-2018 |
|---|---|

| 5. Action Requested By    (Typed Name, Title, Signature, and Request Date) | 6. Action Authorized By    (Typed Name, Title, Signature, and Date) |
|---|---|

## PART B - For Preparation of SF 50  (Use only codes in The Guide to Personnel Data Standards.  Show all dates in month-day-year order.)

| 1. Name  (Last, First, Middle) MCCABE, ANDREW G | 2. Social Security Number (P-1) | 3. Date of Birth (S) | 4. Effective Date 03-16-2018 |
|---|---|---|---|

| **FIRST ACTION** | | **SECOND ACTION** | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 357 | Termination | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| ZLM | 5 USC 3151 | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| SUPVY SPECIAL AGENT-DEPUTY DIR FBI PD: 400141.         Position:     00150116 | |

| 8.Pay Plan | 9.Occ. CD | 10.Grd/Lvl | 11.Step/Rate | 12.Tot. Salary | 13.Pay Basis | 16.Pay Plan | 17.Occ. CD | 18.Grd/Lvl | 19.Step/Rate | 20.Tot. Salary/Award | 21.Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ES | 1811 | 00 | 00 | | PA | | | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| $187,000.00 | $0 | $187,000.00 | $0 | | | | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| Federal Bureau of Investigation WASHINGTON DC USA | |

## EMPLOYEE DATA

| 23. Veterans Preference | | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|---|
| 1-None | 3-10 Point/Disability | 5-10 Point/Other | 0-None | 2-Conditional | | |
| 1  2-5 Point | 4-10 Point/Compensable | 6-10 Point/Compensable/30% | 0  1-Permanent | 3-Indefinite | | YES   X  NO |

| 27. FEGLI | | 28. Annuitant Indicator | | 29. Pay Rate Determinant |
|---|---|---|---|---|
| B0 | Waived | 9 | Not Applicable | 0   0-Regular Rate |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| FERS and FICA M  Special | 07-07-1996 | F   Full Time | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1-Competitive Service 3-SES General 4  2-Excepted Service   4-SES Career Reserved | E-Exempt E   N-Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station   (City-County-State or Overseas Location) | |
|---|---|---|
| 110010001 | WASHINGTON, DC  Dist Columbia  DC  USA | |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|

| 45. Edu. Lvl. | 46. Yr. Degr. Attd | 47. Acad. Discipl. | 48. Func. Class | 49. Citizenship 1   1-USA 8-Other | 50. Veterans Status X  Non Vet | 51. Supervisory Status 2   Supv/Mgr |
|---|---|---|---|---|---|---|

## PART C - Reviews and Approvals   (Not to be used by requesting office.)

| 1. Office/Function | | Date | 1. Office/Function | Initials/Signature | Date |
|---|---|---|---|---|---|
| A. 2ND/SME. D3-SENIOR | (P) MGMT&PROG ANAL   03-19-2018 | | D. COR. | | |
| B. 3RD. | | | E. CAN. | | |
| C. PRO. D3-PAY/PER | (P) SUPVY HR SPECIALIST (   03-19-2018 | | F. OTHER. | | |

| 2. Approval: I certify that the information entered on this form is accurate and the proposed action is in compliance with statutory and regulatory requirements | Signature | Approval Date |
|---|---|---|

CONTINUED ON REVERSE SIDE         OVER         Editions Prior to 7/91 Are Not Usable After 6/30/93

This is an 'official' document generated from the eOPF system.

Carrier Decl. Ex. 1

Name: MCCABE,ANDREW G                                        PAR Number:

**PART D - Remarks by Requesting Office**

(Note to Supervisors: Do you know of additional or conflicting reasons for the employee's resignation/retirement?
If ""YES"", please state these facts on a separate sheet and attach to SF52).                    ☐ YES  ☐ NO

**PART E - Employee Resignation/Retirement**

**Privacy Act Statement**

You are requested to furnish a specific reason for your resignation or retirement and a forwarding address. Your reason may be considered in any future decision regarding your re-employment in the Federal service and may also be used to determine your eligibility for unemployment compensation benefits. Your forwarding address will be used primarily to mail you copies of any documents you should have or any pay or compensation to which you are entitled.
This information is requested under authority of sections 301, 3301, and 8506 of title 5, U.S. Code. Sections 301 abd 3301 authorize OPM and agencies to issue

regulations with regard to employment of individuals in the Federal service and their records, while section 8506 requires agencies to furnish the specific reason for termination of Federal service to the Secretary of Labor or a State agency in connection with administration of unemployment compensation programs.
The furnishing of this information is voluntary; however, failure to provide it may result in your not receiving: (1) your copies of those documents you should have; (2) pay or other compensation due you; (3) any unemployment compensation benefits to which you may be entitled.

1. Reasons for Resignation/Retirement (NOTE: Your reasons are used in determining possible unemployment benefits.
   Please be specific and avoid generalizations.
   Your resignation/retirement is effective at the end of the day - midnight - unless you specify otherwise.)

Termination

| 2. Effective Date | 3. Your Signature | 4. Date Signed | 5. Forwarding Address | (Number, Street, City, State, ZIP Code) |
|---|---|---|---|---|
| 03-16-2018 | MCCABE,ANDREW G | | | |

**PART F - Remarks for SF 50**

- SF 2819 was provided. Life insurance coverage is extended for 31 days during which you are eligible to convert to an individual policy

(nongroup contract).
- Health benefits coverage is extended for 31 days during which you are eligible to convert to an individual policy (nongroup contract).

- Forwarding address:        (S)
  (S)
- Reason(s) for termination: By order of Attorney General

Carrier Decl. Ex. 1

# Exhibit 2

# Exhibit 2

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

**NOTIFICATION OF PERSONNEL ACTION**

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| MCCABE, ANDREW G | (P-1) | (S) | 03/16/18 |

| **FIRST ACTION** | | **SECOND ACTION** | |
|---|---|---|---|
| 5-A. Code 357 | 5-B. Nature of Action TERMINATION | 6-A. Code | 6-B. Nature of Action |
| 5-C. Code ZLM | 5-D. Legal Authority 5 USC 3151 | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| SUPVY SPECIAL AGENT-DEPUTY DIR FBI 00150116 400141 | |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19.Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ES | 1811 | 00 | 00 | 187,000.00 | PA | | | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| 187,000.00 | .00 | 187,000.00 | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| FEDERAL BUREAU OF INVESTIGATION HEADQUARTERS DEPUTY DIRECTOR | 1B DJ AV010000150000000 PP 05 2018 |

**EMPLOYEE DATA**

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 — 1 - None  3 - 10-Point/Disability  5 - 10-Point/Other   2 - 5-Point  4 - 10-Point/Compensable  6 - 10-Point/Compensable/30% | 0 — 0 - None  2 - Conditional  1 - Permanent  3 - Indefinite | | YES  X  NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| B0  WAIVED | - 9  NOT APPLICABLE | .0  NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| M  FERS AND FICA SPECIAL | 07/07/96 | F  FULL TIME | |

**POSITION DATA**

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 4  1 - Competitive Service  3 - SES General  2 - Excepted Service  4 - SES Career Reserved | E  E - Exempt  N - Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON  DIST OF COLUMBIA  DC |

| 40. Agency Data | 41. SEX: M | 42. CITZ: 1 | 43. VET STAT: X | 44. ED LV:17 YR:93 INST PRG:220101 |
|---|---|---|---|---|

**45. Remarks**
SF-2819 was provided.  Life insurance coverage is extended for 31 days during which you are eligible to convert to an individual policy (nongroup contract).
Health benefits coverage is extended for 31 days during which you are eligible to convert to an individual policy (nongroup contract).
Forwarding address:
(S)

Reason(s) for termination: By order of Attorney General

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE | ELECTRONICALLY SIGNED BY: DAVID W. SCHLENDORF ASSISTANT DIRECTOR |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| DJ AV | 4017 | 03/17/18 |

5-Part SF-316

Not Usable After 6/30/93
SN 7540-01-333-6238

This is an 'official' document generated from the eOPF system.

Carrier Decl. Ex. 2

**DELETION CODES**

P.      THE PRIVACY ACT OF 1974, 5 U.S.C. § 552a

P-1    INFORMATION, THE DISCLOSURE OF WHICH WOULD BE AN UNWARRANTED
         INVASION OF PERSONAL PRIVACY.

S.      PERSONAL IDENTIFYING INFORMATION RELATED TO LAW ENFORCEMENT
         PERSONNEL AND THEIR FAMILY MEMBERS, THE DISCLOSURE OF WHICH IS
         ROUTINELY GUARDED FOR SECURITY REASONS.

# EXHIBIT 3



# Office of the Attorney General
## Washington, D.C. 20530

ORDER NO.  4101-2018

DESIGNATION OF DAVID L. BOWDICH AS
ACTING DEPUTY DIRECTOR, FEDERAL BUREAU OF INVESTIGATION

By virtue of the authority vested in the Attorney General by law, including 28 U.S.C.

§§ 509 and 510, I hereby designate David L. Bowdich as Acting Deputy Director, Federal

Bureau of Investigation, as of January 29, 2018.

2/2/18
Date

Jefferson B. Sessions III
Attorney General

EXHIBIT 4



## Office of the Attorney General
### Washington, D. C. 20530

ORDER NO. 4112-2018

REASSIGNMENT OF DAVID L. BOWDICH AS
DEPUTY DIRECTOR, FEDERAL BUREAU OF INVESTIGATION

By virtue of the authority vested in the Attorney General by law, including 28 U.S.C.

§§ 509 and 510, I hereby appoint David L. Bowdich to the position of Deputy Director, Federal

Bureau of Investigation, effective March 18, 2018.

2·14·18
_____
Date

Jefferson B. Sessions III
Attorney General

# EXHIBIT 5

**UNCLASSIFIED**

Special Agent Hiring Policy Guide

# Special Agent Hiring Policy Guide



**Federal Bureau of Investigation**

**Human Resources Division**

**1046PG**

**December 20, 2018**

**UNCLASSIFIED**

**UNCLASSIFIED**

Special Agent Hiring Policy Guide

# Approvals

| Policy Information | |
|---|---|
| Last Updated | N/A |
| Effective Date | 2018-12-20 |
| Review Date | 2021-12-20 |
| **Approval Information** | |
| Sponsoring Executive Approval | **David W. Schlendorf** <br> Assistant Director <br> Human Resources Division |
| Final Approval | **Andrew W. Vale** <br> Human Resources Branch <br> Executive Assistant Director |

**UNCLASSIFIED**

**UNCLASSIFIED**

Special Agent Hiring Policy Guide

**General Information**

Questions or comments pertaining to this policy guide can be directed to:

Federal Bureau of Investigation Headquarters, Human Resources Division (HRD)

Policy point of contact (POC): unit chief (UC), New Agent/Analyst Testing and Selection Unit (NAATSU), 202-233-9177

**Supersession Information**

This document supersedes *Special Agent Hiring Policy Guide*, 0878PG.

This document and its contents are the property of the FBI. If the document or its contents are provided to an outside agency, it and its contents are not to be distributed outside of that agency without the written permission of the unit listed in the contact section of this policy guide.

UNCLASSIFIED

Special Agent Hiring Policy Guide

# Revision Log

The revision log documents substantive changes made to the previous version of this policy, the *Special Agent Hiring Policy Guide,* 0878PG, published on March 13, 2017. The numbers and titles in the "Revised" column refer to the subsections as they currently appear in this updated policy. "Deleted" subsection numbers refer to those in the previous published version of the policy.

| Revised Section Number and Title | Deleted Section Number and Title |
|---|---|
| 3.2. Privacy Act/Nondisclosure | |
| 4.7.2. Preparing for the Physical Fitness Test | |

UNCLASSIFIED

Special Agent Hiring Policy Guide

# Table of Contents

1.   Introduction..............................................................................................1

   1.1. Purpose...............................................................................................1

   1.2. Scope..................................................................................................1

   1.3. Exemptions ........................................................................................1

2.   Roles and Responsibilities ........................................................................2

   2.1. Director of the Federal Bureau of Investigation .................................2

   2.2. Assistant Director (AD)/Human Resources Officer (HRO), Human Resources Division (HRD) .......................................................................2

   2.3. New Agent/Analyst Testing and Selection Unit (NAATSU) ...............2

   2.4. New Agent/Analyst Testing and Selection Unit Program Managers (PM).......................2

   2.5. Special Agent Applicant Suitability Review Process (SRP) ...............4

   2.6. Employee and Medical Services Section.............................................5

   2.7. Transfer Unit ......................................................................................5

   2.8. Security Division ................................................................................5

   2.9. Critical Incident Response Group (CIRG)..........................................5

   2.10.   Field Offices ..................................................................................6

      2.10.1.   Assistant Directors in Charge and Special Agents in Charge...................6

      2.10.2.   Applicant Coordinators ..........................................................6

      2.10.3.   Special Agents Participating in Meet-and-Greet Sessions....................7

      2.10.4.   Recruiters ...............................................................................7

      2.10.5.   Regional Site Coordinators ....................................................8

      2.10.6.   Field Office Human Resources Personnel ..............................8

   2.11.   Training Division, Physical Training Unit (PTU)............................8

   2.12.   Training Division Executive Management .....................................8

3.   Policy Statement.........................................................................................9

   3.1. Special Agent Selection System .........................................................9

   3.2. Privacy Act/Nondisclosure ...............................................................10

4.   Processes and Procedures........................................................................11

   4.1. Specialized Experience: Technical Skills Requirements....................11

      4.1.1.   Applying for the Special Agent Position ...............................11

Special Agent Hiring Policy Guide

4.1.2.   Preliminary Screening Requirements ..................................................................12

4.2. Phase I Testing ...............................................................................................................17

4.2.1.   Reasonable Accommodations for Phase I Testing....................................................18

4.3. Physical Fitness Test Self-Evaluation............................................................................18

4.4. Meet-and-Greet Session.................................................................................................18

4.5. Headquarters Review Process.........................................................................................20

4.5.1.   Headquarters Review Process Reevaluation of Ranking.........................................20

4.5.2.   Suitability Review Process .....................................................................................21

4.6. Phase II Testing..............................................................................................................21

4.6.1.   Preparing for Phase II ............................................................................................22

4.6.2.   Making Travel Arrangements for Phase II ..............................................................22

4.6.3.   Failure to Report for Phase II.................................................................................23

4.6.4.   Reasonable Accommodations for Phase II Testing .................................................23

4.6.5.   Phase II Applicants Caught Cheating or Sharing Test Information ........................23

4.6.6.   Phase II Retest Policy ............................................................................................24

4.6.7.   Review and Validating Phase II Assessments .........................................................24

4.7. Physical Fitness Test......................................................................................................24

4.7.1.   Tactical Recruiting Program Physical Fitness Test ................................................25

4.7.2.   Preparing for the Physical Fitness Test...................................................................25

4.7.3.   Administering the Field Physical Fitness Test.........................................................25

4.7.4.   Post-Phase II Physical Fitness Test.........................................................................26

4.7.5.   Pre-Quantico Physical Fitness Test ........................................................................26

4.7.6.   Illnesses, Injuries, and "No Shows" for the Physical Fitness Test .........................26

4.7.7.   Physical Fitness Test Accommodation Requests.....................................................27

4.8. Conditional Appointment Offer.......................................................................................28

4.9. Background Investigation ...............................................................................................28

4.10.  Medical Examination .....................................................................................................28

4.11.  Deactivation and Reactivation of Applicants..................................................................29

4.12.  Appointment Notification ...............................................................................................29

4.13.  Special Agent Starting Salary ........................................................................................29

4.14.  Unique Applicant Categories .........................................................................................30

Special Agent Hiring Policy Guide

4.14.1.   Preference-Eligible Applicants ...................................................................30

4.14.2.   Military Applicants on Transition Leave Status ......................................31

4.14.3.   Military Reserve Status ................................................................................32

4.14.4.   Federal Bureau of Investigation Professional Staff ...............................32

4.14.5.   Applicants Who Reside Overseas ................................................................33

4.14.6.   Applicants With Foreign Language Skills .................................................33

4.14.7.   Tactical Recruiting Program ........................................................................33

4.14.8.   Federal Law Enforcement Officers .............................................................34

4.14.9.   Central Intelligence Agency Employees .....................................................35

4.14.10. Children of Slain Agents ...............................................................................35

4.14.11. New Agent Trainees Who Separate from the Basic Field Training Course Prior to Graduation ....................................................................................................................35

4.15.   Appeals .................................................................................................................35

4.16.   Reinstatements ...................................................................................................36

5.   Authorities .............................................................................................................38

6.   Recordkeeping Requirements .........................................................................39

6.1.   Office of Personnel Management ....................................................................39

6.2.   Destruction of Special Agent Selection System Phase I and Phase II Test Materials .......39

# List of Appendices

**Appendix A: References** ...........................................................................**A-1**

**Appendix B: Phase I Testing Protocols** ...............................................**B-1**

**Appendix C: Phase II Assessment Protocols and Evaluation Forms** ......................**C-1**

**Appendix D: Special Agent Performance Assessment Network** ............................**D-1**

**Appendix E: Special Agent Assessor Program** ...............................................**E-1**

**Appendix F: Phase II Testing Tips for Applicants** ......................................**F-1**

**Appendix G: Making Travel Arrangements for Phase II** ...............................**G-1**

**Appendix H: Meet-and-Greet Sessions** ..........................................................**H-1**

**Appendix I: Acronyms** ....................................................................................**I-1**

UNCLASSIFIED

Special Agent Hiring Policy Guide

### 4.1.2.7.      Mobility Agreement

Newly appointed SAs must complete FD-918, "Directed Reassignment and Worldwide Mobility Policy" forms and accept the possibility of transfer as a condition of their employment. Refusal to accept a reassignment is grounds for dismissal from the FBI. Based on the current funded staffing levels (FSL) and/or critical specialty needs, NATs will be assigned to one of the FBI's 56 FOs. NATs are given the opportunity to rank their desired locations. While consideration is given to these preferences, first-office assignments are based upon the staffing needs of the FBI. SAs rarely return to their processing offices. Applicants should ensure that their families are prepared and supportive of moving before they apply for the SA position.

### 4.1.2.8.      Willingness to Carry a Firearm and Use Deadly Force

SAs are required to carry a firearm at all times and may be required to use deadly force during the course of their duties. The DOJ Policy Statement on the Use of Deadly Force (2004) is contained in the *Domestic Investigations and Operations Guide* (DIOG), Appendix F.

### 4.1.2.9.      Willingness to Work an Average of Ten Hours a Day, Irregular Shifts, Nights, Weekends, Holidays, and Other Unscheduled Duty

Applicants must be advised that SAs are expected to be available for duty at all times, based upon the needs of the FBI. SAs may be assigned to work day or night shifts, as well as weekends, holidays, and irregular shifts. (See the *Time and Attendance Policy Directive and Policy Guide*, 0654DPG, for more information on agent availability pay [AVP].)

When an office becomes aware of a conflict between an applicant's religious beliefs and any requirement of the SA position, the office will neither commit the FBI to accommodate the individual nor automatically disqualify the applicant from employment. Instead, FO personnel must immediately contact the Office of the General Counsel (OGC) in order to determine the specific information needed from the applicant and the course of action that should be followed and notify NAATSU of the same.

### 4.1.2.10.    Automatic Disqualifiers

Applicants will be disqualified from the SASS if any of the following is true:

- The applicant was convicted of a felony. Expunged felony convictions are considered convictions (with few exceptions) and will make the applicant ineligible. Contact SecD to discuss any applicants who have expunged convictions.

- The applicant was convicted of a domestic violence misdemeanor that prohibits the applicant from possessing a firearm.

- The applicant was convicted of a sex crime that required his or her registration as a sex offender.

- The applicant knowingly or willfully engaged in acts or activities designed to overthrow the United States government by force or by any other means.

- The applicant failed to pay court-ordered child support.

UNCLASSIFIED