IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANDREW G. MCCABE,<br><br>        *Plaintiff*,<br><br>   v.<br><br>WILLIAM P. BARR,<br>in his official capacity as<br>ATTORNEY GENERAL OF THE<br>UNITED STATES, *et al.*,<br><br>        *Defendants*. | Civil Action No. 19-2399 (RDM)<br><br>**ORAL ARGUMENT<br>REQUESTED** |

**PLAINTIFF'S MOTION TO COMPEL DEFENDANTS' PRODUCTION OF
DOCUMENTS AND SUPPORTING STATEMENT OF POINTS AND AUTHORITIES**

ARNOLD & PORTER KAYE SCHOLER LLP
Howard N. Cayne (D.C. Bar. No. 331306)
Murad Hussain (D.C. Bar. No. 999278)
Brittany McClure (D.C. Bar No. 1001889)
Owen Dunn (D.C. Bar. No. 1044290)
Ryan D. White (D.C. Bar No. 1655918)
Marissa Loya (D.C. Bar No. 1672681)
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Fax: (202) 942-5999

*Attorneys for Plaintiff Andrew G. McCabe*

Pursuant to Federal Rule of Civil Procedure 37 and this Court's leave, Plaintiff Andrew G. McCabe respectfully moves this Court to compel Defendants, including the U.S. Department of Justice ("DOJ") and Federal Bureau of Investigation ("FBI"), to produce certain documents in response to Plaintiff's First Set of Requests for Production of Documents ("Requests" or "RFPs"), which he served on October 30, 2020.  (*See* Ex. A.)  On December 3, Defendants served their written responses and objections.  The parties then exchanged letters dated December 13, January 6, and January 29, as well as various emails; formally conferred by telephone on February 12; and informally conferred during other discovery teleconferences.  Despite these extensive negotiations, the Parties have reached an impasse about the Requests' appropriate temporal and subject-matter scope: (1) whether Defendants must produce documents using a default discovery period that runs for the three years from Inauguration Day 2017 through March 17, 2020 (*i.e.*, two years after Plaintiff's separation from the FBI), and (2) whether Defendants must produce documents for certain Plaintiff-related investigations that were intertwined with the investigation of October 2016 disclosures to the *Wall Street Journal* ("the *WSJ* investigation"), which Defendants professed to rely upon when deciding to terminate Plaintiff.[1]

Defendants have not yet produced anything to Plaintiff except for his electronic official personnel folder ("eOPF") and organizational materials for three DOJ components (the Justice Management Division, Office of Legal Counsel, and U.S. Attorney's Office for the District of Columbia).  However, Defendants have represented that their document review is ongoing. Plaintiff thus seeks the Court's resolution of this dispute now, in order to set the correct parameters for Defendants' review and production process while it is still in its early stages.

---

[1] The parties have also disputed the appropriate custodial scope but are nearing potential agreement about those issues.

## BACKGROUND

On August 8, 2019, Plaintiff filed this action. He alleges, *inter alia*, that Defendants unconstitutionally removed him from the FBI and career civil service on March 16, 2018 because of his perceived political affiliation, which Defendants (and former president Donald Trump) attributed to Plaintiff in part because of his wife's 2015 Virginia state senate campaign. (Dkt. 1 (Compl.) ¶¶ 5-9, 47-57, 83-87.) Defendants, however, contend that they removed Plaintiff because of OIG's February 2018 report ("February 2018 OIG Report") on Plaintiff's conduct during the *WSJ* investigation. (Dkt. 23 (Defs.' Mot. to Dismiss and for Summ. J.) at 13-19.)

On September 24, 2020, the Court denied Defendants' motion to dismiss and for summary judgment. (Dkt. 37.) On October 30, after the Court's initial scheduling conference, Plaintiff served his Requests on Defendants. On December 3, Defendants served their written responses and objections. (*See* Ex. B.) Defendants later represented that, with respect to unclassified DOJ documents, they will use Relativity Active Learning ("RAL"), a "predictive coding" software tool, to help identify documents potentially responsive to Plaintiff's requests. Plaintiff has also requested details about RAL and Defendants' specific plans for locating and identifying documents. To facilitate Defendants' efforts, Plaintiff has also given Defendants a list of 51 DOJ and FBI personnel to supplement whatever custodian list that Defendants are using.[2]

Plaintiff's Requests define the default relevant period as running from January 20, 2017 "to the present date" or "through the present," *i.e.*, the Requests' October 30, 2020 service date. (*E.g.*, Ex. A at 5 (Instruction No. 2), 10 (RFP No. 2).) Defendants originally objected that this time period should end instead on May 31, 2018, citing concerns over relevance and proportionality. (Ex. B at 2.) Plaintiff then proposed an alternative cutoff of March 17, 2020,

---

[2] Plaintiff served his second set of document requests on December 15, 2020. Those are not before this Court.

- 2 -

based on employment discrimination case law supporting, in the ordinary course, discovery up to two years after the last adverse action. Defendants countered by proposing a new cutoff date of May 11, 2019, when former Deputy Attorney General ("DAG") Rod Rosenstein left federal service. The parties further conferred about their temporal scope dispute, without resolution.

The parties' dispute over subject-matter scope focuses on three specific requests. RFP No. 2 seeks "[a]ll communications relating to . . . [Plaintiff's] wife" (but not communications sent by or addressed to Plaintiff) that were "sent or received by anyone working in" specified DOJ and FBI components "from January 20, 2017 "through the present." (Ex. A at 10.) Defendants objected, arguing that this request was overbroad and not proportional to the needs of the case, and excluded from that Request's scope any communications from the DOJ Office of Inspector General ("OIG") investigation into whether Plaintiff should have recused himself from the Clinton email server investigation and the Clinton Foundation investigation before November 1, 2016, due to his wife's 2015 campaign ("the recusal investigation"). (Ex. B at 9.) Plaintiff countered that Defendants' perceptions of his political affiliation based on his wife's politics are a key issue in this case, so communications about his wife during the recusal investigation are centrally relevant. Defendants then narrowed their objection, and will now construe RFP No. 2 to include all communications about plaintiff's wife—including about the recusal investigation—from the Office of the Attorney General and the Office of the Deputy Attorney General. *However*, Defendants still construe RFP No. 2 to exclude DOJ OIG communications related to Plaintiff's wife solely because they relate to the recusal investigation.[3]

RFP Nos. 3 and 5 seek "[a]ll documents relating to Plaintiff" that were "sent, received,

---

[3] Plaintiff's RFP No. 2 also sought "[a]ll communications relating to . . . any Internet post by Donald Trump on the website http://twitter.com" that were "sent or received by anyone working in" the aforementioned specified DOJ and FBI components. As with the custodial scope dispute, the Parties are discussing a potential agreement on this issue.

obtained, created, reviewed, or relied upon from November 8, 2016 through the present" by persons in OIG or the FBI Inspection Division ("INSD"), including those units' "complete investigation file(s) relating to Plaintiff."  (Ex. A at 11.)  Defendants again objected on the basis of overbreadth and proportionality, arguing that the only relevant investigation is the *WSJ* investigation.  (Ex. B. at 11, 14.)  Plaintiff then proposed narrowing these Requests' scope to the *WSJ* investigation and three contemporaneous investigations that examined the perceived political affiliation and expression of Plaintiff and other employees (as well as any similar investigations known only to Defendants): (1) the recusal investigation, (2) OIG's investigation of various DOJ and FBI actions ahead of the 2016 presidential election ("the pre-election investigation"), memorialized in a June 2018 OIG report, and (3) INSD's investigation of leaks to online publication Circa News ("the Circa News investigation") (Dkt. 23-2 at 7; Dkt. 23-4 at 24).

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ."  Courts balance six factors on a case-by-case basis when assessing the proportionality of requested discovery: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the discovery's importance in resolving the issues; and (6) whether the proposed discovery's burden or expense outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(1); *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017).  The party resisting discovery bears the burden of "specifically object[ing] and show[ing] that a discovery request would impose an undue burden or expense or is otherwise objectionable."  *Oxbow*, 322 F.R.D. at 6 (quotation marks and ellipsis omitted).

**ARGUMENT**

I.   **PLAINTIFF IS ENTITLED TO DISCOVERY OF DOCUMENTS CREATED UP TO 2 YEARS AFTER HIS SEPARATION FROM THE FBI.**

Plaintiff's compromise proposal creates a default 3-year discovery period that runs from January 20, 2017 through March 17, 2020, which is two years after his separation from the FBI.[4] This targeted timeframe is supported by the case law and reasonable under the circumstances.

In employment discrimination cases, courts routinely permit discovery up to two years after the last alleged discriminatory action. *Zelaya v. UNICCO Service Co.,* 682 F. Supp. 2d 28, 36 (D.D.C. 2010) (Lamberth, C.J.) (rejecting temporal scope objection to request for documents from "the year before and two years after plaintiff's employment," because the request "appears to fall within the acceptable scope of discovery" (citing *Owens v. Sprint/United Mgmt. Co.,* 221 F.R.D. 649, 655 n.29 (D. Kan. 2004))).[5]  Defendants instead countered by proposed to end the discovery period on DAG Rosenstein's last day of federal service, May 11, 2019.  However, there is no reason to think that Defendants stopped creating relevant documents after that date.

*First*, many key witnesses continued their federal service even after May 2019, with several remaining in place through March 17, 2020, such as DOJ Inspector General Michael Horowitz, FBI Director Christopher Wray, and former FBI Deputy Director David Bowdich.  *Second*, even witnesses who were not directly involved in Plaintiff's separation may still have relevant evidence.  For example, documents reflecting that Defendants bore political animus toward Plaintiff (or that they were motivated by others' animus) would obviously be relevant.  *Morris v. McCarthy*, 825

---

[4] RFP Nos. 3 and 5 extend the relevant discovery period slightly, starting it instead on November 8, 2016. Additionally, Plaintiff's second set of document requests, not at issue here, contain several requests covering earlier periods; the parties are presently negotiating those.

[5] *See, e.g., E.E.O.C. v. Autozone, Inc.,* 258 F. Supp. 2d 822, 831-2 (W.D. Tenn. 2003) (permitting discovery into period two years after last alleged discriminatory action); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.,* 209 F.R.D. 208, 212 (D. Kan. 2002) (similar); *Raddatz v. The Standard Register Co.,* 177 F.R.D. 446, 448 (D. Minn. 1997) (similar); *Miles v. Boeing Co.,* 154 F.R.D. 117, 119-20 (E.D. Pa. 1994) (similar); *Robbins v. Camden City Bd. of Educ.,* 105 F.R.D. 49, 62–63 (D.N.J. 1985) (similar).

- 5 -

F.3d 658, 670 (D.C. Cir. 2016) (district court erroneously discounted probative value of discriminatory statements unrelated to adverse action (citing cases)).[6] Even if such documents were created *after* Plaintiff's separation, and even if the discriminatory comments were made by "individuals not involved in the decision" to terminate him and do not "relate directly" to that decision, the documents could be probative of a "managerial attitude" that "would make the existence of an improper motive for [Plaintiff's] termination more probable." *See Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 132-34 (3d Cir. 1997) (memorandum containing discriminatory comments by CEO and others were relevant, despite being made after plaintiff's firing and despite their lack of involvement in the firing).[7]

*Third*, the overlapping tenures of DOJ's many top officials during the 2017-2020 period mean that even the successors to Rosenstein, Attorney General ("AG") Jeff Sessions, and others may have relevant evidence. For example, the public record raises serious concerns about DOJ's motives when pursuing—and then belatedly closing—its criminal investigation of Plaintiff in connection with the February 2018 OIG Report's allegations. In March 2019, during Freedom of Information Act ("FOIA") litigation before Judge Walton of this Court, DOJ relied on the criminal investigation to support its invocation of FOIA Exemption 7(A), for ongoing law enforcement

---

[6] *See also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 152-53 (2000) (cautioning lower courts against discounting discriminatory statements "not made in the direct context" of the challenged employment action); *Markowicz v. Nielsen*, 316 F. Supp. 3d 178, 190 (D.D.C. 2018) (treating statement by supervisor who was uninvolved in adverse action "as circumstantial evidence of the [agency's] discrimination").

[7] Additionally, even after Plaintiff's separation, Donald Trump continued to attack Plaintiff via tweets over his perceived political disloyalty (*e.g.*, Dkt. 1 ¶¶ 136-146), as recently as November 2020, shortly before Trump's permanent suspension from Twitter (*see* https://www.rawstory.com/2020/11/trump-demands-ex-fbi-official-who-presided-over-russia-investigation-pay-the-price-in-twitter-rant). Evidence that Defendants knew of Trump's practice of communicating his governmental objectives about Plaintiff (and others) via Twitter—even after Rosenstein's May 2019 departure—would be probative of whether (and how) Defendants previously knew of Trump's practice and had a "plan" for assessing whether, when, and how to implement Trump's desires. *See also supra* note 2; *cf. Morris v. Wash. Metro. Area Transit Auth.*, 702 F.2d 1037, 1046 (D.C. Cir. 1983) ("evidence showing that the employer followed a broad practice of retaliation and responded to any protected criticism with disciplinary action has some probative value on the issue of the employer's likely motivation here").

- 6 -

proceedings, in order to withhold documents about Plaintiff's separation from the FBI.[8]  On September 9, 2019, the criminal prosecutor assured Judge Walton that a "public decision" about whether to charge Plaintiff would follow "literally within days."[9]  Yet no public decision ever issued.  In November 19, after widespread speculation that the grand jury refused to indict Plaintiff, DOJ notified Judge Walton that it was withdrawing its invocation of Exemption 7(A).[10]  Yet it was not until February 14, 2020 that DOJ finally informed Plaintiff that the criminal investigation was closed—five months after its efforts to indict him apparently failed.

Before the investigation's closure, Judge Walton expressed concerns over the integrity of the investigation and DOJ's delayed charging decision.[11]  Those concerns were echoed by reports that one prosecutor left the criminal investigation over "unhapp[iness] with the lengthy decision-making process" and another left in mid-2019 for unclear reasons.[12]  Any evidence that White House or DOJ political animus infected the criminal investigation, even by delaying a charging decision or the investigation's closure, would be probative of a politically driven "motive" and retaliatory "plan" that existed earlier during Plaintiff's 2018 separation.  Fed. R. Evid. 404(b)(2).

---

[8] *See* Def.'s Mot. for Partial Summ. J. at 1, 8, *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice* ("*CREW*"), No. 18-CV-1766 (D.D.C. Mar. 21, 2019) (ECF No. 24); *see also* Decl. of Stephen Lyons, *CREW*, No. 18-CV-1766 (D.D.C. Mar, 26, 2019) (ECF No. 27) (now unsealed) ("Lyons Decl.").

[9] Hr'g Tr. 3:13, 3:23, *CREW*, No. 18-CV-1766  (D.D.C. Sept. 9, 2019) (ECF No. 54-2).

[10] *See* Matt Zapotosky, *Justice Dept. won't answer whether grand jury turned down indictment of McCabe, his lawyers say*, WSJ (Sept. 19, 2019), https://www.washingtonpost.com/national-security/justice-dept-wont-answer-whether-grand-jury-turned-down-indictment-of-mccabe-his-lawyers-say/2019/09/19/4f24593e-dae8-11e9-bfb1-849887369476_story.html; *see also* Mot. to Excuse USAO Official from Hr'g & Not. of Withdrawal of Exemption 7(a), *CREW*, No. 18-CV-1766  (D.D.C. Nov. 14, 2019) (ECF No. 36).

[11] *See* Hr'g Tr. 4:25-5-3, *CREW*, No. 18-CV-1766  (D.D.C. Sept. 30, 2019) (ECF No. 54-3) ("And I fully appreciate the complexity of the assessment, especially unfortunately to be candid in light of the way by the White House, which I don't think top executive officers should be doing."); *id.* at 5:7-14, ("I don't think people like the fact that you got somebody at the top basically trying to dictate whether somebody should be prosecuted.  I just think it's a banana republic when we go down that road . . . .  I think there are a lot of people on the outside who perceive that there is undo inappropriate pressure being brought to bear."); *id.* at 11:3-5 ("[T]hose in positions need to understand that I will not condone further delay.  So you all have got to cut and make your decision.  It's not a hard decision, and I think it needs to be made.").

[12] Adam Goldman, *Prosecutors Near Decision on Whether to Seek an Andrew McCabe Indictment*, N.Y. Times, Aug. 26, 2019, at https://www.nytimes.com/2019/08/26/us/politics/andrew-mccabe-indictmentdecision.html.

## II. PLAINTIFF IS ENTITLED TO DISCOVER DOCUMENTS FROM RELATED INVESTIGATIONS THAT OVERLAPPED WITH THE *WSJ* INVESTIGATION.

*RFP No. 2:*   Plaintiff's request for communications relating to his wife fits squarely within the discovery that this Court has already implicitly endorsed.  When denying Defendants' premature summary judgment motion, the Court held that undersigned counsel's declaration under Federal Rule of Civil Procedure 56(d) "suffice[d] to preclude the entry of summary judgment," because "[i]t outline[s] ***the particular facts*** the party intends to discover with respect to Plaintiff's First Amendment claims, and ***those facts***, including Defendants' subjective motivations and knowledge, ***are clearly necessary to the litigation***."  (Dkt. 37 at 24 (emphases added; quotation marks and brackets omitted).)  The Court cited intended discovery that included "[i]nformation and documents relating to DOJ or FBI officials' belief or conclusion in 2017 that a photograph of Plaintiff with his family, wearing T-shirts supporting his wife's 2015 Virginia state senate campaign, was a 'political' problem for Plaintiff."  (*Id.* at 23.)

Defendants argue that RFP No. 2's scope should exclude communications with DOJ OIG that concern the recusal investigation.  This is untenable.  Such communications are directly relevant to Plaintiff's claims.  He alleges that Defendants acted on perceptions of his political affiliation based on his wife's political campaign (*e.g.*, Dkt. 1 ¶¶ 53-54, 92), and that Defendants relied on that campaign to criticize him, despite his compliance with the ethics advice he received. For example, Defendants admit that Plaintiff met on multiple occasions with AG Sessions and/or DAG Rosenstein and discussed his wife's campaign or ***whether he had a conflict of interest requiring recusal*** in certain matters.  (Dkt. 43 ¶¶ 86-87, 91.)  OIG's recusal investigators had no reason to discuss Plaintiff's wife, a private citizen, ***except*** in the context of his perceived politics, making those discussions probative of Defendants' views and criticisms of Plaintiff.

***RFP Nos. 3 & 5:*** These Requests seek various OIG and INSD documents "relating to Plaintiff," including their "complete investigation file(s) relating to [him]." (Ex. A at 11.) Defendant want to limit these Requests to documents related to the *WSJ* leak investigation. This improperly excludes at least three other overlapping Plaintiff-related investigations: (1) the recusal investigation, (2) the pre-election investigation, and (3) the Circa News investigation. Defendants suggest that documents from those other investigations would be relevant and responsive only if they otherwise relate to the WSJ investigation. But the recusal investigation is independently relevant for the reasons already noted above, and all three investigations are also relevant ***because*** of their temporal and subject-matter overlap with the *WSJ* investigation.[13]

The pre-election, recusal, and *WSJ* investigations were not originally separate investigations. They were all part of single comprehensive election-related "review" that IG Horowitz announced on January 12, 2017.[14] Plaintiff further alleges that the *WSJ* investigation was only spun off from this comprehensive review in December 2017, and expedited to accomplish Trump's goal of firing Plaintiff before he could retire with full benefits. (Dkt. 1 ¶ 103.)

The Circa News investigation was also intertwined with this IG review. Beginning in March 2017, INSD investigated a potential leak about one of Plaintiff's FBI leadership meetings, where the "leaker" falsely suggested that Plaintiff disparaged Donald Trump and General Michael Flynn during the meeting. (Dkt. 23-4 at 24.) The INSD personnel who first asked Plaintiff about the *WSJ* disclosures on May 9, 2017 did so when meeting him about the Circa News investigation. (*Id.* at 25-26.) But as shown by documents released in Judge Walton's FOIA case, OIG ***instructed***

---

[13] Further, in the *CREW* FOIA litigation, the OIG declarant explained that the pre-election investigation—and not just the *WSJ* investigation—supported DOJ's criminal investigation of Plaintiff. Lyons Decl. ¶ 3, *supra* note 6.

[14] *Available at* https://oig.justice.gov/news/doj-oig-announces-initiation-review-0.

- 9 -

INSD to ask Plaintiff about the *WSJ* disclosures, despite INSD's concerns about doing so.[15]

Moreover, both the pre-election review and Circa News investigations scrutinized the perceived political affiliations and expression of Plaintiff and others. For example, the June 2018 OIG report on the pre-election investigation (*see* https://www.justice.gov/file/1071991/download) singled out both Plaintiff and former FBI civil servant Peter Strzok over concerns about perceptions of political bias. Documents created during those investigations will necessarily reflect perceptions of Plaintiff's political affiliation or expression, which may in turn reflect political animus toward Plaintiff and other civil service employees. (*See also supra* pp. 5-6.)

Defendants recently represented that over 20 DOJ OIG employees worked on the pre-election and recusal investigations but not the *WSJ* investigation, and thus object to the Requests on relevance and burden grounds. But those matters were all part of the original OIG "review" that examined Plaintiff's perceived political affiliation, making each of those employees' Plaintiff-related documents probative of Defendants' views and animus toward Plaintiff. The "information asymmetry" created by Defendants' exclusive possession of documents bearing on these issues means that "the burden of responding to discovery lies heavier on" them. *Oxbow*, 322 F.R.D. at 8 (quotation marks omitted). In any event, that burden should be lessened by Defendants' use of RAL's predictive coding to identify potentially responsive documents. Ultimately, the fact that multiple investigators did not work on the *WSJ* prong of OIG's comprehensive "review" simply means that their documents pertain to the ***other*** Plaintiff-related prongs of that review.

## CONCLUSION

For all of these reasons, the Court should grant Plaintiff's motion to compel.

---

[15] *See* Oct. 5, 2017 OIG Interview Transcript [witness name redacted] at 17:19-21:17 [FOIA Bates stamp FBI 18-cv-01766-471 through -473], *available at* https://s3.amazonaws.com/storage.citizensforethics.org/wp-content/uploads/2019/12/31194221/FOIA-Request-19-OIG-102-Partial-Response-12-31-19-Part-2.pdf.

March 5, 2021                                   Respectfully submitted,

                                                 /s/ Murad Hussain
                                                Howard N. Cayne (D.C. Bar. No. 331306)
                                                Murad Hussain (D.C. Bar. No. 999278)
                                                Brittany McClure (D.C. Bar No. 1001889)
                                                Owen Dunn (D.C. Bar. No. 1044290)
                                                Ryan D. White (D.C. Bar No. 1655918)
                                                Marissa Loya (D.C. Bar No. 1672681)
                                                ARNOLD & PORTER KAYE SCHOLER LLP
                                                601 Massachusetts Avenue, NW
                                                Washington, DC  20001-3743
                                                Telephone: (202) 942-5000

                                                *Attorneys for Plaintiff Andrew G. McCabe*