UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

ANDREW G. MCCABE,

                Plaintiff,

v.

MERRICK B. GARLAND[1], in his official capacity as Attorney General of the United States, *et al.*,

                Defendants.

No. 19-cv-2399

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

**INTRODUCTION**

Plaintiff Andrew McCabe has moved to compel in his suit challenging his March 2018 removal from the Federal Bureau of Investigation for misconduct. He asks the Court to establish a date range for discovery up to March 2020—two years after his removal—and permit discovery into investigations other than the one that led to his removal: the investigation into leaks to the *Wall Street Journal*. The Court should deny his motion. First, as to the date range, the motion is premature. As Defendants have told Plaintiff, they are actively considering his request to extend the date range through March 2020, but the FBI is still performing preliminary searches. Depending on the results of those searches, the parties might be able to agree on the date range and avoid any need for Court intervention. Second, prematurity aside, the motion should fail. Based on what Defendants know now, expanding the date range to a point 24 months after Plaintiff's removal would impose burdens disproportionate to any likely benefits, especially as most of the key officials involved left government service well before then. Third, the Court should deny the motion as to discovery into other investigations: Searching for Plaintiff-related documents from an additional 22 custodians who had no involvement in the *WSJ* leak investigation or Plaintiff's removal would impose burdens disproportionate to the needs of this case.

---

[1] Merrick B. Garland has been substituted as a defendant, in his official capacity as the Attorney General, by operation of Federal Rule of Civil Procedure 25(d).

**BACKGROUND**

I.      **Date Range**

Plaintiff's first set of document requests generally seeks documents from January 2017 through the present. ECF No. 50-1 at 5. The government objected to that date range as overbroad and not proportional to the needs of the case given Plaintiff's March 2018 removal and construed the requests to seek documents through May 2018. ECF No. 50-2 at 2. Plaintiff responded by proposing to extend the date range through March 2020.

Seeking compromise, the government offered to extend the date range through May 11, 2019, when former Deputy Attorney General Rod Rosenstein left the Department—well past the 2018 departure dates of the two Department officials that had played key roles in Plaintiff's removal, Associate Deputy Attorney General Scott Schools (the recommending official) and Attorney General Jeff Sessions (the deciding official). The government also offered to discuss extending the date range on a more tailored basis for particular requests or custodians.

Rejecting the government's proposed compromise, Plaintiff reiterated his demand to extend the date range through March 2020. The government responded that it was considering the request. Specifically, the FBI—which conducts all document review on a document-by-document, line-by-line basis on a classified computer system—planned to conduct preliminary electronic searches to assess how significantly Plaintiff's proposed date range extension would increase the volume of potentially responsive documents to be reviewed. But given the FBI's limited electronic-search resources and many competing priorities—including criminal cases, other civil cases, administrative matters, and congressional inquiries—it has not yet been able to conduct these searches. *See* Deborah A. Crum Decl. ¶¶ 4-11.

Without waiting until the FBI could conduct the searches, Plaintiff stated that the government has "had ample time to consider" the date range and filed this motion to compel.

II.     **Requests for Documents From Other Investigations**

Three of Plaintiff's document requests seek documents about investigations involving Plaintiff other than the one that formed the basis of his removal—the leak investigation relating to a *WSJ* article. Specifically, RFP No. 2 seeks "[a]ll communications relating to Plaintiff [or] his

2

wife" sent or received by offices in the Justice Department and FBI, among other communications. ECF No. 50-1 at 10–11. RFP No. 3 seeks "[a]ll documents relating to Plaintiff" sent or received by the DOJ OIG, including the OIG's "complete investigation file(s) relating to Plaintiff." ECF No. 50-1 at 11. RFP No. 4 seeks "[a]ll documents relating to Plaintiff" sent or received by the FBI Inspection Division (INSD), including INSD's "complete investigation file(s) relating to Plaintiff." ECF No. 50-1 at 11.

The government objected to these requests on overbreadth and proportionality grounds because not all documents about Plaintiff—a longtime senior FBI official—are relevant to this case. ECF No. 50-2 at 9, 11, 14. As relevant here, the government construed RFP No. 2 to be limited to communications about: (a) Plaintiff's status as an employee of the FBI, (b) Plaintiff's suitability for any FBI employment position, (c) any perceived partisan affiliation of Plaintiff, (d) Plaintiff's voting history, or (e) the *WSJ* leak investigation. ECF No. 50-2 at 9. The government also construed RFP No. 2 to include all communications about Plaintiff's wife that involved the Office of the Attorney General and the Office of the Deputy Attorney General, but to exclude internal DOJ OIG communications about the OIG inquiry into whether Plaintiff should have recused from certain matters. The government construed RFP Nos. 3 and 5 to be limited to documents about the *WSJ* leak investigation. ECF No. 50-2 at 11, 14.

Plaintiff challenges these limiting constructions and seeks documents about the OIG's broad pre-election review, the OIG's recusal inquiry (which was part of the pre-election review), and an FBI INSD leak investigation about a *Circa News* article. The OIG's pre-election review was a wide-ranging inquiry into various actions by the FBI and the Justice Department before the 2016 election that resulted in a 16-chapter, 568-page report. *See* https://www.justice.gov/file/1071991/download. The report explains that the OIG "reviewed significantly more than 1.2 million documents." *Id*. at 3. Approximately 178,000 of those documents mention Plaintiff by name, initials, or title. Brandy F. Hamilton Decl. ¶¶ 3-6. The pre-election review was staffed by over 20 OIG employees. *Id*. ¶ 11. A preliminary email search of 19 OIG employees who worked on the pre-election review but not the *WSJ* leak investigation

3

yielded over 24,000 documents mentioning Plaintiff by name, initials, or title.[2] Bradley S. Leonard Decl. ¶¶ 4–7; Hamilton Decl. ¶ 11.

One chapter of the pre-election review examined whether Plaintiff should have recused from certain matters in light of his wife's state political campaign. Pre-Election Report at 431–60, https://www.justice.gov/file/1071991/download. The report concluded Plaintiff "was not at any time required to recuse" from these matters and that Plaintiff "did what he was supposed to do by notifying those responsible in the FBI for ethics issues and seeking their guidance." *Id.* at xiii, 460.

The *Circa News* investigation examined possible media leaks related to an article reporting that McCabe had made derogatory comments about the former National Security Advisor during an FBI meeting. ECF No. 23-2 at 8. As part of the investigation, FBI INSD agents interviewed Plaintiff and, at the end of the interview, they discussed the *WSJ* article.[3] The *Circa News* investigation did not gather evidence supporting a finding that the allegations about Plaintiff's derogatory comments were true. *See* Gov't's Response to Mot. to Compel at 9–10, ECF No. 122, *United States v. Flynn*, No. 17-cr-232 (D.D.C. Oct. 1, 2019).

## Legal Standard

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Under the 2015 amendments to the Civil Rules, "considerations of both relevance and proportionality now govern the scope of discovery." *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016).

## Argument

I. **The Court Should Deny Plaintiff's Motion to Compel as to the Date Range**

A. Plaintiff's Motion Is Premature

The government has told Plaintiff that it is actively considering his request to extend the

---

[2] Documents about how the *WSJ* leak investigation originated or progressed are responsive even under the government's limiting constructions of RFP Nos. 2 and 3 because they relate to the *WSJ* leak investigation.

[3] Documents about the discussion of the *WSJ* article in this interview are responsive even under the government's limiting constructions of RFP Nos. 2 and 5 because they relate to the *WSJ* leak investigation.

4

date range through March 2020, but due to resource constraints, magnified by the need to conduct these searches on site at an FBI facility, the FBI was unable to do so before Plaintiff moved to compel. *See* Crum Decl. ¶¶ 4-11.

In light of the government's continuing consideration of the appropriate date range, Plaintiff's motion to compel production of documents through March 2020 should be denied without prejudice. If the FBI's preliminary searches ultimately yield an unreasonably high volume of potentially responsive documents from Plaintiff's requested date range, the parties can discuss possible compromises—and if those discussions are unsuccessful, Plaintiff can renew this motion. But the FBI's preliminary searches might also yield a reasonable number of potentially responsive documents and enable the parties to agree on the appropriate date range—relieving the Court of any need to decide the issue.[4]

### B. Even If This Motion Were Not Premature, Discovery Beyond May 2019 Is Not Proportional To The Needs of This Case

Even if Plaintiff's motion were not premature, it would fail. Plaintiff asserts that he is entitled to search for documents created a full two years after his termination. Not so. The 2020 discovery deadline that Plaintiff proposes likely would impose burdens disproportionate to its benefits, especially as most of the officials primarily involved in the decision to remove Plaintiff had left the Department well before that time.

Plaintiff focuses his argument on a collection of district court cases which he asserts have allowed discovery into employment discrimination claims for a period of up to two years after the last alleged discriminatory action. Pl.'s Mot. 5 & n.4. But not one case Plaintiff cites was decided after the 2015 Amendments to the Civil Rules, which rejected mechanical applications of relevance and emphasized that discovery should be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Moreover, Plaintiff's cases involve distinguishable factual circumstances and establish no general rule of discovery in employment cases. None of them allowed the plaintiffs to rummage through documents created two years after an employment action, by officials who

---

[4] Defendants have agreed to a three-month extension of the discovery deadlines to account for the fact that FBI has not yet been able to run all of the necessary document searches.

had little or nothing to do with the action, to look for proof of some amorphous conspiracy. Rather, the courts permitted discovery seeking discrete post-termination documents bearing on other discrimination complaints or general policies.[5] Indeed, there is no hard-and-fast rule that discovery in an employment case is sufficient only if it encompasses materials that post-date the termination by two years. *See Dumas v. O'Reilly Automotive Stores, Inc.*, No. 16-262-BAJ-EWD, 2017 WL 2573956, at *5 (M.D. La. June 14, 2017) (one year of post-termination discovery of information about complaints of gender discrimination "is narrowly tailored to meet the proportionality requirements of Rule 26"); *cf. EEOC v. Kansas City S. Ry.*, 195 F.R.D. 678, 680 (D. Kan. 2000) (limiting interrogatory response for employment information to one year post-termination).

No one disagrees that post-termination evidence is discoverable. But Plaintiff is not asking Defendants to search for a discrete set of documents to determine whether the stated reason for his removal is supported by Defendants' handling of other discrimination cases or general employment policies, as the cases he cites permit. Rather, he is asserting a need to search custodial ESI for two years after his termination to determine the reason for his own firing. The most logical place to look for documents about Plaintiff's termination is at or around the time it occurred.

Moreover, Defendants are already reviewing hundreds of thousands of documents from a long list of offices across the Executive Branch, including the Offices of the Attorney General, the Deputy Attorney General, and the DOJ IG; the Office of Legal Counsel; the Justice Management Division; the D.C. U.S. Attorney's Office; and the FBI. Defendants have offered to search for documents that postdate Plaintiff's termination by over a year—up to the date of Mr. Rosenstein's departure—by which point the large majority of the key decision-makers had already left the government. The extended date range Plaintiff requests is likely to impose burdens on Defendants

---

[5] *See, e.g., Zelaya v. UNICCO Serv. Co.*, 682 F. Supp. 2d 28 (D.D.C. 2010) (agreeing that discovery into discrimination complaints filed by non-parties against supervisors who played no role in the plaintiff's termination for two years after plaintiff's termination was reasonable, but denying motion to compel on other grounds); *Miles v. Boeing Co.*, 154 F.R.D. 117, 119–20 (E.D. Penn. 1994) (permitting discovery of documents regarding employer's manpower requirements for two years after plaintiff's termination because it was "relevant to show any change in Boeing's labor needs during the alleged discrimination and shortly before and after it").

disproportionate to the needs of this case.

This additional burden is particularly acute for the FBI: it must conduct document review on a classified computer system, in an FBI office (in a socially distanced way), and on a document-by-document, line-by-line basis, without using technology-assisted review (i.e., without using a system that uses artificial intelligence to identify potentially responsive documents). *See* Crum Decl. ¶¶ 5-8, 11.

Plaintiff also argues that an expanded discovery period is appropriate because, in his view, the handling of the criminal investigation of his misconduct, particularly in the fall of 2019 through early 2020, may demonstrate that his firing (many months earlier) was politically motivated.[6] Pl.'s Mot. at 6-7. Plaintiff's argument is unpersuasive. The Department of Justice officials involved with Plaintiff's removal were not the officials who made decisions with respect to the criminal investigation a year and a half (or more) later. Mr. Schools, Mr. Rosenstein, and Attorney General Sessions had all left the Department by May 2019. And Plaintiff's speculation that the pace of the criminal investigation indicates the existence of a continuing conspiracy against him driven by political animus falls flat. There is no one-size-fits-all guide to investigations, and no obvious precedent for how fast an investigation into the former Acting Director of the FBI for making multiple false statements under oath should move.

Permitting the burdensome expansion of discovery because Plaintiff thinks there might be evidence of a conspiracy would suggest that there is no reasonable stopping point to discovery in this case. With a vivid enough imagination, one can find evidence of a conspiracy almost anywhere. But Rule 26 premises the availability of discovery on proportionality, not the fertility of a Plaintiff's imagination. And, under the Rule's proportionality standard, Plaintiff's arguments do not support his proposed discovery cut-off date.

**II.     Plaintiff's Requests for Documents from Other Investigations Are <u>Not Proportional to the Needs of the Case</u>**

***RFP Nos. 3 & 5.*** Plaintiff's RFP Nos. 3 and 5 seek discovery of all documents related to

---

[6] OIG referred an allegation that Plaintiff made false statements to law enforcement officials to the Department of Justice and the U.S. Attorney's Office for the District of Columbia to assess whether criminal charges were warranted.

him from three sources in addition to the *WSJ* leak investigation that led to his removal: (1) OIG's pre-election review; (2) OIG's recusal inquiry (which comprised one part of OIG's pre-election review); and (3) INSD's *Circa News* investigation.[7] The crux of his argument is that all three investigations overlapped with the *WSJ* leak investigation to such a degree[8] that any Plaintiff-related documents from them may be probative of his allegation that the *WSJ* leak investigation was motivated by animus toward him because of his perceived political affiliation. Pl.'s Mot. at 8-10.

In making this argument, Plaintiff downplays the fact that these investigations were staffed almost entirely by employees who did not work on the *WSJ* leak investigation. But that is precisely why searching for Plaintiff-related documents from these investigations would make little sense: documents from employees who had no involvement in the *WSJ* leak investigation would not be probative of the intent of any individual involved in the latter investigation or the subsequent decision to remove Plaintiff on that basis. And it would be burdensome to require the government to search for, review, and produce such documents. In total, 19 OIG custodians worked on the pre-election review but not the *WSJ* leak investigation, while three FBI custodians worked on the *Circa News* investigation but not the *WSJ* leak investigation. Hamilton Decl. ¶ 11; Emily A. Sorkness Decl. ¶ 4. Searching for documents from those additional 22 custodians who did not work on the *WSJ* leak investigation would serve little purpose here and would impose burdens disproportionate to the needs of this case.

Moreover, Plaintiff's assertion that documents from these additional custodians may be relevant because the investigations all targeted Plaintiff due to his perceived political beliefs

---

[7] Plaintiff has apparently abandoned his prior attempts to obtain documents from other unspecified OIG and FBI investigations, as his motion addresses only these three investigations. Pl.'s Br. at 4. Defendants' response is accordingly limited to only these three investigations.

[8] Plaintiff suggests that the investigation that led to his dismissal was not a separate investigation, but merely the "*WSJ* prong" of a "single comprehensive election-related 'review' that IG Horowitz announced on January 12, 2017." Pl.'s Mot. at 9, 10. But the February 2018 OIG report entitled "A Report of Investigation of Certain Allegations Relating to Former FBI Deputy Director Andrew McCabe" explains that OIG did not open this investigation of Plaintiff until August 31, 2017, following a referral from the FBI. *Available at* https://oig.justice.gov/reports/2018/o20180413.pdf, at 1, 21.

misconstrues the nature of the inquiries, particularly the expansive pre-election review, and is belied by the fact that neither the recusal inquiry nor the *Circa News* investigation found wrongdoing on Plaintiff's part. *See supra* Background, pt. II. Those findings make Plaintiff's assertion that documents from those investigations may demonstrate a broad-ranging campaign against him based on multiple government offices' and officials' alleged animus toward him because of his perceived political beliefs all the more tenuous.

Finally, to the extent Plaintiff's requests are aimed at obtaining documents showing how the *WSJ* leak investigation originated or why the *WSJ* leaks were discussed during an interview conducted in connection with the *Circa News* investigation, his motion to compel is entirely unnecessary. Those types of documents are already responsive even under the government's limiting construction of Plaintiff's requests, because they relate to the *WSJ* leak investigation.

Plaintiff's conjecture about the potential relevance of all Plaintiff-related documents from these investigations unrelated to the reasons for his termination is insufficient to overcome the substantial burdens that compelling this discovery would impose on the government. For the pre-election review alone (which included the recusal inquiry), OIG reviewed more than 1.2 million documents. Hamilton Decl. ¶ 3. Approximately 178,000 of those documents have Plaintiff's name, initials, or title. *Id*. ¶¶ 3-6. Additionally, a preliminary search of emails from the 19 custodians who worked exclusively on the pre-election review yielded 24,351 email messages and attachments containing the terms "McCabe," "AGM," or "Deputy Director." Leonard Decl. ¶¶ 4-5; Hamilton Decl. ¶ 11. These figures do not even account for the documents *generated* by the pre-election review team in their 18-month investigation, such as material related to the team's research and witness interviews, which are held in other electronic drives and would add to the substantial burden. Hamilton Decl. ¶ 11.[9] And while technology-assisted review tools could expedite the process for making responsiveness determinations, they would not help with privilege

---

[9] The volume of some files in the attached declaration is described in gigabytes. For an explanation of how many pages of documents may be in a gigabyte, *see* https://www.lexisnexis.com/applieddiscovery/lawlibrary/whitepapers/adi_fs_pagesinagigabyte.pdf.

review of responsive documents. Defendants must still conduct a document-by-document, line-by-line privilege review of every document before production.[10]

Searching for all Plaintiff-related documents from FBI INSD's *Circa News* investigation carries its own burdens. That investigation was staffed by three employees not involved in the *WSJ* leak investigation, and roughly 151 documents comprise the case file, not including the custodians' emails. Sorkness Decl. ¶ 4. Moreover, FBI documents are not reviewed using technology-assisted review, so all potentially responsive documents must be reviewed individually for classification, responsiveness, and privilege determinations. *See* Crum Decl. ¶¶ 5, 7.

***RFP No. 2.*** Finally, Plaintiff contends that RFP No. 2 should include all communications about his wife that relate to the recusal inquiry because they would be relevant to his allegations that DOJ and FBI employees acted on their perceptions of Plaintiff's political affiliation. But communications about Plaintiff's wife involving only the *OIG employees* who staffed the recusal inquiry and not the *WSJ* leak investigation have no apparent relevance to the views of any official involved in Plaintiff's removal. And Defendants have already construed RFP No. 2 to include communications about Plaintiff's wife, including those related to the recusal inquiry, from the Office of the AG and the Office of the DAG, which offices are the focus of the allegations in the Complaint at the crux of this claim. Pl.'s Mot. at 8 (citing pleadings). Plaintiff's motion to compel discovery of all other communications about his wife that relate only to the recusal inquiry should be denied for these and the additional reasons explained above.

## Conclusion

For the reasons stated above, the Court should deny Plaintiff's motion.

---

[10] If the Court were inclined to compel more targeted discovery related to any of these investigations, then it should do so only with respect to OIG's recusal inquiry, which is the only investigation that discussed issues related to Plaintiff's wife's campaign. While searching for Plaintiff-related documents from this investigation is unlikely to lead to relevant evidence for the reasons already explained, more targeted discovery of the recusal investigation would nonetheless be less burdensome than searching through all documents related to the broader pre-election review.

| | |
|---|---|
| Dated: March 12, 2021 | BRIAN M. BOYNTON<br>Acting Assistant Attorney General<br><br>CHRISTOPHER R. HALL<br>Assistant Branch Director<br><br>*s/ Justin M. Sandberg*<br>JUSTIN M. SANDBERG<br>Senior Trial Counsel<br>KYLA SNOW<br>GARRETT COYLE<br>MICHAEL GERARDI<br>Trial Attorneys<br>U.S. Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L Street NW<br>Washington, DC 20005<br>Phone: (202) 514-5838<br>Fax: (202) 616-8470<br>Email: justin.sandberg@usdoj.gov<br><br>*Counsel for Defendants* |