IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANDREW G. MCCABE, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 19-2399 (RDM) |
| MERRICK B. GARLAND,[1] | ) | |
| in his official capacity as | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| UNITED STATES, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION TO
COMPEL DEFENDANTS' PRODUCTION OF DOCUMENTS**

ARNOLD & PORTER KAYE SCHOLER LLP
Howard N. Cayne (D.C. Bar. No. 331306)
Murad Hussain (D.C. Bar. No. 999278)
Brittany McClure (D.C. Bar No. 1001889)
Owen Dunn (D.C. Bar. No. 1044290)
Ryan D. White (D.C. Bar No. 1655918)
Marissa Loya (D.C. Bar No. 1672681)
601 Massachusetts Avenue, NW
Washington, DC  20001-3743
Telephone: (202) 942-5000
Fax: (202) 942-5999

*Attorneys for Plaintiff Andrew G. McCabe*

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Merrick B. Garland has been substituted as a defendant in his official capacity as the Attorney General.

Contrary to Defendants' arguments, Plaintiff's motion seeking a 2-year post-separation discovery period is not premature, and the balance of benefits and burdens of such a period favors Plaintiff. As to Plaintiff's requests for relevant investigation documents, Defendants' declarations describe manageable volumes of documents that are consistent with contemporary litigation.

***First*, Plaintiff's motion to compel is not premature.** Defendants had over two months to consider Plaintiff's December 13 compromise proposal of a March 17, 2020 discovery cutoff. By February 18 email, after extensive correspondence and a telephonic meet-and-confer, Plaintiff's counsel requested Defendants' final position by February 23. By February 23 email, Defendants' counsel responded that "[o]ur client agencies are still considering" Plaintiff's proposal; that "[t]he agencies are conducting preliminary searches to assess how significantly [it] would increase the number of potentially responsive documents to be reviewed"; and that they "will provide an update on our position as soon as we have additional information." Thus, there was neither any agreement nor any indication whether and when the parties might reach one. Notably, Defendants invoked *both* client agencies' need to continue assessing Plaintiff's proposal, and not just the FBI's. (*Contra* Opp'n 2.)

Accordingly, by February 26 email, Plaintiff responded that the dispute was ripe for this Court's decision, because "Defendants have had ample time to consider" Plaintiff's proposal and supporting arguments, and "postponing judicial review in favor of Defendants' further deliberation merely prejudices Plaintiff's timely receipt of responsive materials."[2] After negotiating at length and in good faith, Plaintiff sought to put this dispute before the Court to move this case along expeditiously and right the wrong that Plaintiff has suffered and continues to suffer.

---

[2] The need for timely judicial resolution was accentuated by Plaintiff's understanding that Defendants' ongoing document review is only using the May *2018* cutoff date that they originally asserted in their written objections (*see* Mot. 2)—and not their own May *2019* compromise cutoff. Therefore, it may well be that the Court's decision on this issue would help Defendants avoid revising their review efforts.

- 1 -

**_Second_, a March 17, 2020 discovery cutoff is proportionate to the needs of this case.**

Federal Rule of Civil Procedure 26(b) enumerates six considerations for assessing proportionality. Defendants contest only one factor—"whether the burden or expense of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(1)—and do not argue that the others favor them.

As an initial matter, and contrary to Defendants' suggestion (Opp'n 5-6), Plaintiff's authorities supporting a 2-year discovery period remain valid even after Rule 26's 2015 amendments. Those changes did not work a substantive change in the law. *See Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 n.3 (D.D.C. 2017) (citing authorities).

Defendants emphasize that the officials supposedly involved in Plaintiff's March 2018 removal proceedings left DOJ and the FBI before March 2020. (Opp'n 5.) But numerous relevant officials and employees continued past that date (including FBI Director Wray, Deputy Director Bowdich, Inspector General Horowitz, and Principal Associate Deputy Attorney General Hur). Nor is relevant evidence limited to the circumstances of those March 2018 removal termination proceedings. Besides comparator evidence (which is not yet directly at issue), later expressions of improper animus remain probative of prior discrimination. (Mot. 5-6 (citing cases).)

Defendants also disparage Plaintiff's efforts to discover evidence of ongoing retaliatory animus as probing an "amorphous conspiracy" against him. (Opp'n 6; *see id.* at 7.) This ignores that former-President Trump's ongoing public attacks on Plaintiff continued through November 2020 (*see id.* at 6 n.7), and that in December 2019, Trump expressed hope that "someday I'm going to consider it my greatest—or one of my greatest achievements—getting rid of" the so-called "dirty cops" that he routinely counted Plaintiff among (Dkt. 28 at 2). Moreover, although Plaintiff does not anticipate that this later period will generate large volumes of responsive documents, the fact remains that if Defendants were still discussing Plaintiff two years after he separated from the

FBI, the inherently probative value of such discussions would far outweigh any minimal burden on Defendants in extending their current May 2019 proposed discovery cutoff by 10 months.

Certainly, some later documents might pertain to the now-closed criminal investigation. But Defendants misunderstand Plaintiff's arguments about that investigation's "pace." (Opp'n 7.) Plaintiff has pointed to evidence that one federal judge and one federal prosecutor were troubled by the investigation's delays (*see* Mot. 7 nn.11-12), and that there was an anomalous months-long delay from November 2019, when DOJ stopped arguing that it was a pending investigation worthy of denying FOIA requests, to February 2020, when DOJ actually told Plaintiff that the investigation was closed (*see id.* at 6-7 nn.8-10). Even as late as early 2020, any documents reflecting that the successors to Attorney General Sessions, DAG Rosenstein, and others were still acting on Trump's animus toward Plaintiff by delaying the closure of the criminal investigation would be probative of a preexisting "managerial attitude." *See Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 132-34 (3d Cir. 1997). Discovery may thus uncover "one rule for Democrats and another for Republicans," and "[o]ne rule for friends and another for foes."[3]

Finally, Plaintiff notes that Defendants do not specifically argue how DOJ would be unduly burdened; the specific arguments focus on the FBI's technological and pandemic-related constraints. (*See* Opp'n 7.)[4] Plaintiff remains committed to moving this case forward, but is also willing to wait if needed for the FBI to review and produce all responsive documents. The parties have recently reached an agreement to extend discovery by three months (*see* Opp'n 5 n.4), and Plaintiff is open to agreeing to further extensions, if appropriate under the circumstances.

---

[3] *Attorney General Merrick Garland Addresses the 115,000 Employees of the Department of Justice on His First Day*, Mar. 11, 2021, *at* https://www.justice.gov/opa/speech/attorney-general-merrick-garland-addresses-115000-employees-department-justice-his-first.

[4] *See Fairholme Funds, Inc. v. Fed. Housing Fin. Agency*, No. 13-CV-1053, 2019 WL 5864595, at *2 (D.D.C. Nov. 8, 2019) ("Vague and conclusory assertions are not sufficient; rather, a showing of undue burden must be specific and concrete." (quotation marks omitted)).

***Finally*, the non-*WSJ* investigations are relevant, and Defendants' declarations confirm the relative ease of producing Plaintiff-related documents from those matters.** The pre-election investigation (including its recusal "prong") and Circa News investigation are relevant not because they necessarily "targeted" Plaintiff improperly over his perceived political affiliation and expression (*contra* Opp'n 8-9), but because they "examined" his (and others') perceived politics during the course of their review (Mot. 4). Defendants do not appear to contest the latter point. Moreover, with respect to Plaintiff's requests for communications about his wife, including from the OIG recusal investigation, such documents exist only in the context of discussing Plaintiff's perceived politics. Even though these non-*WSJ* investigations found no wrongdoing on Plaintiff's part (*id.* at 9), observations about his politics—whether made by the investigators or in their memorialization of others' words—may reflect probative animus within the agencies.

Defendants' arguments and evidence further confirm that the requested documents should be produced. Once again, they only contest one of the six proportionality considerations, regarding the balance of burdens and benefits. They have also submitted 3 declarations detailing the volumes and categories of potentially responsive documents. Notably, two of the declarants state that they performed their searches on March 1, 2021. This was four months after Plaintiff served his requests, and apparently commenced only after Plaintiff stated his intent to seek this Court's resolution of the dispute. Still, the search results are instructive and suggest a path forward.

Regarding the 19 OIG custodians' emails, Defendants assert that searches using their own chosen terms yielded around 24,000 emails *before* de-duplication. (Dkt. 51-3 ¶¶ 4-5.) And regarding OIG's Relativity database of pre-election investigative documents from DOJ, the FBI, and witnesses, Defendants assert that their chosen term searches yielded approximately 178,000 documents, also before de-duplication. (Dkt. 51-2 ¶¶ 3-6.) For both sets of documents, Plaintiff

proposes filtering out materials from before November 8, 2016, searching them using Defendants' search terms plus a few others (*e.g.*, "Acting Director"), de-duplicating the results, and then producing the documents (including any attachments to emails).[5]

Regarding OIG's share drive of documents generated by investigators working on the pre-election review, Defendants have identified a subset that specifically concerns the recusal investigation and comprises only 530 megabytes. (Dkt. 51-3 ¶ 10.) This would fit onto one CD. Plaintiff proposes producing the entirety of these recusal-related materials.

Regarding the rest of OIG share drive contents, Defendants identify categories of documents that Plaintiff is willing to forgo, namely "congressional testimony, . . . legal research, and copies of documents produced in response to OIG's requests for documents, which are also loaded into Relativity." (Dkt. 51-3 ¶ 8.) Of the remaining identified categories, Plaintiff proposes that Defendants produce only "transcripts of witness interviews" and "correspondence" that reference Plaintiff, and any audio transcripts for transcripts with inaudible passages. (*See id.*) If there are other categories that Defendants have not yet specified, Plaintiff proposes that they inform him of those, so that the parties can further assess whether they should be produced.

Finally, regarding the FBI INSD materials concerning the Circa News investigation, Defendants have apparently identified only 151 serialized case documents and 3 INSD custodians who worked on that matter but not the *WSJ* investigation. (Dkt. 51-4 ¶ 4.) Plaintiff proposes that Defendants produce the 151 identified documents, and that the 3 custodians' emails be searched, date-filtered, de-duplicated, and produced as with the other categories discussed above.

## CONCLUSION

For all of these reasons, the Court should grant Plaintiff's motion to compel.

---

[5] Defendants also identified almost 3,500 unindexed documents (potentially non-searchable email attachments) that must be searched manually. (Dkt. 51-3 ¶ 7.) Plaintiff is willing to defer his request for those files at this time.

- 6 -

March 15, 2021                                   Respectfully submitted,

                                                                                          */s/ Murad Hussain*

Howard N. Cayne (D.C. Bar. No. 331306)
Murad Hussain (D.C. Bar. No. 999278)
Brittany McClure (D.C. Bar No. 1001889)
Owen Dunn (D.C. Bar. No. 1044290)
Ryan D. White (D.C. Bar No. 1655918)
Marissa Loya (D.C. Bar No. 1672681)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC  20001-3743
Telephone: (202) 942-5000

*Attorneys for Plaintiff Andrew G. McCabe*